UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> TAL ALEXANDER, <br><br>                 Defendant. | Dkt. No. 24-MJ-04544 (LMR) |

**DEFENDANT TAL ALEXANDER'S MOTION TO REOPEN DETENTION HEARING AND STAY REMOVAL AND MEMORANDUM IN SUPPORT**

Pursuant to 18 U.S.C. § 3142(f), defendant Tal Alexander respectfully moves to reopen the detention hearing held on December 13, 2024, and stay removal of this case to the Southern District of New York pending a decision on pretrial detention. In support of this Motion, we provide the incorporated Memorandum of Law. Pursuant to Southern District of Florida Local Rule 88.9(a), Mr. Alexander requests a hearing in connection with this Motion. Undersigned counsel have attempted to confer with the government in a good faith effort to resolve the issues raised in this motion. The government opposes the motion.

## MEMORANDUM OF LAW

### I. Statement of Facts

On December 11, 2024, the government unsealed an indictment in the Southern District of New York charging Mr. Alexander with one count of Conspiracy to Commit Sex Trafficking, pursuant to 18 U.S.C. § 1594(c), and two counts of Sex Trafficking, pursuant to 18 U.S.C. § 1591. *See U.S. v. Alexander*, 24-CR-00676, Dkt. 3 (S.D.N.Y.). That same day, Mr. Alexander was arrested at his parents' home in Miami Beach, Florida, and made a first appearance before Magistrate Judge Lisette M. Reid in the Southern District of Florida. The government moved for pretrial detention.

On December 13, 2024, the Court held a pretrial detention hearing, at which the government called FBI Special Agent Justine Atwood as a witness. At no point during the hearing did the government turn over any Jencks Act material. Prior to cross examination and again at the end of the hearing, Mr. Alexander requested Jencks materials and any reports prepared by Special Agent Atwood. The Court ordered the government to turn over Jencks material immediately after the hearing and stated that the hearing could be reopened if the documents produced by the government contained anything material to the subject of the hearing.

Mr. Alexander offered an extensive bail package, which included: $115 million bond secured by real estate owned by Mr. Alexander, his parents and his brothers, surrender of his U.S. passport, and home detention with GPS monitoring at his parents' Bal Harbor home with his wife and infant child.

At the conclusion of the hearing, the Court issued an oral decision to detain Mr. Alexander, in which it found that the combination of conditions offered alleviated any potential risk of danger to the community posed by Mr. Alexander, but that he posed a risk of flight pursuant to 18 U.S.C. § 3142(e). Mr. Alexander waived an identity hearing and consented to removal of the proceeding to the Southern District of New York.

Moments ago, this Court entered a "PAPERLESS ORDER granting [16] Motion for Pretrial Detention as to Tal Alexander (1) as to risk of flight only. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024." Mr. Alexander's co-defendants, Oren Alexander and Alon Alexander (collectively, "Codefendants"), were also arrested on the instant indictment on December 11, 2024. Their initial appearance and detention hearing has not yet been scheduled.

## II.     Argument

The Court should exercise its discretion to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f) and impose a stay of removal so that it can complete the hearing. A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). This statutory "provision is, in effect, a codification of a court's inherent reconsideration authority." *United States v. Pon*, 2014 WL 3340584, at *3 (M.D. Fla. May 29, 2014).

The Court should reopen the detention hearing because (i) the Government failed to produce required Jencks Act material, (ii) Mr. Alexander did not have a meaningful opportunity to address concerns raised sua sponte in the Court's decision with respect to his family's financial resources; and (iii) Mr. Alexander wants to correct the government's representation that he is not extraditable from Israel, which is inaccurate.

### A. The Government Failed to Produce Jencks Material Prior to Special Agent Atwood's Cross Examination

The government failed to produce required Jencks Act material in advance of the cross examination of Special Agent Atwood in violation of its obligations under 18 U.S.C. § 3500(b). As a result, Mr. Alexander was deprived of the opportunity to conduct a meaningful and fair cross examination of Special Agent Atwood, the government's only witness. This valuable impeachment material constitutes "information [that] exists that was not known to the movant at the time of the hearing" under 18 U.S.C. § 3142(f).

Pursuant to the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The purpose of the Jencks Act disclosure requirements "is to enable the defense to impeach a government witness during cross examination." *United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007).

