UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-4544-REID

**UNITED STATES OF AMERICA**

vs.

**TAL ALEXANDER,**

    **Defendant,**

_____

**RESPONSE IN OPPOSITION TO MOTION TO
<u>REOPEN DETENTION HEARING AND STAY REMOVAL</u>**

    The United States of America, through the undersigned Assistant United States Attorneys, files this Response in Opposition to the Defendant Tal Alexander's ("Defendant") Motion to Reopen the Detention Hearing and Stay Removal ("Motion"). In the Motion, the Defendant argues that the Magistrate Court should reconsider its Order of Detention, *see* ECF Nos. [17] (paperless order granting detention) and [24], (written order of detention), and reopen the detention hearing because the Defendant (1) is seeking Jencks Act materials; (2) wishes to present additional evidence regarding his family's financial resources; and (3) makes additional arguments about the difficulty (or ease) of extraditing fugitives from Israel. The Defendant submitted a supplemental brief on December 19, 2024. ECF No. [28]. As set forth below, the Motion should be denied in its entirety. None of the reasons cited in the Motion constitute "new evidence" warranting the Court to reconsider or reopen the detention hearing. Moreover, for the reasons set forth below, the Court should not order the government to produce Jencks material in connection with the hearing.

## BACKGROUND

### I.     Procedural History

On December 11, 2024, a grand jury sitting in the Southern District of New York returned a superseding indictment, S1 24 Cr. 676 (VEC) (S.D.N.Y) (the "Indictment"), charging the Defendant in three counts: (1) participating in a sex trafficking conspiracy from at least 2010 through at least 2021, in violation of 18 U.S.C. § 1594(c) (Count One); (2) sex trafficking Victim-1 by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 2 (Count Two); and (3) sex trafficking Victim-2 by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 2 (Count Three). After traveling from New York to Florida the night before his planned arrest, the Defendant was arrested on December 11, 2024, at his parents' house in Bal Harbour. He made his initial appearance in this Court that same day. At his initial appearance, the government moved for pre-trial detention on two statutory bases: (1) that the Defendant posed a danger to specific people and the community because of the nature of the crimes, including that the Defendant is charged with violating 18 U.S.C. § 1591 (which carries a presumption of detention) and faces up to life imprisonment to, *see* 18 U.S.C. § 3142(f)(1)(A)-(B); and (2) because there was a serious risk that the Defendant would flee if released, *see* 18 U.S.C. § 3142(f)(2)(A).

### II.    The December 13, 2024 Detention Hearing

A detention hearing was held on December 13, 2024. At the hearing, the government proceeded by factual proffer.[1] The government's factual proffer included an overview of the charges, including that for more than a decade, from at least 2010-2021, the Defendant and his brothers conspired together to sexually assault, traffic, and forcibly and violently rape dozens of women. (Tr. 6). This conduct included both pre-planned trips and events for which the Defendants

---

[1] The complete factual proffer is at pages 6 to 16 of the transcript of the detention hearing.

2

recruited women to attend and then raped and sexually assaulted them, as well as the opportunistic rapes and sexual assaults of numerous victims who they encountered by chance. (Tr. 8-9). For the planned encounters, the Defendant and his brothers lured women to various locations with the promise of material benefits, such as travel, luxury accommodations, and events or parties in various locations, including the Hamptons, Tulum, and Miami. During these trips and events, the Alexander Brothers, alone, together, and with others, drugged and forcibly raped or sexually assaulted their victims. (Tr. 9). The Defendant and his brothers used a similar playbook to commit rapes and sexual assaults after chance encounters with women. (Tr. 8).

As relevant to the Motion, the government proffered the following specific facts about the Defendant's wealth and foreign connections relevant to his risk of flight:

> The Defendant is a multimillionaire who has the resources to flee and live comfortably in hiding. The Defendant and his family have access to significant wealth.
>
> He and one of his brothers owns a luxury real estate brokerage with a real estate portfolio valued at hundreds of millions of dollars.
>
> They are known in the real estate world for selling high-end luxury homes to celebrities and the ultra rich. The Defendant has properties here in Miami as well as over in New York.
>
> The Defendant and his family also have significant foreign ties. Particularly to Israel and to Brazil. T heir parent[s] are from Israel and the Alexander brothers frequently travel to Israel to visit family, conduct business, and for vacation.
>
> They also travel frequently outside the United States to other locations often booking flights at the last minute and traveling by their private jet or on a yacht.
>
> We have confirmed with OIA, who indicated that despite an extradition treaty, we cannot ensure the Defendant's extradition back to the U.S. should he flee out to Israel.