The government's Jencks Act obligations apply to detention hearings. *See, e.g.*, *U.S. v. Comas*, No. 13-CR-20850, 2014 WL 129296, at *1 (S.D. Fla. Jan. 14, 2014) (requiring government to disclose Jencks material of federal agent who testified at pretrial detention hearing); *United States v. Wang*, No. 6:23-CR-188-RBD-RMN, 2023 WL 6446084, at *2 (M.D. Fla. Oct. 3, 2023) (requiring government to disclose grand jury testimony of officer called as witness at detention

3

hearing); *United States v. Diaz Guillen*, No. 18-CR-80160, 2022 WL 4119741, at *1 n.2 (S.D. Fla. Sept. 9, 2022) (continuing detention hearing to second day to address Jencks issues with respect to government witness).

In *U.S. v. Comas*, the magistrate judge required the government to call a witness in support of its request for detention and, over the government's objection, ordered the government to disclose Jencks material as it related to the witness's testimony. 2014 WL 129296, at *1. The government did not dispute that "Jencks is generally applicable to pretrial detention hearings" or that "if it calls the witness to testify at the pretrial detention hearing, then it must produce Jencks material." *Id.* at *1-2. Rather, the government asserted that the Court's requirement that it call a witness, as opposed to merely proffering information, necessitated the disclosure of Jencks material. *Id.* at *2. Nevertheless, the Court held that the government was obligated to disclose Jencks material regardless of who (the government or the Court) effectively called the witness. *Id.* "Magistrate judges could just as easily impose a no proffer/live testimony requirement. If that were to happen, then the Jencks material would be required because the Government did, in fact, call the witness." *Id.* at *3.

Here, Special Agent Atwood, the lead case agent, testified that she believed Mr. Alexander posed a risk of flight. Mr. Alexander plainly has the right to cross examine Special Agent Atwood with any material in the government's possession that relates to the subject matter of the testimony. Special Agent Atwood proffered the testimony of forty unnamed accusers, two of which are the subject of substantive counts in the indictment; yet the government has produced none of the Jencks material related to those accusations. Without disclosure of this material, Mr. Alexander has not been afforded a full and fair hearing. Accordingly, the Court should reopen the hearing

4

and, after disclosure of all Jencks material, permit Mr. Alexander to cross examine Special Agent Atwood.

>   B.  **Mr. Alexander Seeks the Opportunity to Present Financial Information to Address Concerns Raised Sua Sponte by the Court**

Second, in issuing its oral decision, the Court speculated that although Mr. Alexander and his family offered a $115 million bond secured by all the real estate his immediate family owns, he nonetheless may still have means to flee because his family may have additional financial resources. The Court raised this issue sua sponte during its ruling. The Court also arrived at its conclusion without the benefit of any evidence of Mr. Alexander's family's full financial picture. The government produced no evidence of Mr. Alexander's finances, aside from broad assertions that the Mr. Alexander comes from significant wealth, which he has "weaponized" for criminality and now attempts to use "to get out of jail."

If the Court reopens the hearing, Mr. Alexander is prepared to present additional evidence, including calling witnesses and producing financial statements under seal, so that the Court is confident that there is sufficient financial disincentive to flee. To allay any concerns of the Court, Mr. Alexander also intends to offer an increased bail package and conditions that mitigate any remaining concerns the Court has regarding risk of flight. Mr. Alexander's parents are willing to sign a bond in any amount secured by the entirety of their assets. They are also preparing their financials for the Court for an in camera review, if that would aid the Court.[1]

Mr. Alexander is prepared to abide by the most stringent conditions of release, including those that this Court previously accepted in *United States v. Ludwigsen*, 99-MJ-03801 (JJO) (S.D.

---

[1] Mr. Alexander's parents would request a reasonable amount be made available for personal living expenses. They have no objection to the Court monitoring these funds during the pendency of the case.