(Tr. 16-17).

3

At the hearing, in accordance with the practice in the Southern District of Florida, which as explained below, varies substantially from that of the district where charges were filed, the government made FBI Special Agent Justine Atwood available as a witness for cross-examination. The defense engaged in a lengthy cross examination of Agent Atwood on numerous topics, including: the charging instruments returned by the grand jury, (Tr. 19); the length and scope of the investigation, (Tr. 20); a method of travel used by one of the victims described in the indictment, (Tr. 20); the number of women interviewed and length of the charged conspiracy, (Tr. 21-22);[2] that at least one victim may have had "friendly contact" with the Defendant or his brothers after the victim was raped, (Tr. 22-24); the investigative steps taken to obtain electronic communications between the Defendants and the victims, (Tr. 25); that there are only two substantive counts charged in the indictment, (Tr. 25); media reports from around July 2024 regarding the existence of the criminal investigation, (Tr. 26-27); the Defendant's lack of erratic or international travel after the media reports about the criminal investigation, (Tr. 27-28); the circumstances of the Defendant's arrest, (Tr. 29); the fact that the Defendant and his brothers do not own a plane, (Tr. 29); the Defendant's ties to Israel, (Tr. 30); and the Defendant's prior filing of a harassment complaint or threatening a defamation lawsuit in response to allegations that he or one of his brothers had committed a sexual assault, (Tr. 34-35).

---

[2] During cross examination, Agent Atwood was asked, "how many women have you interviewed?" She responded, "approximately 40." (Tr. 22). On redirect examination, Agent Atwood was asked whether the conspiracy "relates to the 40 women," to which she responded "yes," and whether she had been at "the interview[s] of these 40 victims," to which she responded, "most of them." (Tr. 38) At the time of the detention hearing, the FBI had identified approximately 52 victims of the scheme and interviewed approximately 41 witnesses, including approximately 30 who reported being raped or sexually assaulted by the Defendant or his brothers. Since that date, the FBI has interviewed approximately 12 more victims and has received dozens of additional tips about rape and sexual abuse committed by the defendants.

During re-cross examination, defense counsel reemphasized that only two victims were identified in the Indictment despite the numerous victims interviewed and that the Defendant had not fled the country following public reporting of the investigation. (Tr. 41-42).

During argument, defense counsel minimized the government's presentation, noting the following: the Indictment charged "an eleven-year conspiracy and only two victims," (Tr. 53); the Defendant stayed in the United States after a July 2024 news report that stated the FBI was investigating the Defendant and his brothers, (Tr. 54-55); the Defendant's strong ties to the Miami community, (Tr. 55); the Defendant's wife and infant child, and his wife's ties to the community (Tr. 56, 60); the Defendant's lack of an Israeli passport, (Tr. 56); the Defendant's lack of a privately owned jet, (Tr. 56); the lack of evidence of witness tampering and the lawful explanations for a defamation lawsuit, (Tr. 57-58, 69); the fact that the last alleged conspiratorial act was in 2021, (Tr. 58); the size and scope of a proposed bail package, including $115 million in property, numerous co-signers, and home detention (Tr. 59-63, 71).

After a lengthy hearing, the Court ultimately concluded that no combinations of conditions could reasonably assure the appearance of the Defendant for court and ordered pre-trial detention. (*See* Tr. 72-73). The Defendant also signed a written waiver of an identity and removal hearing. (Tr. 75). As the Court advised the Defendant that he was giving up his right to an identity hearing and would have to defend the case in New York, the Court announced that it would sign the removal order to transfer the case to New York. (Tr. 75-76). The Defendant verbally acknowledged his understanding that the case would be transferred. (Tr. 76).