5

Fla. 1999), where the defendant was arrested in the Southern District of Florida on an indictment charging racketeering (murder) conspiracy in the Eastern District of New York.  There, this Court declined to detain the defendant over the government's objection, and the Eastern District of New York likewise approved his release, setting conditions including a multi-million-dollar personal surety bond, surrender of passport, house arrest, and a private security guard to monitor all entries into and exits from the home.  *United States v. Ludwigsen*, 99-CR-520 (ERK), Dkts. 207, 236, 304 (E.D.N.Y.); *see generally United States v. Sabhnani,* 493 F.3d 63, 75 (2d Cir. 2007) (holding that court may release a defendant subject to conditions of home confinement in which, among other things, the defendant pays for private armed security guards); *United States v. Boustani* 932 F.3d 79, 82 (2d Cir. 2019) ("the private-security condition we described in *Sabhnani* may be appropriate where the defendant is deemed to be a flight risk primarily *because of* his wealth. In other words, a defendant may be released on such a condition only where, *but for* his wealth, he would not have been detained.").

### C. Mr. Alexander Seeks the Opportunity to Rebut the Government's Representation Regarding Extradition From Israel

Finally, during its rebuttal, the government represented that Mr. Alexander would not be extraditable should he flee to Israel.  This statement is unequivocally false.  Mr. Alexander seeks the opportunity to present evidence and argument to refute it.

As an initial matter, Israel has an extradition treaty with the United States.  Accordingly, Israel will grant extradition where an individual has been charged or convicted of a felony and where—like here—the conduct at issue is a criminal offense in both the requesting country and Israel.  Under the extradition treaty, Israel extradites not only United States citizens, like Mr. Alexander, but also its own citizens to the United States for certain offenses. *United States v. Kresler*, 392 F. App'x 765, 768–69 (11th Cir. 2010) ("[T]he United States Attorney was under the

6

mistaken belief that Israel would not extradite one of its citizens."); *see also United States v. Samet*, 11 F. App'x 21, 22 (2d Cir. 2001) (granting defendant's motion for remand to reconsider detention where "district court erroneously assumed that Israel does not extradite Israeli residents").

For example, in *United States v. Rosenstein*, the United States Attorneys' Office for the Southern District of Florida successfully extradited an Israeli citizen from Israel in a drug trafficking prosecution. *See* 04-CR-21002, Dkt. 18 (S.D. Fla. April 12, 2006). There, the government requested that the defendant be detained, and the Court set a $10 million bond. *Id; see also United States v. Shai Cohen*, 16-CR-00114, Dkt. 9 (E.D.Va.) (documenting the extradition of an Israeli citizen charged with conspiracy to defraud, money laundering and alien smuggling).[2]

Nevertheless, the government takes the position that Mr. Alexander has significant ties to Israel and poses a risk of flight because (i) his parents are Israeli citizens; (ii) he is Jewish; and (iii) he is a person of means. This argument is patently biased and not grounded in reality or the law.

Mr. Alexander is a United States citizen who has substantial family ties in the United States and who has no history of flight or intentions to flee. Indeed, Special Agent Atwood testified that she did not uncover any information suggesting Mr. Alexander planned or prepared to leave the country, even after news reports in July about the ongoing criminal investigation. Additionally, Mr. Alexander does not hold citizenship in any other country, including Israel, and has not visited Israel in at least three years. There is no precedent of which we are aware where a court has held that a defendant, who is a United States citizen since birth, was more likely to flee because of Israel

---

[2] A quick Google search turns up numerous cases where defendants have been extradited from Israel to stand trial in the United States. *See, e.g.,* https://www.washingtonpost.com/local/public-safety/israel-extradites-accused-russian-computer-hacker-to-united-states/2019/11/12/e40f84ca-057b-11ea-8292-c46ee8cb3dce_story.html; https://archives.fbi.gov/archives/miami/press-releases/2013/fbi-announces-the-extradition-of-a-fugitive-from-israel.

ancestry. As such, Mr. Alexander requests the opportunity to present additional evidence on this point and rebut the government's false representation regarding extradition.

### III. Conclusion

For the reasons set forth above, we respectfully request that the Court grant Mr. Alexander's motion to reopen the detention hearing and stay removal of this case to the Southern District of New York. The defendant respectfully requests that the detention hearing be continued to further advance the grounds for this motion and answer any questions the Court may have.

Dated:   December 16, 2024

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By:   */s/      Milton L. Williams*
Milton L. Williams
Deanna M. Paul
Admitted Pro Hac Vice
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com

**BLACK SREBNICK**

By:  */s/      Howard Srebnick*
Howard Srebnick
201 South Biscayne Boulevard, Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
hsrebnick@royblack.com

*Attorneys for Tal Alexander*