On December 17, 2024, the Court issued a written order of detention. ECF no. [24] (the "Order"). In the Order the Court found

> [T]he government has met its burden to demonstrate that ALEXANDER is a serious flight risk and that the defense has failed

5

>  to rebut the presumption on that ground. In finding pre-trial detention is appropriate in this case, the Court is considering the strong weight of the evidence; the significant sentence the Defendant faces; and the nature and circumstances of the offense; and the personal characteristics of the Defendant.

(Order at 3). Among other considerations, the Court noted the anticipated evidence included, in addition to victim and witness testimony, "electronic evidence, physical evidence, and documentary evidence, among other things." (*Id.*). The Court further noted the Defendant's international contacts and travel, and access to private jets or yachts and travel arrangements that are "frequently done at a moment's notice and not scheduled in advance," and that his proposed living situation "would give him direct ocean access and the means to quickly flee." (*Id.*). The Court also found that with "the potential penalties here, both incarceration and reputational harm, the Defendant has every incentive to flee to avoid prosecution and a public trial." (*Id.*) Ultimately, the Court concluded, "the Court finds that the government has proven by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance at trial and orders that he be detained." (*Id.* at 4).

On December 16, 2024, the Defendant filed the Motion to reopen the detention hearing and stay his removal to New York. The government submits this memorandum in opposition to that motion.

**ARGUMENT**

**I.     The Court Should Deny the Request for *Jencks* Material as a Fishing Expedition**

    **A.     Additional Background**

At the beginning of the detention hearing, the defense asked the Court for *Jencks* materials following Agent Atwood's testimony. (Tr. 5). The Assistant United States Attorney representing the government for the purpose of the out-of-district detention hearing noted that the request had been made only just before the hearing, but the AUSA believed the prosecution team in New York

6

would be able to provide the materials at some point after the hearing.³ The hearing proceeded, and the Court told the defense that if it identified "something in there that you believe that it should have been considered, you have the opportunity to appeal my decision . . . [a]nd bring that to the District Court's attention." (Tr. 6). The Court later said, before cross examination began, that if a review of the materials later gave new information that "has a material bearing on the hearing," the Defendant could "file a motion to re-open the hearing stating what that evidence is and if it is material." (Tr. 16-17).

In response, defense counsel, told the Court that, "I am back from New York and practice a lot in the Southern and Eastern Districts up there. And normally we will get in many cases 3500 material beforehand or at least at the end of the direct examination of this case proffer." (Tr. 17). As set forth below, this representation was inaccurate. Later in the hearing, at the conclusion of his argument, defense counsel expanded his request, saying,

> Thank you very much for your time. I have one other request that I forgot. If whatever reports that this FBI, in addition to the 3500 material, whatever report that she might have filled out we would request as well.

(Tr. 60).

### B. The Defendant's Request for *Jencks* Materials Does Not Provide a Basis to Reopen the Hearing and Should be Denied

The Defendant moves to reopen bail, in part, based on unspecified *Jencks* material. This fishing expedition should be denied and rejected as a basis to reopen the hearing. As an initial matter, defense counsel misrepresented to the Court that the normal practice in the Southern District of New York ("SDNY") is to provide *Jencks* materials during detention proceedings: that is incorrect. In SDNY detention hearings, courts permit both the government and Defendants to

---

³ The undersigned prosecutors, the team assigned to the case, were not present during the hearing.

proceed by proffer alone and do not require the government to produce a live witness, either for direct testimony or cross examination. Accordingly, in the normal course, there is no *Jencks* production. *See United States v. Rivera-Banchs*, No. 20-2873, 2021 WL 4484908, at *2 (2d Cir. Oct. 1, 2021), as amended (Oct. 4, 2021) ("The rules of evidence do not apply in a detention hearing and the government may proceed by proffer alone."); *United States v. Petrov*, 604 F. App'x 66, 67 (2d Cir. 2015); *United States v. Horton*, No. S1 16-CR-0212 (LAK), 2016 WL 6126669, at *7 (S.D.N.Y. Oct. 20, 2016) ("[a] detention hearing need not be an evidentiary hearing. . . . either party may proceed by proffer and the rules of evidence do not apply. This flows from the fact that the thrust of the Bail Reform Act is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials. Nor is a detention hearing to be used as a discovery tool for the defendant.").

In SDNY, the normal practice regarding production of *Jencks* is to require it only to be produced near the time of trial, in accordance with the Second Circuit's holding that the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001); *see, e.g.*, *United States v. Gillier*, No. 11 Cr. 409 (PAE), 2022 WL 179204, at *3 (S.D.N.Y. Jan. 19, 2022) ("The Government's timetable for producing [*Jencks*] material [two weeks before trial] is common in this District."); *United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) ("The practice in this District is to provide both *Giglio* and Jencks Act material at the same time, which should be at least one day prior to the testimony of the witness."); *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *23 (S.D.N.Y. Jan. 18, 2017) (Jencks Act materials are "typically produced a week or two before the start of trial, depending on the complexity of the case"); *Nigro v. United States*, No. 09 Cr. 1239 (PKC), 2016 WL 3211968, at *2 (S.D.N.Y. June 9, 2016) ("As

8

is customary in this district, the government agreed to an earlier voluntary production [of *Jencks* materials] and, in this case, that production was much earlier than usual the Thursday before the start of a Monday trial.").

The government recognizes that although the case is charged in New York, the Defendant was arrested and presented in the Southern District of Florida. But even in this District, there is no mandate that courts require the production of *Jencks* materials in connection with detention hearings. *See, e.g.*, Fed. R. Crim. P. 46(j) (noting that Rule 26.2 applies in a detention hearing unless the court "for good cause rules otherwise"). Such "good cause" is certainly present here where the Defendant would not be entitled to *Jencks* material had he been arrested in the district where the charges lie. Instead, because he happened to travel out of district the night before his arrest, the Defendant seeks what amounts to a windfall of early *Jencks* production that he would not be entitled to in SDNY—including FBI investigative reports detailing the allegations of numerous adult and minor victims not identified in the Indictment.[4] These reports, even in redacted form, contain information sufficient to identify the victims. In these circumstances, the government respectfully submits that the Court has good cause to reconsider the Defendant's request for *Jencks* material.

In a case where the Defendants have threatened victims for coming forward, the potential danger of such premature disclosures cannot be ignored and certainly outweighs the Defendant's interest in obtaining the material for purposes of an out-of-district detention hearing which will likely be appealed to the District Court in a district with vastly different procedures. The authority the Defendant cites does not persuade otherwise.

---

[4] Defense counsel expressly requested these other reports during the hearing. (Tr. 60).

9

In *United States v. Comas*, a case the Defendant relies on heavily, Judge Goodman of this District required the government to produce *Jencks* materials in connection with a detention hearing but was clear that the requirement is not absolute and should be evaluated "on a case-by-case basis." *United States v. Comas*, No. 13 Cr. 20850, 2014 WL 129296, at *3 (S.D.F.L. Jan. 14, 2014). *Comas* is also clear that the fact that a detention hearing is held does not by itself entitle a defendant to a broad production. Indeed, any production of *Jencks* materials should be limited, as the only valid reason for the production of the materials is to permit impeachment by prior inconsistent statement, not to turn a detention hearing into a discovery vehicle. *Id.*; *see United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *see also United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007); *United States v. Delgado*, 56 F.3d 1357, 1364 (11th Cir. 1995) ("*Jencks* does not authorize fishing expeditions.").

Although the Defendant uses his request for *Jencks* as a pretext for reopening bail, it is clear from the record is that the Defendant does not expect to find a prior inconsistent statement of Agent Atwood's justifying a new hearing, but rather seeks to use the proceeding to receive early production of materials which he, in the normal course, would not be entitled. *See* Rule 10(c) of the Individual Practices in Criminal Cases for U.S.D.J. Valerie E. Caproni (S.D.N.Y.), https://nysd.uscourts.gov/hon-valerie-e-caproni (encouraging but not requiring production of *Jencks* materials prior to trial). Defense counsel made this point explicitly, when trying to throw in as an aside a request not only for Agent Atwood's direct prior statements in this case, but also any FBI reports, which counsel knows are reports of victims' statements.

These reports are surely not needed to ensure an opportunity to effectively cross-examine Agent Atwood. During the hearing, defense counsel cross examined Agent Atwood at length about a number of topics. With respect to the Defendant's risk of flight, the only issue relevant to

the current motion, the Defendant vigorously cross-examined Agent Atwood on a number of topics, including the strength of the case given the limited number of statutory victims, that the Defendant had not engaged in any unusual travel after the investigation was reported publicly, that Agent Atwood could not cite any evidence that the Defendant was making plans to leave the country, and that the Defendant's ties to Israel are not particularly rare.

The scope and reasoning of the Court's ruling also make clear that the reports of victims' statements, and any potential cross examination of Agent Atwood about them, are not germane to any motion to reconsider the Court's detention decision. The basis for the Court's detention finding was limited to the risk of flight presented by the Defendant. The only potential connection between that finding and the defendant's requests for *Jencks* is, arguably strength of the evidence. *See* 18 U.S.C. § 3142(g)(2). Here, the Court's order noted that the strength of the evidence came from the "electronic evidence, physical evidence, and documentary evidence, among other things," that corroborated and supplemented anticipated trial testimony.[5] But the bulk of the Court's reasoning related to the Defendant's foreign contacts, foreign travel, ability to engage in no-notice travel, financial resources, and the statutory charges and penalties—all factors having little-to-nothing to do with Agent Atwood's testimony at all, and certainly nothing to do with the records he's asking for now.

It is but chance, and a last-minute private flight to Miami, that resulted in the Defendant's arrest in Florida, rather than New York. The Defendant has understandably sought to turn this into a windfall that would grant him early access to the reports he needs to identify witnesses against him—information that in the Southern District of New York he likely would not get until shortly

---

[5] With respect to that anticipated trial testimony, defense counsel cross-examined the case agent about the approximate number of women interviewed and details about the statutory victims' accounts. (Tr. 22 and 25).

11

before trial. The Court should not grant his request. As the Court told defense counsel during the hearing, any basis to reopen the hearing must have a material bearing on the issues presented. Because of the Court's narrow ruling and the reasons given for that ruling, early access to victim statements is irrelevant to his motion. The Court should deny this application.[6]

## II. The Defendant's Motion to Reopen the Hearing Fails

### A. Legal Standard

The law provides two distinct methods to revisit detention. The first is an appeal of a detention order to the district court. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988) ("Pursuant to 18 U.S.C. § 3145, following a magistrate's order that a detainee be held without bond pending trial, the detainee may move the district court to revoke or amend the magistrate's pretrial Detention Order.").[7] The second is a request to reopen a detention hearing, which requires that "the Court find[] that 'information exists that was not known to the movant at the time of the hearing and that has a material bearing' on the issue of detention." *United States v. Gallo*, No. 12-20630-CR, 2014 WL 1230717, at *3 (S.D. Fla. Mar. 25, 2014) (quoting 18 U.S.C. § 3142(f)(2)).

"Courts have interpreted that [reopening] provision strictly, holding that reopening is unwarranted if the newly offered evidence was available at the time of the hearing." *United States v. Pon*, No. 3:14-CR-75-J-39PDB, 2014 WL 3340584, at *3 (M.D. Fla. May 29, 2014) (citing

---

[6] If the Court does direct the government to produce *Jencks* material, any production should be limited to the proper purpose of allowing the Defendant to impeach the government's witness. *See United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007) ("The purpose of the Jencks Act disclosure requirements is to enable the defense to impeach a government witness during cross examination."). Therefore, any production should be limited to the issues relevant to cross examination, produced for a limited period of time, and subject to a protective order to protect the identification of victims and witnesses and prevent public dissemination of the materials.

[7] Pursuant to 18 U.S.C. § 3145(b), if a Defendant is ordered detained "by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense", the Defendant may file a motion to amend or revoke the order with the judge having original jurisdiction over the offense. Here, any such appeal should be filed in SDNY.

*United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) and *United States v. Hare*, 873 F.2d 796, 799 (5th Cir.1989)). As the court explained in *Pon*:

> As written, the reopening provision is, in effect, a codification of a court's inherent reconsideration authority tempered by the understanding that, to promote finality, preserve judicial resources, and discourage piecemeal presentations, a court should not reconsider a decision based on information that could have been presented the first time around. *See Lederman v. United States,* 539 F. Supp. 2d 1, 2 (D.D.C.2008) ("Due to considerations of finality, predictability and preserving judicial resources, . . . a court should be [loath] to revisit its own prior decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."); *cf. Mays v. USPS,* 122 F.3d 43, 46 (11th Cir. 1997) (holding, in Fed. R. Civ. P. 59(e) context, that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion"). Under the provision, reopening is unwarranted if the newly offered evidence was available at the time of the hearing. *See United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare,* 873 F.2d 796, 799 (5th Cir. 1989). And even then, reopening is discretionary. *United States v. Watson,* 475 F. App'x 598, 599–600 (6th Cir. 2012).

*Pon*, 2014 WL 3340584 at *9.

As argued below, the Court should deny the Motion because the Defendant has failed to meet his burden to show that "new evidence" exists warranting the relief sought. Section 3142(f) states:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). On a motion to reconsider or reopen a detention hearing, the "[d]efendant is required to establish that (1) information exists that was not known to defendant at the time of the

13

initial detention hearing; and (2) that such information has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. *United States v. Diaz Guillen*, No. 18-CR-80160, 2022 WL 4119741, at *3 (S.D. Fla. Sept. 9, 2022) (Middlebrooks, J.) (denying a motion to reconsider or reopen detention hearing) (citing *United States v. Haynes*, No. 19-cr-80045, 2019 WL 5538300, at *1 (S.D. Fla. Oct. 28, 2019); *United States v. Ramos*, No. 14-80052-CR, 2014 WL 1515264, at *2 (S.D. Fla. Apr. 7, 2014).

Courts in other districts and circuits have interpreted Section 3142(f)'s "not known to the movant at the time of the hearing" "language to mean not just actual knowledge, but also constructive knowledge, *i.e.*, knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *United States v. Chappell*, No. 3:17-CR-361-B (2), 2017 WL 11517833, at *4 (N.D. Tex. Oct. 10, 2017). "Thus, a litigant cannot invoke 3142(f) to reopen and offer statements about his character from relatives and friends; he is charged with constructively knowing of those statements. A defendant cannot forego an opportunity to confront a witness and elicit favorable testimony, and then later claim the testimony he or she failed to elicit would constitute new information." *United States v. Spring*, No. CRIM.A. 14-10303, 2014 WL 6609156, at *2 (D. Mass. Nov. 20, 2014) (citations omitted).

 **B. Argument**

As discussed below, none of the arguments raised by the Defendant support reopening the detention hearing. Moreover, given that reopening the hearing is at the discretion of the Court, and that the defendant is entitled to have another hearing before the District Court in the Southern District of New York, the Court should decline to use its discretion in these unique circumstances.

### 1.   The Requested *Jencks* Material Does Not Provide a Basis to Reopen the Hearing

As discussed above, the Defendant would not be entitled to the *Jencks* material he seeks in New York, and his request for that material should be denied. In any event, as he cannot point to any such specific material that would constitute new information justifying reopening the hearing, his application on this score should be denied as speculative and not ripe. *See* 18 U.S.C. § 3142(f)(2). *First*, for the reasons discussed *supra*, the *Jencks* material the Defendant seeks—including detailed FBI investigative reports of victims' statements—does not materially relate to the factors on which the Court relied in finding that the Defendant posed a flight risk. On that basis, the motion must be denied. *Second*, any application to reopen bail premised on *Jencks* material could not be made until and if the Defendant identified specific information included in such material that he would have sought to cross-examine the witness about. Therefore, even to the extent that the Court orders the government to produce *Jencks* material, it should deny without prejudice the Defendant's instant motion to reopen as not ripe.[8]

### 2.   The Defendant Had Ample Opportunity To Address Concerns About His Family's Wealth

The Defendant also requests that the Court reopen the hearing so that he might present additional witnesses or evidence regarding his "family's full financial picture" and to "allay any concerns of the Court … regarding risk of flight." (Dkt. 22 at 5). This is not a proper basis to reopen the detention hearing because, as the Defendant must concede, his family's financial

---

[8] In a letter filed on December 19, 2024, the Defendant asks the Court to schedule the reopened hearing on Friday, December 20, 2024. (Dtk. 27 at 1). This request presumes that the Defendant's motion will be granted, despite the fact that the government had not yet responded to the motion and the Court had not yet had an opportunity to rule. Such a request is simply premature. Even if the Court were to order the hearing reopened, the Defendant's proposed schedule does not allow sufficient time for the Court to rule, for the Defendant's presence to be arranged, and to allow the government time to respond to the particular issues and scope of the ruling.

situation was known to the Defendant at the time of the hearing. The Defendant could have cross examined Agent Atwood or offered evidence of his family's resources at the hearing, but he chose not to do so. Defense counsel did argue to the Court that the Defendant's pretrial release would be backed by his family's substantial financial resources, including by representing to the Court that his family "offered a $115 million bond," (*Id.* at 5) secured by the family's property, including the Defendant's home, his parents' home, his brothers' homes, and his office building. (Tr. 60-63). If the Defendant wanted to provide additional evidence of his family's financial situation, he should have done so at the initial detention hearing. *Pon*, 2014 WL 3340584, at *3 ("a court should not reconsider a decision based on information that could have been presented the first time around.").

Perhaps in recognizing this fatal flaw, the Defendant argues that he "did not have a meaningful opportunity to respond to the Court's statement in its detention ruling which recognized that, despite the proposed bond, "this family has, however, extensive resources" and noted that, while it is unclear at this stage how significant $115 million is for the Defendant's family, "he clearly has the financial resources to flee if he chose to do so." (Tr. 73.) The Defendant's assertion still "misses the mark." *United States v. Brown*, 21 Cr. 348 (SPF), 2022 WL 309430 at *3 (M.D. Fla. Feb. 2, 2022) (denying a motion to reopen based on statements made in detention ruling). In *United States v. Brown*, a court in the Middle District of Florida was confronted with a nearly identical issue and determined that the time at which the defendant knew of the facts he wished to present is what mattered, not whether the defendant was aware of the Court's interpretation of the evidence presented at the hearing. *Id*. There, a magistrate judge detained a defendant, in part, because of evidence related to a sign posted on the defendant's door that the judge interpreted as being a sign of danger. *Id*. at 2. In his motion, the defendant asserted

that "the Court's interpretation [of the sign] was not known until the hearing was being conducted, and [the defendant's] friends and colleagues did not receive[ ] a copy of [the sign], along with the Court's stated interpretation of [the sign], until after the hearing." *Id*. at *3. From this, the defendant asked to reopen the hearing "to call . . . witnesses to explain to the Court how they interpret [the sign] in light of their knowledge of [the defendant] and how the Court misinterpreted the language of [the sign]." *Id*. at *2. The Court flatly rejected this argument and ruled that because the defendant knew he had made the sign and knew that the government intended to offer it as evidence, he should have either called these friends or sought a continuance to arrange for their testimony. *Id*. at *2-3.

The Defendant's argument here fails for precisely the same reason. As the Court in *Brown* stated, "[w]hile [the defendant] may regret the decision to not call his friends to testify at that hearing, it does not mean the evidence was 'not known' to him." *Id*. at *3. The Defendant certainly knew that his, and his family's resources, would be relevant to a determination of whether he was a flight risk. Indeed, he put his family's financial resources at issue by offering to use their resources to support his bail package. The Defendant had the opportunity to provide this information to the court at the time of the detention hearing—he asked for a three-day adjournment to prepare for it—and chose not to do so. Accordingly, he has failed to meet the statutory requirement for reopening his detention hearing under 18 U.S.C. § 3142(f) as it relates to his family's financial picture.

In his supplemental submission, the defendant now proposes additional conditions, including a bond cosigned by the Defendant's parents "in any amount secured by the entirety of their assets" and to "retain a private security service . . . to provide a full timed armed security detail at the location of Mr. Alexander's home detention." (Dkt. 28 at 2). As discussed above,

17

proposing a new bail condition that the Defendant could have proposed at the time of the initial hearing is not an appropriate basis for reopening a hearing. *Pon*, 2014 WL 3340584, at *3 ("a court should not reconsider a decision based on information that could have been presented the first time around."). As with the information regarding his family's assets, the Defendant could have made this proposal at the initial hearing but he chose not to do so. *See Brown* 2022 WL 309430 at *3. If the Defendant wishes to propose an augmented bail package, he should appeal to the District Court and the parties can address that issue before Judge Caproni. Moreover, had the Defendant proposed this condition at the initial hearing, and were he to do so on appeal, the government would nonetheless oppose bail on these conditions. The Second Circuit, where the Defendant's case will be tried, generally disfavors granting bail to wealthy defendants where bail would not be granted to an indigent defendant. *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019) ("[T]he Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails."); *see also United States v. Banki*, 369 F. App'x 152, 153-54 (2d Cir. 2010) (this Court is "troubled" by the possibility of "allow[ing] wealthy defendants to buy their way out by constructing a private jail.") (citation omitted). At any rate, the defendant's private jail proposal "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (citation omitted). Simply put, the Defendant should not be able to evade detention here because of his family's assets.

### 3. Clarifying The Record On Extradition Does Not Provide A Basis To Reopen

The Defendant's request to reopen the Hearing to rebut the government's representation on extradition from Israel similarly fails. As a threshold matter, the government's factual proffer

accurately stated that "We have conferred with [DOJ's Office of International Affairs], who indicated that despite an extradition treaty, we cannot ensure the Defendant's extradition back to the US should he flee out to Israel."[9] (Tr. 16). The government also addressed this point in its detention letter provided to the Court prior to the Hearing, stating that while the U.S. extradition treaty with Israel does provide for extradition of Israeli nationals,[10] "extradition from Israel is frequently a multi-year, drawn out process, at the end of which extradition to the United States is not guaranteed." (Ltr. at 11). Consequently, the Defendant was well aware that this issue would be addressed at the Hearing and could have provided additional information on the extradition treaty to the Court at the Hearing. *See Pon*, 2014 WL 3340584, at *3.

Further, the Defendant has not shown that this particular issue is in fact material to the question of detention. Indeed, the Defendant *cannot* show that this is a material issue—the Court did not reference the issue of extradition in either its oral or its written detention order. (*See* Tr. 72-73; Dkt. 24); *United States v. Gallo*, No. 12-20630-CR, 2014 WL 1230717, at *4 (S.D. Fla. Mar. 25, 2014) (finding that "the information presented in the motion would not have a material bearing on, or change, the Court's conclusion that the Defendant should be held in pretrial detention.").

---

[9] In his Supplemental Submission, the Defendant makes much of the government's arguments on this point. (*See* Dkt. 28 at 1-2). The Defendant's characterization takes the government's statements out of context. During the argument the government stated that should the Defendant flee to Israel "they are not going to be able to extradite him back and *that is not a sure thing*. The fact that we are *potentially* not going to be able to extradite him surely is another cause for concern and demonstrates that he is a risk for flight." (Tr. 51-52 (emphasis added).) This statement reflects that the Defendant's extradition is not guaranteed should he flee to Israel.

[10] Defense counsel has represented that the Defendant is not an Israeli national.

## CONCLUSION

For the reasons stated above, the Court should deny the Defendant's Motion to reopen the detention hearing and his request for *Jencks* material.

                              Respectfully submitted,

                              MARKENZY LAPOINTE
                              UNITED STATES ATTORNEY

By:   */s/ Lauren A. Astigarraga*
      Lauren A. Astigarraga
      Assistant United States Attorney
      FL Bar No. 0119473
      99 N.E. 4th Street
      Miami, FL 33132
      Telephone (305) 961-9105
      Lauren.Astigarraga@usdoj.gov

      EDWARD Y. KIM
      ACTING UNITED STATES ATTORNEY
      SOUTHERN DISTRICT OF NEW YORK

By:   /s/
Kaiya Arroyo
Elizabeth A. Espinosa
Andrew Jones
Assistant United States Attorneys
26 Federal Plaza, 37th Floor
New York, NY 10278
Telephone (212) 637-2249
Andrew.Jones2@usdoj.gov