BNDLMR,CLOSED

# U.S. District Court
# Southern District of Florida (Miami)
# CRIMINAL DOCKET FOR CASE #: <u>1:24–mj–04544–LMR</u>–1

Case title: USA v. Alexander

Date Filed: 12/11/2024

Date Terminated: 12/23/2024

Assigned to: Magistrate Judge Lisette M. Reid

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Tal Alexander**<br>50978–511<br>*YOB 1986; English*<br>*TERMINATED: 12/23/2024* | represented by | **Howard Milton Srebnick**<br>Black Srebnick, P.A.<br>201 S Biscayne Blvd, Ste 1300<br>Miami, FL 33131<br>305–371–6421<br>Fax: 305–358–2006<br>Email: HSrebnick@RoyBlack.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

**Deanna Paul**
Walden Macht Haran & Williams, LLp
250 Vessey Street 27th Floor
New York, NY 10281
(212) 335–2035
Email: DPaul@wmhwlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Joel M. Denaro**
Joel Denaro, P.A.
1000 Brickell Avenue
Suite 201
Miami, FL 33131
305–371–1883
Email: jdenaro@joeldenarolaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Temporary*

**Milton L. Williams**
Walden Macht Haran & Williams LLP
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335–2030

Email: mwilliams@wmhlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**                                    **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                 **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                        **Disposition**

18:U.S.C.§1594(c) CONSPIRACY TO
COMMIT SEX TRAFFICKING;
18:U.S.C.§1591(a)and(b)(1),and(2)
SEX TRAFFICKING OF VICTIM–1
BY FORCE, FRAUD, OR
COERCION;
18:U.S.C.§1591(a)and(b)(1)and(2) SEX
TRAFFICKING OF VICTIM–2 BY
FORCE, FRAUD, OR COERCION

**Plaintiff**

**USA**                          represented by   **Noticing AUSA CR TP/SR**
                                                  Email: Usafls.transferprob@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Retained*

                                                  **Lauren Alexandra Astigarraga**
                                                  DOJ–USAO
                                                  99 NE 4th St
                                                  Miami, FL 33132
                                                  305–961–9000
                                                  Email: lauren.astigarraga@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 12/11/2024 | 1 | Magistrate Judge Removal of Arrest Warrant and Superseding Indictment from SOUTHERN DISTRICT OF NEW YORK Case number in the other District 24–CRIM–676 as to Tal Alexander (1). (at) (Entered: 12/11/2024) |
| --- | --- | --- |
| 12/11/2024 | 2 | **ORAL** MOTION to Unseal Case by Tal Alexander. (kan) (Entered: 12/12/2024) |
| 12/11/2024 | 3 | **ORAL** MOTION for Pretrial Detention hearing by Tal Alexander. (kan) (Entered: 12/12/2024) |
| 12/11/2024 | 4 | ORDER granting 2 Motion to Unseal Case as to Tal Alexander (1). Signed by Magistrate Judge Lisette M. Reid on 12/11/2024. *See attached document for full details.* (kan) (Entered: 12/12/2024) |
| 12/11/2024 | 5 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Joel M. Denaro appearing for Tal Alexander (kan) (Entered: 12/12/2024) |
| 12/11/2024 | 6 | **ORAL** DEFENDANT'S MOTION to have PTD hearing on Friday by Tal Alexander. (kan) (Entered: 12/12/2024) |
| 12/11/2024 | 7 | Minute Order for proceedings held before Magistrate Judge Lisette M. Reid: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Tal Alexander held on 12/11/2024. Granting 3 Motion for Pretrial Detention hearing as to Tal Alexander (1); Bond recommendation/set: Tal Alexander (1) PTD requested by the Government: risk of flight and danger to the community. Date of Arrest or Surrender: 12/11/2024. Granting 6 Motion to have PTD hearing on Friday as to Tal Alexander. (Detention Hearing and Removal Hearing set for 12/13/2024 01:00 PM in Miami Division before MIA Duty Magistrate Judge.) (Digital 13:27:10)<br><br>It is ORDERED AND ADJUDGED that pursuant to the Due Process Protections Act, the Court confirms the United States obligation to disclose to the defendant all exculpatory evidence– that is, evidence that favors the defendant or casts doubt on the United States case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and ORDERS the United States to do so. The government has a duty to disclose any evidence that goes to negating the defendants guilt, the credibility of a witness, or that would reduce a potential sentence. The defendant is entitled to this information without a request. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court. Signed by Magistrate Judge Lisette M. Reid (kan) (Entered: 12/12/2024) |
| 12/12/2024 | 8 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Milt Williams. Filing Fee $ 250.00. Receipt # AFLSDC–18049396 by Tal Alexander. Responses due by 12/26/2024. (Attachments: # 1 Certification)(Denaro, Joel) (Entered: 12/12/2024) |
| 12/12/2024 | 9 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Deanna Paul. Filing Fee $ 250.00. Receipt # AFLSDC–18049409 by Tal Alexander. Responses due by 12/26/2024. (Attachments: # 1 Certification)(Denaro, Joel) (Entered: 12/12/2024) |
| 12/13/2024 | | Attorney update in case as to Tal Alexander. Attorney Deanna Paul, Milton L. Williams for Tal Alexander added (pt) (Entered: 12/13/2024) |
| 12/13/2024 | 10 | |

|  |  | PAPERLESS ORDER denying 8 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Milt Williams as to Tal Alexander. Counsel seeking Pro Hac Vice admission failed to sign his Certification. The Motion may be refiled. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari) (Entered: 12/13/2024) |
|---|---|---|
| 12/13/2024 | 11 | PAPERLESS ORDER denying 9 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Deanna Paul as to Tal Alexander. Counsel seeking Pro Hac Vice admission failed to sign her Certification. The Motion may be refiled. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari) (Entered: 12/13/2024) |
| 12/13/2024 | 12 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Deanna Paul. Filing Fee $ 250.00. Amended/Corrected Motion to Appear Pro Hac Vice Filed – Filing Fees Previously Paid. See 9 Motion to Appear Pro Hac Vice, by Tal Alexander. Responses due by 12/27/2024. (Attachments: # 1 Certification)(Denaro, Joel) (Entered: 12/13/2024) |
| 12/13/2024 | 13 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Milt Williams. Filing Fee $ 250.00. Amended/Corrected Motion to Appear Pro Hac Vice Filed – Filing Fees Previously Paid. See 8 Motion to Appear Pro Hac Vice, by Tal Alexander. Responses due by 12/27/2024. (Attachments: # 1 Certification)(Denaro, Joel) (Entered: 12/13/2024) |
| 12/13/2024 | 14 | PAPERLESS ORDER granting 12 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Deanna Paul as to Tal Alexander. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari) (Entered: 12/13/2024) |
| 12/13/2024 | 15 | PAPERLESS ORDER granting 13 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Milt Williams as to Tal Alexander. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari) (Entered: 12/13/2024) |
| 12/13/2024 | 16 | **ORAL** MOTION for Pretrial Detention by USA as to Tal Alexander. (fbn) (Entered: 12/16/2024) |
| 12/13/2024 | 17 | PAPERLESS ORDER granting 16 Motion for Pretrial Detention as to Tal Alexander (1) as to risk of flight only. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (fbn) (Entered: 12/16/2024) |
| 12/13/2024 | 18 | Minute Order for proceedings held before Magistrate Judge Lisette M. Reid: Pretrial Detention Hearing as to Tal Alexander held on 12/13/2024. Witness Special Agent, Justin Atwood (FBI) sworn and testified. Bond recommendation/set: Tal Alexander (1) Defendant Detained based on risk of flight only. Defendant Waived Removal. Order of Removal issued. (Digital 14:05:09// 15:53:53) Signed by Magistrate Judge Lisette M. Reid (fbn) (Main Document 18 replaced on 12/19/2024) (br). (Entered: 12/16/2024) |
| 12/13/2024 | 19 | EXHIBIT and WITNESS LIST by Tal Alexander. (fbn) (Entered: 12/16/2024) |
| 12/13/2024 | 20 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Tal Alexander. (fbn) (Entered: 12/16/2024) |
| 12/16/2024 | 21 | |

| | | |
|---|---|---|
| | | NOTICE OF ATTORNEY APPEARANCE: Howard Milton Srebnick appearing for Tal Alexander . Attorney Howard Milton Srebnick added to party Tal Alexander(pty:dft). (Srebnick, Howard) (Entered: 12/16/2024) |
| 12/16/2024 | 22 | Defendant's MOTION to Reopen Detention Hearing and Stay Removal and Memorandum in Support by Tal Alexander. Responses due by 12/30/2024. (Srebnick, Howard) (Entered: 12/16/2024) |
| 12/16/2024 | 23 | PAPERLESS *SUA SPONTE* ORDER as to Tal Alexander. The Government shall file its Response to Defendant's Motion to Reopen Detention Hearing and Stay Removal [ECF No. 22] by **December 18, 2024.** Signed by Magistrate Judge Lisette M. Reid on 12/16/2024. (ari) (Entered: 12/16/2024) |
| 12/17/2024 | | Set Deadlines in case as to Tal Alexander 22 Defendant's MOTION to Reopen Detention Hearing and Stay Removal and Memorandum in Support . The Government shall file its Response to Defendant's Motion to Reopen Detention Hearing and Stay Removal [ECF No. 22 ] by December 18, 2024. Responses due by 12/18/2024. Per DE# 23 . (nan) (Entered: 12/17/2024) |
| 12/17/2024 | 24 | ORDER OF DETENTION as to Tal Alexander. Signed by Magistrate Judge Lisette M. Reid on 12/17/2024. *See attached document for full details.* (br) (Entered: 12/17/2024) |
| 12/18/2024 | 25 | MOTION for Extension of Time to File Response *to the Defendant's Motion to Reopen the Detention Hearing* by USA as to Tal Alexander. Attorney Lauren Alexandra Astigarraga added to party USA(pty:pla). Responses due by 1/2/2025. (Astigarraga, Lauren) (Entered: 12/18/2024) |
| 12/18/2024 | 26 | PAPERLESS ORDER granting 25 Unopposed Motion for Extension of Time to File Response to the Motion to Reopen the Detention Hearing. [ECF No. 22]. The Government shall file its Response to the Motion by **December 19, 2024.** Signed by Magistrate Judge Lisette M. Reid on 12/18/2024. (ari) (Entered: 12/18/2024) |
| 12/18/2024 | 27 | RESPONSE to Motion by Tal Alexander re 25 MOTION for Extension of Time to File Response *to the Defendant's Motion to Reopen the Detention Hearing* Replies due by 12/26/2024. (Srebnick, Howard) (Entered: 12/18/2024) |
| 12/19/2024 | 28 | SUPPLEMENT to 22 Defendant's MOTION to Reopen Detention Hearing and Stay Removal and Memorandum in Support filed by Tal Alexander by Tal Alexander (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B) (Srebnick, Howard) (Entered: 12/19/2024) |
| 12/19/2024 | 29 | NOTICE OF ATTORNEY APPEARANCE Lauren Alexandra Astigarraga appearing for USA. (Astigarraga, Lauren) (Entered: 12/19/2024) |
| 12/19/2024 | 30 | TRANSCRIPT of Detention Hearing as to Tal Alexander held on 12/13/2024 before Magistrate Judge Lisette M. Reid, 1–77 pages, Court Reporter: Bonnie Joy Lewis, 954–985–8875. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/9/2025. Redacted Transcript Deadline set for 1/21/2025. Release of Transcript Restriction set for 3/19/2025. (apz) (Entered: 12/19/2024) |
| 12/19/2024 | 31 | RESPONSE in Opposition by USA as to Tal Alexander re 22 Defendant's MOTION to Reopen Detention Hearing and Stay Removal and Memorandum in Support Replies due by 12/26/2024. (Astigarraga, Lauren) (Entered: 12/19/2024) |

| 12/20/2024 | 32 | ORDER denying 22 Defendant Tal Alexander's Motion to Reopen the Detention Hearing in this case, pursuant to 18 U.S.C. § 3142(f) and to stay removal of this case to the Southern District of New York. Signed by Magistrate Judge Lisette M. Reid on 12/20/2024. *See attached document for full details.* (ari) (Entered: 12/20/2024) |
| --- | --- | --- |
| 12/23/2024 | 33 | WARRANT OF REMOVAL ISSUED to the Southern District of New York as to Tal Alexander. Closing Case for Defendant. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. *See attached document for full details.* (br) (Entered: 12/23/2024) |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

<table>
<tr><td></td><td>FILED BY_____mp_____D.C.</td></tr>
<tr><td>United States of America<br>v.</td><td>Dec 11, 2024<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - Miami</td></tr>
</table>

United States of America
      v.

    Tal Alexander

———————————————————
        *Defendant*

)
)
)
)
)
)

Case No.

**24-MJ-4544-REID**

24 CRIM 676

## ARREST WARRANT

To:    Any authorized law enforcement officer

      **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Tal Alexander                                   ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ❏ Superseding Indictment    ❏ Information    ❏ Superseding Information    ❏ Complaint
❏ Probation Violation Petition      ❏ Supervised Release Violation Petition    ❏ Violation Notice    ❏ Order of the Court

This offense is briefly described as follows:

  18 U.S.C. § 1594 - conspiracy to commit sex trafficking by force, fraud, and coercion
  18 U.S.C. §§ 1591(a), (b)(1) and 2 - sex trafficking by force, fraud, and coercion, and aiding and abetting same

Date:     12/06/2024

City and state:   New York, New York

*Tammi M. Hellwig*
———————————————————
           *Issuing officer's signature*

**Tammi M. Hellwig**
———————————————————
           *Printed name and title*

<table>
<tr><td colspan="2" align="center">**Return**</td></tr>
<tr><td colspan="2">    This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____<br>at *(city and state)* _____ .</td></tr>
<tr><td>Date: _____</td><td>———————————————————<br>*Arresting officer's signature*<br><br>———————————————————<br>*Printed name and title*</td></tr>
</table>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24-MJ-4544-REID**

UNITED STATES OF AMERICA

**SUPERSEDING INDICTMENT**

v.

S1 24 Cr. 676

ALON ALEXANDER,
OREN ALEXANDER, and
TAL ALEXANDER,

Defendants.

## COUNT ONE
### (Conspiracy to Commit Sex Trafficking)

The Grand Jury charges:

### OVERVIEW

1.      For well over a decade and at all times relevant to this indictment, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER (collectively, the "ALEXANDER BROTHERS"), the defendants, worked together and with others known and unknown, to repeatedly and violently drug, sexually assault, and rape dozens of victims. At times, the ALEXANDER BROTHERS arranged for these sexual assaults well in advance, using the promise of luxury experiences, travel, and accommodations to lure and entice women to locations where they were then forcibly raped or sexually assaulted, sometimes by multiple men, including one or more of the ALEXANDER BROTHERS. Other times, the ALEXANDER BROTHERS encountered and chose their victims by chance. Often, the ALEXANDER BROTHERS drugged their victims before assaulting them, preventing them from fighting back or escaping.

2.      ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, worked together and with others to carry out and facilitate their sex trafficking scheme,

including on some occasions by committing forcible rapes and sexual assaults together and with others, jointly arranging domestic and international travel and accommodations, and jointly financing the scheme.

## BACKGROUND

3.      ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, are brothers.  ALON ALEXANDER and OREN ALEXANDER are twins and TAL ALEXANDER is approximately one year older.  At all times relevant to this Indictment, OREN ALEXANDER and TAL ALEXANDER were real estate agents who focused on ultra-luxury markets in New York City, Miami, Florida, and other locations.  Since at least in or around 2012, ALON ALEXANDER has been an executive of a private security firm owned and operated by his family.

4.      Starting in at least in or about 2010, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, and others known and unknown, operated a long-running sex trafficking scheme, as part of which they raped and sexually assaulted women to whom they had provided material benefits, including domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events.  The ALEXANDER BROTHERS' scheme was based in, among other places, Manhattan, New York and Miami, Florida, where the defendants maintained residences and where their businesses were based.

5.      To carry out and facilitate their sex trafficking scheme, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, used deception, fraud, and coercion, to cause victims to travel with them or meet them in private locations.  Thereafter, the ALEXANDER BROTHERS used various methods, including drugging the victims and, at times,

physical force, to rape and sexually assault the victims—sometimes alone and sometimes together. In particular, the defendants used the following means and methods, among others, to carry out their sex trafficking scheme:

      a.      The ALEXANDER BROTHERS used their wealth and positions to create and facilitate opportunities to rape and sexually assault women. In particular, on multiple occasions, OREN ALEXANDER and TAL ALEXANDER used their prominent positions in the real estate industry to induce other women to attend events and parties, and to meet other women at those events and parties, whom one or more of the defendants later sexually assaulted.

      b.      The ALEXANDER BROTHERS worked together and with other men to arrange events and domestic and international trips they used as bait to recruit, entice, harbor, transport, and maintain multiple women. During the events and trips, the defendants frequently raped and sexually assaulted the women they enticed to attend.

      c.      At times, the ALEXANDER BROTHERS used social connections or the guise of starting a relationship to lure and entice women to meet with one or more of them at a public place or group event, or to travel to meet one or more of the defendants. On multiple occasions, the defendants—alone or together—then sexually assaulted the woman, sometimes within hours of their meeting. Immediately following the sexual assaults, the defendants sometimes offered the victims material items, including travel, concert tickets, and other luxury experiences.

      d.      Some trips and events were organized by the ALEXANDER BROTHERS well in advance and involved domestic and international travel. The ALEXANDER BROTHERS worked together and with others to recruit women to attend these events and trips. The defendants, at times with others, shared photographs of women to select those they found sufficiently attractive

to invite. The defendants and other men organizing the trip then contacted the women, including through social media or dating applications, and induced the women to attend by, among other things, offering to purchase their flights, making other travel arrangements, and/or providing accommodations without charge.

  e. In addition to inviting women to their events directly, the ALEXANDER BROTHERS and others worked with party promoters to arrange for women to attend events or travel with them, in order to ensure that there were a sufficient number of women present.

  f. On some occasions, after the women accepted the invitations to attend a particular event, the ALEXANDER BROTHERS transported women and caused women to be transported across state and international lines. The defendants and other men attending the trips pooled financial resources in order to pay for flights and other travel expenses for the women.

  g. In advance of the events, the ALEXANDER BROTHERS and others procured drugs that they agreed to provide to the women, including, among other things, cocaine, mushrooms, and GHB. On multiple occasions during these events and trips, the ALEXANDER BROTHERS and others surreptitiously drugged women's drinks. Some of the victims experienced symptoms of impaired physical and mental capacity, including limitations of movement and speech and incomplete memories of events.

  h. The ALEXANDER BROTHERS, sometimes acting alone, sometimes with each other, and sometimes with other men, forcibly raped or sexually assaulted their victims. At times, the defendants physically restrained and held down their victims during the rapes and sexual assaults and ignored screams and explicit requests to stop.

  6. The agreement between ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, encompassed numerous other acts of sexual violence in addition

to sexual assaults during planned trips and events. On numerous occasions, the ALEXANDER BROTHERS drugged and raped or sexually assaulted women they encountered by chance, including women they met at bars and nightclubs, social events, and on dating applications. The ALEXANDER BROTHERS similarly carried out these rapes and sexual assaults by, among other things, drugging and incapacitating victims, taking victims to isolated locations, physically restraining victims while raping and sexually assaulting them alone, together, and with other men, and ignoring victims' explicit demands to stop.

## STATUTORY ALLEGATIONS

7. From at least in or about 2010, up to and including at least in or about 2021, in the Southern District of New York and elsewhere, in and affecting interstate commerce, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, and others known and unknown, knowingly, did combine, conspire, confederate and agree to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the persons to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a)(l) and (b)(l), to wit, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, and others known and unknown, agreed to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit women, including but not limited to Victim-1 and Victim-2, as alleged in Counts Two and Three respectively, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion, would be used to cause the women, including but not

5

limited to Victim-1 and Victim-2, to engage in commercial sex acts.

(Title 18, United States Code, Section 1594(c).)

## COUNT TWO
**(Sex Trafficking of Victim-1 by Force, Fraud, or Coercion)**

The Grand Jury further charges:

8.      In or about July 2011, in the Southern District of New York and elsewhere, TAL ALEXANDER, the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in commercial sex acts, to wit, TAL ALEXANDER recruited, enticed, harbored, transported, provided, obtained, and maintained, and aided and abetted the recruitment, enticement, harboring, transportation, obtaining, and maintaining of, Victim-1, and caused Victim-1 to engage in at least one commercial sex act, knowing, and in reckless disregard of the fact that Victim-1 was engaging in the commercial sex act as result of force, fraud and coercion.

(Title 18, United States Code, Sections 1591(a) and (b)(1), and (2).)

## COUNT THREE
**(Sex Trafficking of Victim-2 by Force, Fraud, or Coercion)**

The Grand Jury further charges:

9.      In or about September 2016, in the Southern District of New York and elsewhere, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, knowingly, in and affecting interstate and foreign commerce, did recruit, entice,

harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a)(l) and (b)(l), to wit ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, and solicited, and aided and abetted the recruitment, enticement, harboring, transportation, obtaining, maintaining, patronizing, and soliciting of, Victim-2, and caused Victim-2 to engage in at least one commercial sex act, knowing, and in reckless disregard of the fact that Victim-2 was engaging in the commercial sex act as result of force, fraud and coercion.

(Title 18, United States Code, Sections 1591(a) and (b)(1), and (2).)

## **FORFEITURE ALLEGATIONS**

10.     As a result of committing the offenses alleged in Counts One through Three of this Indictment, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594, any and all property, real and personal, involved in, used, or intended to be used to commit or to facilitate the commission of said offenses; any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offenses; and any and all property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and proceeds traceable to the commission of said offenses.

7

**Substitute Assets Provision**

11.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

      (Title 18, United States Code, Sections 1594;
      Title 21, United States Codes, Section 853; and
      Title 28, United States Code, Section 2461.)

FOREPERSON       12/11/24

_Damian Williams_
DAMIAN WILLIAMS
United States Attorney

8

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing AUSA CR TP/SR (usafls.transferprob@usdoj.gov), Magistrate
Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25026470@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Motion to Unseal Case
```
Content–Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/12/2024 at 10:45 AM EST and filed on 12/11/2024

**Case Name:**     USA v. Alexander

**Case Number:**     1:24–mj–04544–LMR

**Filer:**

**Document Number:** 2(No document attached)

**Docket Text:**
 **ORAL MOTION to Unseal Case by Tal Alexander. (kan)**


**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing AUSA CR TP/SR (usafls.transferprob@usdoj.gov), Magistrate
Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25026479@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Motion for Miscellaneous
Relief
```
Content–Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/12/2024 at 10:47 AM EST and filed on 12/11/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24–mj–04544–LMR |
| **Filer:** | |
| **Document Number:** | 3(No document attached) |

**Docket Text:**
 **ORAL MOTION for Pretrial Detention hearing by Tal Alexander. (kan)**

**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 24-MJ-4544-REID(SEALED)

UNITED STATES OF AMERICA,
          Plaintiff,

V.

Tal Alexander,
          Defendant(s).
_____/

## ORDER

**THIS CAUSE** came before the Court and pursuant to proceedings it is thereupon, PURSUANT TO THE ARREST OF THE ABOVE NAMED DEFENDANT, THIS CASE IS HEREBY UNSEALED.

**DONE AND ORDERED** at Miami, Florida.

Dated: 12/11/2024

_Lisette Reid_
_____
**Lisette Marie Reid**
**UNITED STATES MAGISTRATE JUDGE**

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _24 - MJ- 4544 - REID_

UNITED STATES OF AMERICA,
           Plaintiff,

v.                                          **NOTICE OF TEMPORARY**
                                            **APPEARANCE AS COUNSEL**

_Tal Alexander_

           Defendant.
_____/

COMES NOW _____ _Joel Denaro_ _____ and

files this temporary appearance as counsel for the above named defendant(s) at initial appearance.

This appearance is made with the **understanding** that the undersigned counsel will fulfill any

**obligations imposed** by the Court such as **preparing and filing documents** necessary to

collateralize any personal surety bond which may be set.

Counsel's Name (**Printed**): _____ _Joel Denaro_ _____

Counsel's Signature: _____ _Joel Denaro_ _____

Address (include City/State/Zip Code):

_1000 Brickell Ave Suite 201_
_Miami Fla 33131_

Telephone: _305-371-1883_          Florida Bar Number: _0164460_

Date: _Dec 11, 2024_

19

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing AUSA CR TP/SR (usafls.transferprob@usdoj.gov), Joel M.
Denaro (jdenaro@joeldenarolaw.com), Magistrate Judge Lisette M. Reid
(reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25026608@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Motion to Continue
```
Content–Type: text/html

<div align="center">

### U.S. District Court

### Southern District of Florida

</div>

## Notice of Electronic Filing

The following transaction was entered on 12/12/2024 at 11:04 AM EST and filed on 12/11/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24–mj–04544–LMR |
| **Filer:** | |
| **Document Number:** | 6(No document attached) |

**Docket Text:**
**ORAL DEFENDANT'S MOTION to have PTD hearing on Friday by Tal Alexander. (kan)**

**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

# MINUTE ORDER

Page 8

## Magistrate Judge Lisette Marie Reid

**Atkins Building Courthouse - 3rd Floor**      Date: 12/11/2024  Time: 1:00 p.m.

Defendant: **Tal Alexander**      J#: 50978-511      Case #: 24-MJ-4544-REID(SEALED)

AUSA: Ali Comolli      Attorney: Joel Denaro – Temp

Violation: SD NY/WARRANT/INDICTMENT/Conspiracy to Commit      Surr/Arrest Date: 12/11/24      YOB: 1986
Sex Trafficking by Force, Fraud & Coercion and Sex
Trafficking by Force, Fraud, Coercion & Aiding and Abetting same

Proceeding: Initial Appearance      CJA Appt:

Bond/PTD Held: ○ Yes  ○ No      Recommended Bond:

Bond Set at:      Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs      Language: English

☐ Report to PTS as directed/or _____ x's a week/month by      Disposition:
phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial      **Rec AUSA indictment to remain
Services      SEALED**
Treatment as deemed necessary

☐ Refrain from excessive use of alcohol      - Deft pwrss

☐ Participate in mental health assessment & treatment      - Deft advised of rights & charges

☐ Maintain or seek full-time employment/education      - Gov'ts motion to unseal

☐ No contact with victims/witnesses, except through counsel      case GRANTED

☐ No firearms      - PTD requested by

☐ Not to encumber property      Gov't: Risk of Flight & Danger

☐ May not visit transportation establishments      to the Community

☐ Home Confinement/Electronic Monitoring and/or      - deft's oral motion to have PTD
Curfew _____ pm to _____ am, paid by      hrg on Friday GRANTED

☐ Allowances: Medical needs, court appearances, attorney visits,      - Brady Order given
religious, employment

☐ Travel extended to:      Time from today to _____ excluded

☐ Other:      from Speedy Trial Clock

**NEXT COURT APPEARANCE**  Date:      Time:      Judge:      Place:

Report RE Counsel:

(PTD)/Bond Hearing:  12/13      1:00      Duty      Miami

Prelim/Arraign or (Removal):

Status Conference RE:

D.A.R. 13:27:10      Time in Court: 10 Minutes

s/Lisette Marie Reid      Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 24 - MJ - 4544

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

       *Defendant*.

_____/

## MOTION TO APPEAR *PRO HAC VICE*,
## CONSENT TO DESIGNATION, AND REQUEST TO
## <u>ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING</u>

      In accordance with Local Rule 4(b) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys of the United States District Court for the Southern District of Florida, the undersigned respectfully moves for the admission *pro hac vice* of MILT WILLIAMS of the law firm of WALDEN MACHT HARAN & WILLIAMS LLP, 250 Vesey Street 27th Floor, New York, New York 10281 (212) 335-2035, for purposes of appearance as co-counsel on behalf of Tal ALEXANDER in the above-styled case only, and pursuant to Rule 2B of the CM/ECF Administrative Procedures, to permit MILT WILLIAMS to receive electronic filings in this case, and in support thereof states as follows:

1.      MILT WILLIAMS is not admitted to practice in the Southern District of Florida and is a member in good standing of the United States District Court for the Southern District of New York.

2.      Movant, JOEL M. DENARO, of the law firm of JOEL DENARO P.A., 1000 Brickell Ave, Miami, FL 33131 (305) 371-1883, is a member in good standing of The Florida Bar and the United States District Court for the Southern District of Florida and is authorized to file through

the Court's electronic filing system. Movant consents to be designated as a member of the Bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures. *See* Section 2B of the CM/ECF Administrative Procedures.

3.      In accordance with the local rules of this Court, MILT WILLIAMS has made payment of this Court's $250.00 admission fee. A certification in accordance with Rule 4(b) is attached hereto.

4.      MILT WILLIAMS, by and through designated counsel and pursuant to Section 2B of the CM/ECF Administrative Procedures, hereby requests the Court to provide Notice of Electronic Filings to his email address: mwilliams@wmhwlaw.com.

WHEREFORE, JOEL M. DENARO, moves this Court to enter an Order for MILT WILLIAMS, to appear before this Court on behalf of Tal ALEXANDER, for all purposes relating to the proceedings in the above-styled matter and directing the Clerk to provide notice of electronic filings to him at the above email address.

Date: December 12, 2024                          Respectfully submitted,

                                                 JOEL M. DENARO
                                                 FL Bar #164460
                                                 Law Offices of Joel Denaro
                                                 1000 Brickell Avenue, Suite 201
                                                 Miami, Florida 33131
                                                 (305) 371-1883

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 24 - MJ - 4544

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

*Defendant*.

_____/

## <u>CERTIFICATION OF MILT WILLIAMS</u>

MILT WILLIAMS, Esquire, pursuant to Rule 4(b)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, hereby certifies that: (1) I have studied the Local Rules of the United States District Court for the Southern District of Florida; (2) I am a member in good standing of the United States District Court for the Southern District of New York; and (3) I have not filed more than three pro hac vice motions in different cases in this District within the last 365 days.

MILT WILLIAMS
NY Bar No. 2107274
WALDENMACHT HARAN & WILLIAMS LLP
250 Vesey Street 27th Floor
New York, New York 10281
(212) 335-2035

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 24 - MJ - 4544

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

     *Defendant*.

_____/

## MOTION TO APPEAR *PRO HAC VICE*,
## CONSENT TO DESIGNATION, AND REQUEST TO
## <u>ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING</u>

In accordance with Local Rule 4(b) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys of the United States District Court for the Southern District of Florida, the undersigned respectfully moves for the admission *pro hac vice* of DEANNA PAUL of the law firm of WALDEN MACHT HARAN & WILLIAMS LLP, 250 Vesey Street 27th Floor, New York, New York 10281 (212) 335-2035, for purposes of appearance as co-counsel on behalf of Tal ALEXANDER in the above-styled case only, and pursuant to Rule 2B of the CM/ECF Administrative Procedures, to permit DEANNA PAUL to receive electronic filings in this case, and in support thereof states as follows:

1.     DEANNA PAUL is not admitted to practice in the Southern District of Florida and is a member in good standing of the United States District Court for the Southern District of New York.

2.     Movant, JOEL M. DENARO, of the law firm of JOEL DENARO P.A., 1000 Brickell Ave, Miami, FL 33131 (305) 371-1883, is a member in good standing of The Florida Bar and the United States District Court for the Southern District of Florida and is authorized to file through

the Court's electronic filing system. Movant consents to be designated as a member of the Bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures. *See* Section 2B of the CM/ECF Administrative Procedures.

3.      In accordance with the local rules of this Court, DEANNA PAUL has made payment of this Court's $250.00 admission fee. A certification in accordance with Rule 4(b) is attached hereto.

4.      DEANNA PAUL, by and through designated counsel and pursuant to Section 2B of the CM/ECF Administrative Procedures, hereby requests the Court to provide Notice of Electronic Filings to the following email address: DPaul@wmhwlaw.com.

WHEREFORE, JOEL M. DENARO, moves this Court to enter an Order for DEANNA PAUL, to appear before this Court on behalf of Tal ALEXANDER, for all purposes relating to the proceedings in the above-styled matter and directing the Clerk to provide notice of electronic filings to the above email address.

Date: December 12, 2024                                    Respectfully submitted,

JOEL M. DENARO
FL Bar #164460
Law Offices of Joel Denaro
1000 Brickell Avenue, Suite 201
Miami, Florida 33131
(305) 371-1883

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 24 - MJ - 4544**

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

     *Defendant*.

_____/

## <u>CERTIFICATION OF DEANNA PAUL</u>

DEANNA PAUL, Esquire, pursuant to Rule 4(b)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, hereby certifies that: (1) I have studied the Local Rules of the United States District Court for the Southern District of Florida; (2) I am a member in good standing of the United States District Court for the Southern District of New York; and (3) I have not filed more than three pro hac vice motions in different cases in this District within the last 365 days.

                                       DEANNA PAUL
                                       NY Bar No.  4992665
                                       WALDENMACHT HARAN & WILLIAMS LLP
                                       250 Vesey Street 27th Floor
                                       New York, New York 10281
                                       (212) 335-2035

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Milton L. Williams (mwilliams@wmhlaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Joel M. Denaro (jdenaro@joeldenarolaw.com), Deanna Paul
(dpaul@wmhlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25030644@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Add Attorneys
Content-Type: text/html
```

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/13/2024 at 10:04 AM EST and filed on 12/13/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24–mj–04544–LMR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Attorney update in case as to Tal Alexander. Attorney Deanna Paul, Milton L. Williams for Tal Alexander added (pt)**


**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Deanna Paul &nbsp &nbsp DPaul@wmhwlaw.com

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

Milton L. Williams &nbsp &nbsp mwilliams@wmhlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Joel M. Denaro (jdenaro@joeldenarolaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Deanna Paul (dpaul@wmhwlaw.com), Milton L. Williams
(mwilliams@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25031020@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion to Appear Pro
Hac Vice
Content-Type: text/html
```

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/13/2024 at 10:49 AM EST and filed on 12/13/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24-mj-04544-LMR |
| **Filer:** | |
| **Document Number:** | 10(No document attached) |

**Docket Text:**
**PAPERLESS ORDER denying [8] Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Milt Williams as to Tal Alexander. Counsel seeking Pro Hac Vice admission failed to sign his Certification. The Motion may be refiled. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari)**


**1:24-mj-04544-LMR-1 Notice has been electronically mailed to:**

Joel M. Denaro     jdenaro@joeldenarolaw.com

Noticing AUSA CR TP/SR     Usafls.transferprob@usdoj.gov

Milton L. Williams     mwilliams@wmhlaw.com

Deanna Paul     DPaul@wmhwlaw.com

**1:24-mj-04544-LMR-1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Milton L. Williams (mwilliams@wmhlaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Joel M. Denaro (jdenaro@joeldenarolaw.com), Deanna Paul
(dpaul@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25031042@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion to Appear Pro
Hac Vice
Content–Type: text/html
```

## U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/13/2024 at 10:52 AM EST and filed on 12/13/2024

**Case Name:**       USA v. Alexander

**Case Number:**     1:24–mj–04544–LMR

**Filer:**

**Document Number:**  11(No document attached)

**Docket Text:**
**PAPERLESS ORDER denying [9] Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Deanna Paul as to Tal Alexander. Counsel seeking Pro Hac Vice admission failed to sign her Certification. The Motion may be refiled. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari)**


**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Joel M. Denaro      jdenaro@joeldenarolaw.com

Noticing AUSA CR TP/SR      Usafls.transferprob@usdoj.gov

Milton L. Williams      mwilliams@wmhlaw.com

Deanna Paul      DPaul@wmhwlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 24 - MJ - 4544

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

      *Defendant*.

_____/

## MOTION TO APPEAR *PRO HAC VICE*,
## CONSENT TO DESIGNATION, AND REQUEST TO
## <u>ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING</u>

In accordance with Local Rule 4(b) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys of the United States District Court for the Southern District of Florida, the undersigned respectfully moves for the admission *pro hac vice* of DEANNA PAUL of the law firm of WALDEN MACHT HARAN & WILLIAMS LLP, 250 Vesey Street 27th Floor, New York, New York 10281 (212) 335-2035, for purposes of appearance as co-counsel on behalf of Tal ALEXANDER in the above-styled case only, and pursuant to Rule 2B of the CM/ECF Administrative Procedures, to permit DEANNA PAUL to receive electronic filings in this case, and in support thereof states as follows:

1.      DEANNA PAUL is not admitted to practice in the Southern District of Florida and is a member in good standing of the United States District Court for the Southern District of New York.

2.      Movant, JOEL M. DENARO, of the law firm of JOEL DENARO P.A., 1000 Brickell Ave, Miami, FL 33131 (305) 371-1883, is a member in good standing of The Florida Bar and the United States District Court for the Southern District of Florida and is authorized to file through

the Court's electronic filing system. Movant consents to be designated as a member of the Bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures. *See* Section 2B of the CM/ECF Administrative Procedures.

3.      In accordance with the local rules of this Court, DEANNA PAUL has made payment of this Court's $250.00 admission fee.   A certification in accordance with Rule 4(b) is attached hereto.

4.      DEANNA PAUL, by and through designated counsel and pursuant to Section 2B of the CM/ECF Administrative Procedures, hereby requests the Court to provide Notice of Electronic Filings to the following email address: DPaul@wmhwlaw.com.

WHEREFORE, JOEL M. DENARO, moves this Court to enter an Order for DEANNA PAUL, to appear before this Court on behalf of Tal ALEXANDER, for all purposes relating to the proceedings in the above-styled matter and directing the Clerk to provide notice of electronic filings to the above email address.

Date: December 12, 2024                          Respectfully submitted,

JOEL M. DENARO
FL Bar #164460
Law Offices of Joel Denaro
1000 Brickell Avenue, Suite 201
Miami, Florida 33131
(305) 371-1883

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 24 - MJ - 4544**

UNITED STATES OF AMERICA,


v.


TAL ALEXANDER,


     *Defendant.*

_____/

## CERTIFICATION OF DEANNA PAUL

DEANNA PAUL, Esquire, pursuant to Rule 4(b)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, hereby certifies that: (1) I have studied the Local Rules of the United States District Court for the Southern District of Florida; (2) I am a member in good standing of the United States District Court for the Southern District of New York; and (3) I have not filed more than three pro hac vice motions in different cases in this District within the last 365 days.

DEANNA PAUL
NY Bar No. 4992665
WALDENMACHT HARAN & WILLIAMS LLP
250 Vesey Street 27th Floor
New York, New York 10281
(212) 335-2035

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 24 - MJ - 4544

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

       *Defendant*.

_____/

## MOTION TO APPEAR *PRO HAC VICE*,
## CONSENT TO DESIGNATION, AND REQUEST TO
## <u>ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING</u>

In accordance with Local Rule 4(b) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys of the United States District Court for the Southern District of Florida, the undersigned respectfully moves for the admission *pro hac vice* of MILT WILLIAMS of the law firm of WALDEN MACHT HARAN & WILLIAMS LLP, 250 Vesey Street 27th Floor, New York, New York 10281 (212) 335-2035, for purposes of appearance as co-counsel on behalf of Tal ALEXANDER in the above-styled case only, and pursuant to Rule 2B of the CM/ECF Administrative Procedures, to permit MILT WILLIAMS to receive electronic filings in this case, and in support thereof states as follows:

1.      MILT WILLIAMS is not admitted to practice in the Southern District of Florida and is a member in good standing of the United States District Court for the Southern District of New York.

2.      Movant, JOEL M. DENARO, of the law firm of JOEL DENARO P.A., 1000 Brickell Ave, Miami, FL 33131 (305) 371-1883, is a member in good standing of The Florida Bar and the United States District Court for the Southern District of Florida and is authorized to file through

the Court's electronic filing system. Movant consents to be designated as a member of the Bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures. *See* Section 2B of the CM/ECF Administrative Procedures.

3.      In accordance with the local rules of this Court, MILT WILLIAMS has made payment of this Court's $250.00 admission fee. A certification in accordance with Rule 4(b) is attached hereto.

4.      MILT WILLIAMS, by and through designated counsel and pursuant to Section 2B of the CM/ECF Administrative Procedures, hereby requests the Court to provide Notice of Electronic Filings to his email address: mwilliams@wmhwlaw.com.

WHEREFORE, JOEL M. DENARO, moves this Court to enter an Order for MILT WILLIAMS, to appear before this Court on behalf of Tal ALEXANDER, for all purposes relating to the proceedings in the above-styled matter and directing the Clerk to provide notice of electronic filings to him at the above email address.

Date: December 12, 2024                           Respectfully submitted,

                                                  JOEL M. DENARO
                                                  FL Bar #164460
                                                  Law Offices of Joel Denaro
                                                  1000 Brickell Avenue, Suite 201
                                                  Miami, Florida 33131
                                                  (305) 371-1883

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 24 - MJ - 4544**

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

      *Defendant.*

_____/

## CERTIFICATION OF MILT WILLIAMS

MILT WILLIAMS, Esquire, pursuant to Rule 4(b)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, hereby certifies that: (1) I have studied the Local Rules of the United States District Court for the Southern District of Florida; (2) I am a member in good standing of the United States District Court for the Southern District of New York; and (3) I have not filed more than three pro hac vice motions in different cases in this District within the last 365 days.

                    *Milt Williams*
                    _____

MILT WILLIAMS
NY Bar No. 2107274
WALDENMACHT HARAN & WILLIAMS LLP
250 Vesey Street 27th Floor
New York, New York 10281
(212) 335-2035

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Joel M. Denaro (jdenaro@joeldenarolaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Deanna Paul (dpaul@wmhwlaw.com), Milton L. Williams
(mwilliams@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25031899@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion to Appear Pro
Hac Vice
Content-Type: text/html
```

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/13/2024 at 1:04 PM EST and filed on 12/13/2024

**Case Name:**      USA v. Alexander

**Case Number:**      <u>1:24-mj-04544-LMR</u>

**Filer:**

**Document Number:**  14(No document attached)

**Docket Text:**
 **PAPERLESS ORDER granting [12] Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Deanna Paul as to Tal Alexander. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari)**

**1:24-mj-04544-LMR-1 Notice has been electronically mailed to:**

Joel M. Denaro      jdenaro@joeldenarolaw.com

Noticing AUSA CR TP/SR      Usafls.transferprob@usdoj.gov

Milton L. Williams      mwilliams@wmhlaw.com

Deanna Paul      DPaul@wmhwlaw.com

**1:24-mj-04544-LMR-1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Milton L. Williams (mwilliams@wmhlaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Joel M. Denaro (jdenaro@joeldenarolaw.com), Deanna Paul
(dpaul@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:25031912@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion to Appear Pro
Hac Vice
```
Content–Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/13/2024 at 1:06 PM EST and filed on 12/13/2024

**Case Name:**     USA v. Alexander

**Case Number:**     1:24–mj–04544–LMR

**Filer:**

**Document Number:**  15(No document attached)

**Docket Text:**
 **PAPERLESS ORDER granting [13] Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Milt Williams as to Tal Alexander. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (ari)**

**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Joel M. Denaro     jdenaro@joeldenarolaw.com

Noticing AUSA CR TP/SR     Usafls.transferprob@usdoj.gov

Milton L. Williams     mwilliams@wmhlaw.com

Deanna Paul     DPaul@wmhwlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Joel M. Denaro (jdenaro@joeldenarolaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Deanna Paul (dpaul@wmhwlaw.com), Milton L. Williams
(mwilliams@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants: Alejandro Victor Rodriguez Vanzetti
(alejandro_rodriguezvanzetti@flsd.uscourts.gov), United States Pretrial, Probation and
PSIunit Office (DQA) (flsp_dqa@flsp.uscourts.gov, mia_dqa@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:25035686@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Motion for Bond
Content-Type: text/html
```

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/16/2024 at 11:47 AM EST and filed on 12/13/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24–mj–04544–LMR |
| **Filer:** | USA |
| **Document Number:** | 16(No document attached) |

**Docket Text:**
 **ORAL MOTION for Pretrial Detention by USA as to Tal Alexander. (fbn)**

**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Deanna Paul &nbsp &nbsp DPaul@wmhwlaw.com

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

Milton L. Williams &nbsp &nbsp mwilliams@wmhwlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Joel M. Denaro (jdenaro@joeldenarolaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Deanna Paul (dpaul@wmhwlaw.com), Milton L. Williams
(mwilliams@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants: Alejandro Victor Rodriguez Vanzetti
(alejandro_rodriguezvanzetti@flsd.uscourts.gov), Financial Clerk
(flsd_financial@flsd.uscourts.gov), United States Pretrial, Probation and PSIunit Office
(DQA) (flsp_dqa@flsp.uscourts.gov, mia_dqa@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:25035697@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion for Bond
Content-Type: text/html
```

## U.S. District Court

### Southern District of Florida

### Notice of Electronic Filing

The following transaction was entered on 12/16/2024 at 11:48 AM EST and filed on 12/13/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24-mj-04544-LMR |
| **Filer:** | |
| **Document Number:** | 17(No document attached) |

**Docket Text:**
 **PAPERLESS ORDER granting [16] Motion for Pretrial Detention as to Tal Alexander (1) as to risk of flight only. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024. (fbn)**


**1:24-mj-04544-LMR-1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Deanna Paul &nbsp &nbsp DPaul@wmhwlaw.com

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

Milton L. Williams &nbsp &nbsp mwilliams@wmhwlaw.com

**1:24-mj-04544-LMR-1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

# MINUTE ORDER

Page 4

## Magistrate Judge Lisette Marie Reid

**Atkins Building Courthouse - 3rd Floor**      Date: 12/13/2024   Time: 1:00 p.m.

Defendant: Tal Alexander     J#: 50978-511    Case #: 24-MJ-4544-REID (SEALED)

AUSA: _Lauren Astigarraga_     Attorney: Joel Denaro (Temp) _Deanna Paul d_

Violation: SD NY/Warrant/Superseding Indictment/ Consp to Commit Sex Trafficking by force, fraud and Coercion    Surr/Arrest Date:    YOB: _Milton Williams_

Proceeding: (PTD)/Removal       CJA Appt: _____

Bond/PTD Held: ○ Yes   ○ No     Recommended Bond: Pretrial Detention

Bond Set at: _____     Co-signed by: _____

- ☐ Surrender and/or do not obtain passports/travel docs
- ☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person
- ☐ Random urine testing by Pretrial Services _____
- ☐ Treatment as deemed necessary
- ☐ Refrain from excessive use of alcohol
- ☐ Participate in mental health assessment & treatment
- ☐ Maintain or seek full-time employment/education
- ☐ No contact with victims/witnesses, except through counsel
- ☐ No firearms
- ☐ Not to encumber property
- ☐ May not visit transportation establishments
- ☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____
- ☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment
- ☐ Travel extended to: _____
- ☐ Other: _____

Language: English

**Disposition:**

Brady Order Given 12/11/24

- PTD hrg held
- S/A Justin Atwood - FBI Sworn & Testified
- Gov't's one Motion for PTD Granted as to Risk of Flight ONLY

- Deft Detained: Risk of Flight ONLY

- Deft Waived removal
- Order of removal issued

Time from today to _____ excluded from Speedy Trial Clock

**NEXT COURT APPEARANCE**   Date:    Time:    Judge:     Place:

Report RE Counsel: _____

PTD/Bond Hearing: _____

Prelim/Arraign or Removal: _____

Status Conference RE: _____

D.A.R. 14:05:09 ‖ 15:53:53      Time in Court: 2 hours

s/Lisette Marie Reid      Magistrate Judge

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES

v.

TAL ALEXANDER

## EXHIBIT AND WITNESS LIST

24-4544-MJ-REID

| PRESIDING JUDGE LISETTE M. REID | | | PLAINTIFF'S ATTORNEY Lauren Astigarraga | | DEFENDANT'S ATTORNEY J. Denaro, D. Paul & M. Williams |
|---|---|---|---|---|---|
| TRIAL DATE (S) Detention Hearing: 12/13/24 | | | COURT REPORTER DAR: 14:05:09 & 15:53:53 | | COURTROOM DEPUTY Elizabeth Rodriguez |

| PLTF. NO. | DEFT. NO. | DATE OFFERED | MARKED | ADMITTED | |
|---|---|---|---|---|---|
| X | | 12/13/24 | | | S/A(FBI) Justin Atwood sworn & testified |
| | 1 | | X | X | Superseding Indictment from SD of NY |
| | 2 | | X | X | Letter dated 12/11/24 to Judge Caproni & Judge Reid |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of ___1___ Pages

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No: 24 - 4544 - MJ - REID

United States of America
     Plaintiff,
   v.

TAL ALexander Charging District's Case No.

  Defendant.
_____/

## WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS

I understand that I have been charged in another district, the

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2)    an identity hearing to determine whether I am the person named in the charges;
(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4)    a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;
(5)    a hearing on any motion by the government for detention;
(6)    request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

[✓] An identity hearing and production of the warrant.

[ ] A preliminary hearing.

[ ] A detention hearing in the Southern District of Florida.

[ ] An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:

_____
Defendant's Signature

_____
LISETTE M. REID
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-mj-04544-LMR

UNITED STATES OF AMERICA,

    vs.

TAL ALEXANDER,

    Defendant.
_____/

**NOTICE OF APPEARANCE AS COUNSEL**

Please take notice that HOWARD SREBNICK, of the law firm of

Black Srebnick, hereby appears as counsel for Tal Alexander in this case.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131 / Ph. (305) 371-6421

By:    /s *Howard Srebnick*
       HOWARD SREBNICK
       Florida Bar No. 919063
       E-mail: HSrebnick@RoyBlack.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

v.

Dkt. No. 24-MJ-04544 (LMR)

TAL ALEXANDER,

Defendant.

## DEFENDANT TAL ALEXANDER'S MOTION TO REOPEN DETENTION HEARING AND STAY REMOVAL AND MEMORANDUM IN SUPPORT

Pursuant to 18 U.S.C. § 3142(f), defendant Tal Alexander respectfully moves to reopen the detention hearing held on December 13, 2024, and stay removal of this case to the Southern District of New York pending a decision on pretrial detention. In support of this Motion, we provide the incorporated Memorandum of Law. Pursuant to Southern District of Florida Local Rule 88.9(a), Mr. Alexander requests a hearing in connection with this Motion. Undersigned counsel have attempted to confer with the government in a good faith effort to resolve the issues raised in this motion. The government opposes the motion.

## MEMORANDUM OF LAW

### I.      Statement of Facts

On December 11, 2024, the government unsealed an indictment in the Southern District of New York charging Mr. Alexander with one count of Conspiracy to Commit Sex Trafficking, pursuant to 18 U.S.C. § 1594(c), and two counts of Sex Trafficking, pursuant to 18 U.S.C. § 1591. *See U.S. v. Alexander*, 24-CR-00676, Dkt. 3 (S.D.N.Y.). That same day, Mr. Alexander was arrested at his parents' home in Miami Beach, Florida, and made a first appearance before Magistrate Judge Lisette M. Reid in the Southern District of Florida. The government moved for pretrial detention.

On December 13, 2024, the Court held a pretrial detention hearing, at which the government called FBI Special Agent Justine Atwood as a witness. At no point during the hearing did the government turn over any Jencks Act material. Prior to cross examination and again at the end of the hearing, Mr. Alexander requested Jencks materials and any reports prepared by Special Agent Atwood. The Court ordered the government to turn over Jencks material immediately after the hearing and stated that the hearing could be reopened if the documents produced by the government contained anything material to the subject of the hearing.

Mr. Alexander offered an extensive bail package, which included: $115 million bond secured by real estate owned by Mr. Alexander, his parents and his brothers, surrender of his U.S. passport, and home detention with GPS monitoring at his parents' Bal Harbor home with his wife and infant child.

At the conclusion of the hearing, the Court issued an oral decision to detain Mr. Alexander, in which it found that the combination of conditions offered alleviated any potential risk of danger to the community posed by Mr. Alexander, but that he posed a risk of flight pursuant to 18 U.S.C. § 3142(e). Mr. Alexander waived an identity hearing and consented to removal of the proceeding to the Southern District of New York.

Moments ago, this Court entered a "PAPERLESS ORDER granting [16] Motion for Pretrial Detention as to Tal Alexander (1) as to risk of flight only. Signed by Magistrate Judge Lisette M. Reid on 12/13/2024." Mr. Alexander's co-defendants, Oren Alexander and Alon Alexander (collectively, "Codefendants"), were also arrested on the instant indictment on December 11, 2024. Their initial appearance and detention hearing has not yet been scheduled.

## II. Argument

The Court should exercise its discretion to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f) and impose a stay of removal so that it can complete the hearing. A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). This statutory "provision is, in effect, a codification of a court's inherent reconsideration authority." *United States v. Pon*, 2014 WL 3340584, at *3 (M.D. Fla. May 29, 2014).

2

The Court should reopen the detention hearing because (i) the Government failed to produce required Jencks Act material, (ii) Mr. Alexander did not have a meaningful opportunity to address concerns raised sua sponte in the Court's decision with respect to his family's financial resources; and (iii) Mr. Alexander wants to correct the government's representation that he is not extraditable from Israel, which is inaccurate.

### A. The Government Failed to Produce Jencks Material Prior to Special Agent Atwood's Cross Examination

The government failed to produce required Jencks Act material in advance of the cross examination of Special Agent Atwood in violation of its obligations under 18 U.S.C. § 3500(b). As a result, Mr. Alexander was deprived of the opportunity to conduct a meaningful and fair cross examination of Special Agent Atwood, the government's only witness. This valuable impeachment material constitutes "information [that] exists that was not known to the movant at the time of the hearing" under 18 U.S.C. § 3142(f).

Pursuant to the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The purpose of the Jencks Act disclosure requirements "is to enable the defense to impeach a government witness during cross examination." *United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007).

The government's Jencks Act obligations apply to detention hearings. *See, e.g.*, *U.S. v. Comas*, No. 13-CR-20850, 2014 WL 129296, at *1 (S.D. Fla. Jan. 14, 2014) (requiring government to disclose Jencks material of federal agent who testified at pretrial detention hearing); *United States v. Wang*, No. 6:23-CR-188-RBD-RMN, 2023 WL 6446084, at *2 (M.D. Fla. Oct. 3, 2023) (requiring government to disclose grand jury testimony of officer called as witness at detention

<center>3</center>

hearing); *United States v. Diaz Guillen*, No. 18-CR-80160, 2022 WL 4119741, at *1 n.2 (S.D. Fla. Sept. 9, 2022) (continuing detention hearing to second day to address Jencks issues with respect to government witness).

In *U.S. v. Comas*, the magistrate judge required the government to call a witness in support of its request for detention and, over the government's objection, ordered the government to disclose Jencks material as it related to the witness's testimony. 2014 WL 129296, at *1. The government did not dispute that "Jencks is generally applicable to pretrial detention hearings" or that "if it calls the witness to testify at the pretrial detention hearing, then it must produce Jencks material." *Id.* at *1-2. Rather, the government asserted that the Court's requirement that it call a witness, as opposed to merely proffering information, necessitated the disclosure of Jencks material. *Id.* at *2. Nevertheless, the Court held that the government was obligated to disclose Jencks material regardless of who (the government or the Court) effectively called the witness. *Id.* "Magistrate judges could just as easily impose a no proffer/live testimony requirement. If that were to happen, then the Jencks material would be required because the Government did, in fact, call the witness." *Id.* at *3.

Here, Special Agent Atwood, the lead case agent, testified that she believed Mr. Alexander posed a risk of flight. Mr. Alexander plainly has the right to cross examine Special Agent Atwood with any material in the government's possession that relates to the subject matter of the testimony. Special Agent Atwood proffered the testimony of forty unnamed accusers, two of which are the subject of substantive counts in the indictment; yet the government has produced none of the Jencks material related to those accusations. Without disclosure of this material, Mr. Alexander has not been afforded a full and fair hearing. Accordingly, the Court should reopen the hearing

and, after disclosure of all Jencks material, permit Mr. Alexander to cross examine Special Agent Atwood.

**B.** **Mr. Alexander Seeks the Opportunity to Present Financial Information to Address Concerns Raised Sua Sponte by the Court**

Second, in issuing its oral decision, the Court speculated that although Mr. Alexander and his family offered a $115 million bond secured by all the real estate his immediate family owns, he nonetheless may still have means to flee because his family may have additional financial resources. The Court raised this issue sua sponte during its ruling. The Court also arrived at its conclusion without the benefit of any evidence of Mr. Alexander's family's full financial picture. The government produced no evidence of Mr. Alexander's finances, aside from broad assertions that the Mr. Alexander comes from significant wealth, which he has "weaponized" for criminality and now attempts to use "to get out of jail."

If the Court reopens the hearing, Mr. Alexander is prepared to present additional evidence, including calling witnesses and producing financial statements under seal, so that the Court is confident that there is sufficient financial disincentive to flee. To allay any concerns of the Court, Mr. Alexander also intends to offer an increased bail package and conditions that mitigate any remaining concerns the Court has regarding risk of flight. Mr. Alexander's parents are willing to sign a bond in any amount secured by the entirety of their assets. They are also preparing their financials for the Court for an in camera review, if that would aid the Court.[1]

Mr. Alexander is prepared to abide by the most stringent conditions of release, including those that this Court previously accepted in *United States v. Ludwigsen*, 99-MJ-03801 (JJO) (S.D.

---

[1] Mr. Alexander's parents would request a reasonable amount be made available for personal living expenses. They have no objection to the Court monitoring these funds during the pendency of the case.

<div align="center">5</div>

Fla. 1999), where the defendant was arrested in the Southern District of Florida on an indictment

charging racketeering (murder) conspiracy in the Eastern District of New York.  There, this Court

declined to detain the defendant over the government's objection, and the Eastern District of New

York likewise approved his release, setting conditions including a multi-million-dollar personal

surety bond, surrender of passport, house arrest, and a private security guard to monitor all entries

into and exits from the home.  *United States v. Ludwigsen*, 99-CR-520 (ERK), Dkts. 207, 236, 304

(E.D.N.Y.); *see generally United States v. Sabhnani,* 493 F.3d 63, 75 (2d Cir. 2007) (holding that

court may release a defendant subject to conditions of home confinement in which, among other

things, the defendant pays for private armed security guards); *United States v. Boustani* 932 F.3d

79, 82 (2d Cir. 2019) ("the private-security condition we described in *Sabhnani* may be appropriate

where the defendant is deemed to be a flight risk primarily *because of* his wealth. In other words,

a defendant may be released on such a condition only where, *but for* his wealth, he would not have

been detained.").

### C. Mr. Alexander Seeks the Opportunity to Rebut the Government's Representation Regarding Extradition From Israel

Finally, during its rebuttal, the government represented that Mr. Alexander would not be

extraditable should he flee to Israel.  This statement is unequivocally false.  Mr. Alexander seeks

the opportunity to present evidence and argument to refute it.

As an initial matter, Israel has an extradition treaty with the United States.  Accordingly,

Israel will grant extradition where an individual has been charged or convicted of a felony and

where—like here—the conduct at issue is a criminal offense in both the requesting country and

Israel.  Under the extradition treaty, Israel extradites not only United States citizens, like Mr.

Alexander, but also its own citizens to the United States for certain offenses.  *United States v.*

*Kresler*, 392 F. App'x 765, 768–69 (11th Cir. 2010) ("[T]he United States Attorney was under the

6

mistaken belief that Israel would not extradite one of its citizens."); *see also United States v. Samet*, 11 F. App'x 21, 22 (2d Cir. 2001) (granting defendant's motion for remand to reconsider detention where "district court erroneously assumed that Israel does not extradite Israeli residents").

For example, in *United States v. Rosenstein*, the United States Attorneys' Office for the Southern District of Florida successfully extradited an Israeli citizen from Israel in a drug trafficking prosecution. *See* 04-CR-21002, Dkt. 18 (S.D. Fla. April 12, 2006). There, the government requested that the defendant be detained, and the Court set a $10 million bond. *Id; see also United States v. Shai Cohen*, 16-CR-00114, Dkt. 9 (E.D.Va.) (documenting the extradition of an Israeli citizen charged with conspiracy to defraud, money laundering and alien smuggling).[2]

Nevertheless, the government takes the position that Mr. Alexander has significant ties to Israel and poses a risk of flight because (i) his parents are Israeli citizens; (ii) he is Jewish; and (iii) he is a person of means. This argument is patently biased and not grounded in reality or the law.

Mr. Alexander is a United States citizen who has substantial family ties in the United States and who has no history of flight or intentions to flee. Indeed, Special Agent Atwood testified that she did not uncover any information suggesting Mr. Alexander planned or prepared to leave the country, even after news reports in July about the ongoing criminal investigation. Additionally, Mr. Alexander does not hold citizenship in any other country, including Israel, and has not visited Israel in at least three years. There is no precedent of which we are aware where a court has held that a defendant, who is a United States citizen since birth, was more likely to flee because of Israel

---

[2] A quick Google search turns up numerous cases where defendants have been extradited from Israel to stand trial in the United States. *See, e.g.,* https://www.washingtonpost.com/local/public-safety/israel-extradites-accused-russian-computer-hacker-to-united-states/2019/11/12/e40f84ca-057b-11ea-8292-c46ee8cb3dce_story.html; https://archives.fbi.gov/archives/miami/press-releases/2013/fbi-announces-the-extradition-of-a-fugitive-from-israel.

ancestry. As such, Mr. Alexander requests the opportunity to present additional evidence on this point and rebut the government's false representation regarding extradition.

## III. Conclusion

For the reasons set forth above, we respectfully request that the Court grant Mr. Alexander's motion to reopen the detention hearing and stay removal of this case to the Southern District of New York. The defendant respectfully requests that the detention hearing be continued to further advance the grounds for this motion and answer any questions the Court may have.

Dated: December 16, 2024

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: _/s/ Milton L. Williams_
Milton L. Williams
Deanna M. Paul
Admitted Pro Hac Vice
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com

**BLACK SREBNICK**

By: _/s/ Howard Srebnick_
Howard Srebnick
201 South Biscayne Boulevard, Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
hsrebnick@royblack.com

*Attorneys for Tal Alexander*

8

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Milton L. Williams (mwilliams@wmhlaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Howard Milton Srebnick (blacksrebnick@ecf.courtdrive.com,
hreiner@royblack.com, hsrebnick@royblack.com), Joel M. Denaro (jdenaro@joeldenarolaw.com),
Deanna Paul (dpaul@wmhwlaw.com), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants: Alejandro Victor Rodriguez Vanzetti
(alejandro_rodriguezvanzetti@flsd.uscourts.gov), AUSA (caseview.ecf@usdoj.gov,
e.j.yera@usdoj.gov), Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:25037470@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order
Content-Type: text/html
```

## U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 12/16/2024 at 4:02 PM EST and filed on 12/16/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24–mj–04544–LMR |
| **Filer:** | |
| **Document Number:** | 23(No document attached) |

**Docket Text:**
 PAPERLESS *SUA SPONTE* ORDER as to Tal Alexander. The Government shall file its
Response to Defendant's Motion to Reopen Detention Hearing and Stay Removal [ECF No.
22] by December 18, 2024. Signed by Magistrate Judge Lisette M. Reid on 12/16/2024. (ari)


**1:24–mj–04544–LMR–1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Deanna Paul &nbsp &nbsp DPaul@wmhwlaw.com

Howard Milton Srebnick &nbsp &nbsp HSrebnick@RoyBlack.com, blacksrebnick@ecf.courtdrive.com,
hreiner@royblack.com

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

Milton L. Williams &nbsp &nbsp mwilliams@wmhlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be
provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

AO 472 (Rev. 09/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 24-MJ-04544-LMR |
| Tal Alexander, | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I – Eligibility for Detention

Upon the

☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

    ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

        ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

        ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

        ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

        ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

        ☐ **(e)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

    ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

    ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

    ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

Page 1 of 4

AO 472 (Rev. 09/16) Order of Detention Pending Trial

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☒ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above.

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III – Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☐ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong

☒ Subject to lengthy period of incarceration if convicted

☐ Prior criminal history

☐ Participation in criminal activity while on probation, parole, or supervision

☐ History of violence or use of weapons

☐ History of alcohol or substance abuse

☐ Lack of stable employment

☐ Lack of stable residence

☐ Lack of financially responsible sureties

☐ Lack of significant community or family ties to this district

☒ Significant family or other ties outside the United States

☐ Subject to removal or deportation after serving any period of incarceration

☐ Prior failure to appear in court as ordered

☐ Prior attempt(s) to evade law enforcement

☐ Use of alias(es) or false documents

☐ Background information unknown or unverified

☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

The Defendant is charged with one count of Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1954(c), and two counts of Sex Trafficking by Force, Fraud and Coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1), which carries a statutory mandatory minimum sentence of 15 years and a maximum of life imprisonment. Because of the nature of the charged offenses, there is a statutory presumption of detention in this case. See 18 U.S.C. §§ 3142(e)(1), 3142(e)(3)(D).

On December 13, 2024, this Court held a hearing pursuant to 18 U.S.C. § 3142(f)(1) to determine whether the Defendant, TAL ALEXANDER, should be detained pending trial. The government moved for pre-trial detention premised on both danger to the community and serious risk of flight. For the reasons stated at the hearing, hereby incorporated into this Order, the Court orders ALEXANDER's pre-trial detention based upon risk of flight.

The facts, as proffered by the government, established that, ALEXANDER and his coconspirators have been charged in a sex trafficking conspiracy spanning 11 years, from 2010-2021. However, there is evidence to support that ALEXANDER has been engaged in this kind of conduct for approximately 20 years. The government submitted that approximately 40 women have come forward to report that ALEXANDER and/or his co-conspirators lured the victims to destinations in the United States and elsewhere under the promise of luxury accommodations and/or travel destinations, surreptitiously drugged them and violently sexually assaulted the victims. Some victims reported being held down and/or unable to move during the assaults due to the effects of the drugs given to them by ALEXANDER and/or other conspirators.

While the Court finds the alleged conduct to be extremely dangerous to the public, it also finds that there are conditions that could be imposed to mitigate the government's stated concern at the detention hearing that ALEXANDER remains a danger to the community even under home confinement because he would harm witnesses by bringing lawsuits against them for defamation or threatening to do so.

The Court does find that the government has met its burden to demonstrate that ALEXANDER is a serious flight risk and that the defense has failed to rebut the presumption on that ground. In finding pre-trial detention is appropriate in this case, the Court is considering the strong weight of the evidence; the significant sentence the Defendant faces; and the nature and circumstances of the offense; and the personal characteristics of the Defendant. In considering the weight of the evidence, the government anticipates the testimony of numerous victims and witnesses, electronic evidence, physical evidence, and documentary evidence, among other things.

ALEXANDER has international contacts, which include his parents who are Israeli. The government also proffered that ALEXANDER frequently travels internationally, including to Israel and the Bahamas, and usually travels to these destinations by private jet and/or yacht. These travel arrangements are also frequently done at a moment's notice and not scheduled in advance.

Defendant is a successful real estate agent in the luxury market and lives a lifestyle supported by extensive financial resources. Home confinement at his parents' home, as he has requested, would give him direct ocean access and the means to quickly flee.

Given the potential penalties here, both incarceration and reputational harm, the Defendant has every incentive to flee to avoid prosecution and a public trial. *See, e.g., United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) ("[I]ncentive to flee . . . naturally bears upon and increases the risk of flight."); *United States v. Sammons*,

AO 472 (Rev. 09/16) Order of Detention Pending Trial

No. 19 Cr. 107, 2020 WL 613930, at *5 (S.D. Ohio Feb. 10, 2020) ("The shame of the allegations that he is facing is also an immense incentive to flee.").

Moreover, the Defendant is facing a significant term of imprisonment and is facing his first federal offense/conviction. When considering the nature and circumstances of the offense and the Defendant's extensive financial resources, the Court agrees with the government that the Defendant is a flight risk. Thus, the Court finds that the government has proven by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance at trial and orders that he be detained.

## Part IV – Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:   12/17/2024

United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-mj-4544-REID

**UNITED STATES OF AMERICA**

**vs.**

**TAL ALEXANDER,**

      **Defendant,**

_____

### MOTION FOR EXTENSION OF DEADLINE TO RESPOND TO DEFENDANT'S MOTION TO REOPEN THE DETENTION HEARING AND STAY REMOVAL

The United States of America, through the undersigned Assistant United States Attorneys, respectfully requests that the Court extend by one day, from December 18, 2024 to December 19, 2024, the deadline for the Government to respond to the defendant's motion to reopen the detention hearing. The defendant, through counsel, does not oppose this request.

After being informed on Sunday, December 15, 2024, that the defendant intended to file his motion, the Government began working to procure a copy of the transcript from the detention hearing that was held on December 13, 2024. An expedited copy of the transcript has been ordered, but as of the time of this filing, the Government has not yet received a copy of the transcript, which is required to address factual claims made by the defendant in his motion. The Government therefore requests this slight extension to the Court's briefing schedule to allow it to receive the

transcript, which is expected to be produced on December 18, 2024, and then respond to the defendant's motion.

<div style="margin-left: 40%;">

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

</div>

By:    */s/ Lauren Astigarraga*
        Lauren Astigarraga
        Assistant United States Attorney
        Florida Bar No. 119473
        99 Northeast 4th Street, 5th Floor
        Miami, Florida 33132
        Telephone: (305) 961-9105
        E-mail: lauren.astigarraga@usdoj.gov


<div style="margin-left: 40%;">

EDWARD Y. KIM
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF NEW YORK

</div>

By:    /s/ Andrew Jones
        Kaiya Arroyo
        Elizabeth A. Espinosa
        Andrew Jones
        Assistant United States Attorneys
        26 Federal Plaza, 37th Floor
        New York, NY 10278
        Telephone: (212) 637-2249
        E-mail: Andrew.Jones2@usdoj.gov

<div style="text-align: center;">2</div>

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Lauren Alexandra Astigarraga (andrea.samper@usdoj.gov,
caseview.ecf@usdoj.gov, lauren.astigarraga@usdoj.gov, usafls-hqdkt@usdoj.gov), Joel M.
Denaro (jdenaro@joeldenarolaw.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Deanna Paul (dpaul@wmhwlaw.com), Howard Milton Srebnick
(blacksrebnick@ecf.courtdrive.com, hreiner@royblack.com, hsrebnick@royblack.com), Milton
L. Williams (mwilliams@wmhwlaw.com), Magistrate Judge Lisette M. Reid
(reid@flsd.uscourts.gov)
--Non Case Participants: Alejandro Victor Rodriguez Vanzetti
(alejandro_rodriguezvanzetti@flsd.uscourts.gov)
--No Notice Sent:

Message-Id:25045767@flsd.uscourts.gov
Subject:Activity in Case 1:24-mj-04544-LMR USA v. Alexander Order on Motion for Extension
of Time to File Response/Reply
Content-Type: text/html
```

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing


The following transaction was entered on 12/18/2024 at 2:11 PM EST and filed on 12/18/2024

| | |
|---|---|
| **Case Name:** | USA v. Alexander |
| **Case Number:** | 1:24-mj-04544-LMR |
| **Filer:** | |
| **Document Number:** | 26(No document attached) |

**Docket Text:**
**PAPERLESS ORDER granting [25] Unopposed Motion for Extension of Time to File Response to the Motion to Reopen the Detention Hearing. [ECF No. 22]. The Government shall file its Response to the Motion by December 19, 2024. Signed by Magistrate Judge Lisette M. Reid on 12/18/2024. (ari)**


**1:24-mj-04544-LMR-1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Deanna Paul &nbsp &nbsp DPaul@wmhwlaw.com

Howard Milton Srebnick &nbsp &nbsp HSrebnick@RoyBlack.com, blacksrebnick@ecf.courtdrive.com, hreiner@royblack.com

Joel M. Denaro &nbsp &nbsp jdenaro@joeldenarolaw.com

Lauren Alexandra Astigarraga &nbsp &nbsp lauren.astigarraga@usdoj.gov, Andrea.Samper@usdoj.gov, CaseView.ECF@usdoj.gov, usafls-hqdkt@usdoj.gov

Milton L. Williams &nbsp &nbsp mwilliams@wmhlaw.com

**1:24–mj–04544–LMR–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TAL ALEXANDER,<br><br>          Defendant. | Case No. 24-MJ-04544 (LMR) |

**DEFENDANT TAL ALEXANDER'S RESPONSE TO [ECF#25] GOVERNMENT'S
MOTION FOR EXTENSION OF DEADLINE TO RESPOND TO DEFENDANT'S
MOTION TO REOPEN THE DETENTION HEARING AND STAY REMOVAL**

On December 16, 2024, Defendant Tal Alexander moved this Court to reopen the detention

hearing held on December 13, 2024, and stay removal of this case to the Southern District of New

York pending a decision on pretrial detention. ECF No. 22.

This Court ordered the government to file a response by December 18, 2024. ECF No. 23.

The Government filed a motion seeking a one-day extension of time to file its response,

indicating that it is waiting to receive a copy of the transcript of the detention hearing, which the

Court granted. ECF Nos. 25, 26. While Mr. Alexander submits that no transcript is required to

respond (given that this matter is before the same judicial officer who presided over the detention

hearing), as a professional courtesy Mr. Alexander did not oppose a one-day extension, but

requested that any hearing on the motion be heard this week, on Friday, December 20, 2024, so as

not to delay the proceeding; also, undersigned counsel (Srebnick) is scheduled to be out of the

district next week.

Government counsel advised Mr. Alexander that the Assistant United States Attorneys

from the Southern District of New York and Special Agent Justine Atwood are not available to be

in court on December 20, 2024. Mr. Alexander proposes that Special Agent Atwood testify remotely, and that an Assistant United States Attorney from the Southern District of Florida—the office that originally handled the detention hearing—appear for the government, so as not to delay the proceeding.

Dated:   December 18, 2024

<div align="right">

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By:   _/s/  Milton L. Williams_
Milton L. Williams
Deanna M. Paul
Admitted Pro Hac Vice
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com

**BLACK SREBNICK**

By:   _/s/  Howard Srebnick_
Howard Srebnick
201 South Biscayne Boulevard, Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
hsrebnick@royblack.com

_Attorneys for Tal Alexander_

</div>

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

v.                                                            Dkt. No. 24-MJ-04544 (LMR)

TAL ALEXANDER,

                    Defendant.

## DEFENDANT TAL ALEXANDER'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO REOPEN DETENTION HEARING AND STAY REMOVAL

On December 16, 2024, defendant Tal Alexander submitted a motion to reopen the detention hearing held before this Court on December 13, 2024, and stay removal of this case to the Southern District of New York pending a decision on pretrial detention. ECF No. 22. That same day, the Court issued an order directing the government to respond by December 18, 2024. ECF No. 23. On December 18, 2024, the government filed a motion for a one-day extension, to December 19, 2024, to file its response. ECF No. 25. In its submission, the government stated that it did not have a transcript of the pretrial detention hearing "which is required to address factual claims made by the defendant in his motion." *Id.* After the government moved for an extension, the transcript was made available to both parties. It is attached here as Exhibit A.

At the time of Mr. Alexander's motion to reopen, he also did not have the detention hearing transcript. With the benefit of the transcript, we make this submission to supplement Mr. Alexander's motion to reopen to provide additional support from the record.

First, in Mr. Alexander's motion, he asserted that the government represented that Mr. Alexander would not be extraditable should he flee to Israel. ECF No. 22, at 6. More specifically, the government stated in rebuttal, "[W]e have confirmed with OIA that if he flees we can't get him

back." Tr. at 67:16-17. The government further asserted that "[t]he fact that his parents are Israeli, the fact that he has traveled back to Israel, the fact that we have conferred with OIA and they have indicated that if he does flee there, which has happened in the past, that they are not going to be able to extradite him back and that is not a sure thing." Tr. at 51:19-24. These statements are plainly inaccurate, as we detailed with numerous examples to the contrary in Mr. Alexander's motion to reopen. *See* ECF No. 22, at 6-7.

Second, in the motion to reopen, Mr. Alexander proposed an increased bail package, which included a bond signed by Mr. Alexander's parents in any amount secured by the entirety of their assets and an in-camera review by the Court of their financials. *Id.* at 5-6. We can provide additional information that has developed since the filing of the motion. Mr. Alexander is prepared to retain a private security service with extensive experience performing bail security and pretrial release services, to provide a full-time armed security detail at the location of Mr. Alexander's home detention. The company will diligently follow the Court's orders and, among other things, install in and around the residence security measures, including video cameras and door and window sensors and alarms, and ensure that 24 hours per day, every day, Mr. Alexander will be guarded by several armed security professionals. Mr. Alexander would pay the costs of these services.

These services and proposed conditions have been accepted in cases where courts had concerns about flight of defendants with means, and more significantly, have been successful. *See, e.g., United States v. Jeffrey Webb*, Dkt. 15-CR-252 (E.D.N.Y.); *United States v. Ng Lap Seng*, Dkt. 15-CR-706 (S.D.N.Y.).

In *Webb*, the defendant was arrested abroad and waived extradition to return to the Eastern District of New York. On July 18, 2016, the court set bail, including, among other conditions, $10

million bond secured by signatures of ten sureties, properties in Pennsylvania, Georgia, Florida, and the Cayman Islands, and a partnership interest in a P.C. The defendant consented to home detention with electronic monitoring at a family apartment within 20 miles of the courthouse and thereafter at his family residence in Georgia. He was required to hire a private security service to monitor his physical location, 24 hours per day, 7 days per week, at both the initial location and the subsequent location. The security service was paid for by the defendant but directed by and reported to the FBI and the Office of Pretrial Services. The defendant and his wife also surrendered their passports. For nearly six months, a company provided these services at both locations on a 24/7 basis with two personnel each working a 12-hour shift.

Similarly, in *Ng*, a Magistrate Judge set bail at the defendant's arraignment in the amount of $50 million personal surety bond secured by $20 million cash and property in New York City, with the defendant's presence to be secured by a company. The government's appeal to the District Court was denied, but the Court ordered a complete set of conditions, which were adhered to by the service provider. The Court's bail application order is attached hereto as Exhibit B.

With these additional conditions, Mr. Alexander's augmented bail package entirely ensures that he poses no risk of flight.

For the supplemental reasons set forth above, we respectfully request that the Court grant Mr. Alexander's motion to reopen the detention hearing and stay removal of this case to the Southern District of New York. The defendant respectfully requests that the detention hearing be reopened to further advance the grounds for this motion and answer any questions the Court may have.

3

Dated:    December 19, 2024          Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By:    */s/  Milton L. Williams*
        Milton L. Williams
        Deanna M. Paul
        Admitted Pro Hac Vice
        250 Vesey Street
        New York, NY 10281
        Tel: (212) 335-2030
        mwilliams@wmhwlaw.com
        dpaul@wmhwlaw.com

**BLACK SREBNICK**

By:    */s/  Howard Srebnick*
        Howard Srebnick
        201 South Biscayne Boulevard, Suite 1300
        Miami, FL 33131
        Tel: (305) 371-6421
        hsrebnick@royblack.com

        *Attorneys for Tal Alexander*

4

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 24-mj-04544-LMR-1

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )          December 13, 2024
v.                             )
                               )
TAL ALEXANDER,                 )
                               )          Pages 1 - 77
          Defendant.           )
_____/

DETENTION HEARING

BEFORE THE HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Counsel on behalf of the Plaintiff:

UNITED STATES DEPARTMENT OF JUSTICE
99 NE 4th Street
Miami, FL 33132
BY: LAUREN A. ASTIGARRAGA, ESQ.

APPEARANCES CONTINUED:

Counsel on behalf of the Defendant:

            JOEL DENARO P.A.
            1000 Brickell Avenue
            Suite 201-E,
            Miami, FL 33131
            JOEL DENARO, ESQ.
            Appearing *pro hac vice*




            WALDEN MACHT HARAN & WILLIAMS LLP
            250 Vesey Street, 27th Floor,
            New York, New York 10281
            BY:  MILTON L. WILLIAMS, ESQ.
            BY:  DEANNA M. PAUL, ESQ.




Transcribed by:

            BONNIE JOY LEWIS, R.P.R.
            7001 SW 13 Street
            Pembroke Pines, FL  33023
            954-985-8875
            caselawrptg@gmail.com

3

I N D E X

THE WITNESS:                                              PAGE:

**FBI SPECIAL AGENT JUSTINE ATWOOD**

Cross Examination by Mr. Williams:                          19

Redirect Examination by Ms. Astigarraga:                    35

Recross Examination by Mr. Williams:                        41

```
 1                 (Thereupon, the following proceedings were held:)

 2             THE COURT:  Okay.  The final matter on the calendar is

 3   USA versus at all Alexander; Case Number 24-cr-04544.

 4             MS. ASTIGARRAGA:  Good afternoon, Your Honor.  Lauren

 5   Astigarraga on behalf of the United States.

 6             MR. DENARO:  Good afternoon, Your Honor.  Joel Denaro

 7   on behalf of Tal Alexander.

 8                 As the Court is aware, I filed a temporary notice of

 9   appearance as well as a motion pro hac vice and the Court

10   granted that motion.

11                 Thank you.

12             THE COURT:  Yes.

13             MR. DENARO:  So it is a pleasure to introduce Deanna

14   Paul from the Southern District of New York as well as Mr.

15   Milton Williams from the Southern District of New York.

16                 Very fine lawyers, Your Honor.  They are going to be

17   handling the detention hearing.

18             THE COURT:  Okay.

19             MR. DENARO:  But I just wanted to personally introduce

20   them to the Court.

21             THE COURT:  All right.  Thank you, Mr. Denaro.

22             MR. WILLIAMS:  Good afternoon, Your Honor.

23             THE COURT:  Good afternoon.

24             MR. WILLIAMS:  Pleasure to appear in front of you and

25   thank you for granting pro hac vice.
```

```
 1              THE COURT:  Very good.

 2              So let's start with pretrial detention and Government

 3     how do you wish to proceed?

 4              MS. ASTIGARRAGA:  Factual proffer, Your Honor.  We

 5     have an agent who is also present.

 6              THE COURT:  Okay.  All right.  So we will let the

 7     Government proceed with the factual proffer.

 8              Then, Mr. Williams, if you want to question the agent,

 9     we will give you the opportunity to do so.

10              MR. WILLIAMS:  Thank you, Your Honor.

11              May I ask, two things, is it possible to get the 3500

12     material from the AUSA after the agent testifies?

13              MS. ASTIGARRAGA:  I could ask the prosecution in the

14     Southern District of New York.  They requested the information

15     five minutes before the hearing.  I explained that we couldn't

16     produce that at this time.

17              I anticipate they have no issue presenting *Jencks*

18     following the conclusion of the hearing when they have an

19     opportunity to assemble it.

20              MR. WILLIAMS:  Okay.

21              THE COURT:  Yes.

22              MR. WILLIAMS:  And should the hearing be continued,

23     then, Your Honor, in case there is something in the materials

24     that I would like to question on.

25              THE COURT:  Well, generally we don't do that because
```

6

1  you have one opportunity for the hearing.

2          MR. WILLIAMS:  Okay.

3          THE COURT:  But definitely there is something in there

4  that you believe that it should have been considered, you have

5  the opportunity to appeal my decision.

6          MR. WILLIAMS:  Thank you, Your Honor.

7          THE COURT:  And bring that to the District Court's

8  attention.

9          MR. WILLIAMS:  Thank you very much, Your Honor.

10          THE COURT:  Okay.

11          MS. ASTIGARRAGA:  May I proceed, Judge?

12          THE COURT:  Yes, you may.

13          MS. ASTIGARRAGA:  Thank you, Your Honor.

14          The Government notes that the presumption applies in

15  this case and it is joining in the recommendation of Pretrial

16  Services that no combination of conditions is appropriate and

17  that detention should be ordered.

18          The evidence in the Government's case demonstrates

19  that from at least 2010 to 2021, the Defendant, his brothers

20  who are charged as his co-defendants, all conspired together to

21  sexually assault, traffic, and forcibly and violently rape

22  dozens of women.

23          Multiple of those women include women who were minors

24  at the time they were assaulted.  While the conspiracy charged

25  here is an eleven-year span, the evidence in this case supports

1    that the conduct has been ongoing for approximately 20 years.

2        This conduct also transpired during a period where the

3    Defendant and his brothers were in serious or long-term

4    relationships.

5        The offenses that the Defendant has been charged with

6    each carry a 15-year minimum mandatory.  However, their

7    estimated guideline range is life imprisonment.

8        While the indictment substantively charges two

9    particular victims, the conspiracy charged includes that the

10   Defendant and his co-Defendant engaged in this type of conduct

11   against at least approximately 40 different victims.

12       All of these victims name at least one of the

13   Alexander brothers.  Since the Defendant's arrest became public

14   this week, numerous other potential victims have since come

15   forward to report being sexually assaulted by the Defendant or

16   one of his brothers who received a bond, but are also charged

17   in this indictment and are pending their transfer over here

18   into federal court.

19       Evidence from this investigation shows that the

20   Alexander brothers began engaging in these acts of sexual

21   violence, including gang rapes, while they were still in high

22   school here in Miami, Florida.

23       The Government interviewed multiple women who report

24   being raped by at least one of the Alexander brothers,

25   including the Defendant, in high school.  They claim that this

 1    was done in a gang rape style form by the brothers and other

 2    people.

 3           The victim reported the Defendant boasted the sexual

 4    assaults at school proclaiming that he had been, quote, running

 5    train on their victims and saying that he wanted to do it

 6    again.

 7           The phrase running a train is a phrase known to law

 8    enforcement to mean having sex with multiple people, usually

 9    men, to have sex with a single person, usually a woman.

10    Running a train can also be a phrase that means gang rape.

11           Law enforcement learned through public reporting that

12    one of the Defendant's brothers charged in this case, published

13    in his high school yearbook that his most memorable moment in

14    high school was, quote, riding my first choo-choo train, end

15    quote.

16           As adults, the Defendant and his brothers serial

17    sexual violence has only escalated over the past decade.  This

18    investigation has uncovered that the Defendant and his brothers

19    would find female victims through a variety of means, which

20    included through the use of promoters to bring them women

21    through dating apps and through chance encounters.

22           However, the evidence in the Government's case shows

23    that the subsequent conduct that all followed was fairly

24    consistent in their MO and in their pattern of sexual violence.

25           The Defendant and his brothers would invite the

victims to parties or events luring them over with travel to popular vacation destinations such as the Hamptons, Tulum in Miami, or to other luxury accommodations at lavish hotels or properties.

They would offer them alcohol laced with drugs in order to physically incapacitate them and then they would forcibly rape the victims either alone, together with other co-Defendants, or with other uncharged co-conspirators.

Many of the victims reported symptoms consistent with being drugged by a date rape drug and indicated that they had an inability to move and difficulty speaking, feeling like they could not control their own bodies and that they had gaps in their memories.

In drugging their victims, the Defendant and his brothers used cocaine, mushrooms, and the date rape drug. Many victims also reported to law enforcement that they told the Defendant, or his brothers, no, or that they even screamed while the rapes were happening, but that on each and every occasion the Defendant ignored their pleas to stop.

Many of the victims also reported being terrified the bothers would hurt them or be killed because of how aggressively and forcibly they were raped during the sexual assaults. Numerous victims recalled being restrained and being physically held down.

These accounts are consistent with dozens of women who

1 have come forward to report their sexual assaults. Despite

2 many of these victims coming from different states, social

3 circles, and the facts that the incidents occurred on different

4 dates at times spanning different decades.

5 The Defendant has also been charged for conducts

6 against two subsequently charged victims. As it relates to

7 victim one, in the summer of 2011, victim one traveled to the

8 Hamptons at her friend's invitation.

9 Victim one and other women were met at a train station

10 by the Defendant and another man and they took the women to

11 their vacation house.

12 After arriving at the house, victim one was given a

13 glass of wine and drank about half of it before she began to

14 feel unwell in a way that was inconsistent with drinking that

15 amount. Victim one's memory, thereafter, became hazy, but she

16 had several distinct memories of that night.

17 Specifically victim one remembers being held down by

18 the Defendant while another man entered the room. Victim one

19 also remembers being in a second location with the Defendant

20 and another man and that a camcorder was set up.

21 Victim one's next memory is waking up in the grass

22 outside of the vacation home with a physical sensation

23 indicating recent vaginal penetration.

24 As it relates to victim two, in August of 2016, victim

25 two and her friend, who I will refer to as individual one,

1  mashed with the Defendant's brother Alon and Oren Alexander on

2  a dating application.

3          Victim two primarily communicated with Oren and victim

4  one primarily communicated with Alon.  Victim two and

5  individual one eventually traveled from Illinois to stay with

6  the Defendant's brothers in the Hamptons over the Labor Day

7  weekend.  The co-Defendants paid for the travel and

8  accommodations of victim two and individual one.

9          Messages located on Oren Alexander's iPod account

10 reflect that the Alexander brothers exchanged communications

11 with this Defendant about purchasing flights for victim two and

12 individual one around the time that the brothers booked their

13 tickets.

14         In the messages Alon indicated:

15         "Are we booking the flights?  First three on the left.

16 We split and try to orgy them out."

17         This Defendant responded:  "For sure, last weekend,

18 throw it up."

19         Alon responded:  "I agree, Oren.  To which Oren

20 responded:  "All four?  Why not."

21         Two days later this Defendant began exchanging

22 messages within another group chat entitled Hamptons Hot Chicks

23 with two party promoters.

24         At one point one of the promoters said I want photos

25 of the girls naked and this Defendant responded:

1    "LOL, guys, we're going to have a lot of fun."

2    Once victim two and individual one eventually arrived

3  to the Hamptons' home and the Defendant and his brother hosted

4  a party the following day.

5    During the party, Oren Alexander gave victim two a

6  cocktail and shortly thereafter victim two began feeling

7  strange and struggled to walk.

8    Alon Alexander assisted victim two inside the house

9  and took her into the bedroom to lie down.  Some time later

10 victim two woke up when Oren entered the room.  He then pulled

11 down victim two's bathing suit and climbed on top of her.

12 Victim two was physically impaired and could not move.

13    She also struggled to speak.  Oren raped victim two

14 and then left the room leaving her lying in the bed.

15    When victim two woke up the next morning, she was

16 lying on the bed and her bathing suit was pulled down around

17 her legs.

18    In another group, in a What's App chat called Lions in

19 Tulum.  The Alexander brothers and other men attending the trip

20 discussed, quote, imports of women to Tulum for their upcoming

21 trip that they were discussing.

22    They discussed splitting the cost of lodging and

23 flights for the women that they planned to, quote, import over

24 there.  And they discussed providing the drugs to the women so

25 that it would be more likely that they would want to engage in

1  sex.

2        In that group chat one of the participants stated,

3  quote, going to start collecting for the pot to fly bitches

4  down, end quote.

5        Alon Alexander replied, there should be a fee per bang

6  and after bang, end quote.  The Defendant later stated that the

7  girls looked fresh.

8        The chat also made clear that the Defendant and his

9  brothers wanted to be sure that only certain kind of drugs like

10  cocaine, mushrooms, and the date rape drug were present for the

11  festivities.

12        The group also discussed they did not want the girls

13  to have Ectasy because, quote:

14        "Nothing gets done with that and it just makes the

15  girls want to chase the party instead."

16        In that same group chat several days later the

17  Defendant reinitiated communication about the drugs again.

18  This time inquiring also about photographers.  The Defendant

19  asked the group:

20        "Photographers?  Drugs?"

21        To which someone responded:  "All getting worked on."

22        Male one told the group that they could feel free to

23  extend a piece that you like, which law enforcement understands

24  piece to mean a particular woman.

25        One of the Defendant's brothers stated that he wanted

 1   to make sure that he got, quote:

 2           "Max returns and there were no free rides under my

 3   watch."

 4           The Government is also in possession of social media

 5   evidence that supports the charges in this indictment.

 6           In January of 2024, Oren Alexander messaged this

 7   Defendant and told him, quote:

 8           "Start to think about your reputation that you want

 9   out there.  We're on the top of our game and the only thing

10   that can bring us down is some ho complaining."

11           To which the Defendant agreed and responded:

12   "Understood.  Did someone complain?"

13           And even when victims did complain, the Defendants

14   took steps to interfere, intimidate, and stop victims from

15   reporting.

16           Prior to this case and in an instance where the victim

17   stated that she had been forcibly digitally penetrated by this

18   Defendant, while Oren was in the room, this Defendant and his

19   brother then filed a police report alleging harassment against

20   the victim.

21           This Defendant then threatened that victim with a

22   defamation lawsuit and told her that if she did not stop

23   telling people that he and Oren had sexually assaulted her that

24   he was going to file a lawsuit against her.

25           Another victim reported that the Defendant made

1    threatening statements to her after she told other people that

2    she had been drugged.

3           In March of 2024, multiple lawsuits alleging

4    misconduct and assault against the Alexander brothers were

5    publically reported.

6           In response to the public accusations, Alon Alexander

7    began compiling files on each publically identified victims,

8    several who had not been made public yet, as part of an

9    apparent attempt to discredit their accusers.

10          The Government's investigation as to this obstructive

11   conduct is still ongoing.

12          The Defendant is a multimillionaire who has the

13   resources to flee and live comfortably in hiding.  The

14   Defendant and his family have access to significant wealth.

15          He and one of his brothers owns a luxury real estate

16   brokerage with a real estate portfolio valued at hundreds of

17   millions of dollars.

18          They are known in the real estate world for selling

19   high-end luxury homes to celebrities and the ultra rich.  The

20   Defendant has properties here in Miami as well as over in New

21   York.

22          The Defendant and his family also have significant

23   foreign ties.  Particularly to Israel and to Brazil.  Their

24   parent are from Israel and the Alexander brothers frequently

25   travel to Israel to visit family, conduct business, and for

1  vacation.

2          They also travel frequently outside the United States

3  to other locations often booking flights at the last minute and

4  traveling by their private jet or on a yacht.

5          We have confirmed with OIA, who indicated that despite

6  an extradition treaty, we can not ensure the Defendant's

7  extradition back to the U.S. should he flee out to Israel.

8          This concludes the Government's proffer.  Special

9  Agent Justine Atwood is present and available for

10  cross-examination.

11          I would also like to note for the record, Your Honor,

12  that the parties have conferred and agreed not to name any

13  particular victims here at this hearing.

14          There is one additional victim that I believe counsel

15  intends to inquire on and she will be referred to as victim

16  three in this hearing.

17          THE COURT:  Okay.  Thank you very much.

18          So, Agent Attwood, if you could come forward, please.

19          You could stand at the chair by the witness stand and

20  then my courtroom deputy will swear you in and then you can

21  have a seat.

22          Mr. Williams, with respect to what we discussed

23  before, the *Jencks* --

24          MR. WILLIAMS:  Yes.

25          THE COURT:  I want to make clear, though, that there

17

```
 1   is a requirement in the rule that if there is some information

 2   that was not known to you at the time of the hearing, and that

 3   if it has a material bearing on the hearing, you could

 4   certainly file a motion to re-open the hearing stating what

 5   that evidence is and if it is material.

 6          I just want to clarify that.

 7          MR. WILLIAMS:  You know, Your Honor -- and I am sorry.

 8   I really appreciate you taking the time out today to do this

 9   hearing.

10          What I am saying is this.  Normally -- and this is I

11   am back from New York and practice a lot in the Southern and

12   Eastern Districts up there.

13          And normally we will get in many cases 3500 material

14   beforehand or at least at the end of the direct examination of

15   this case proffer.

16          And I appreciate it.  I don't want to delay the

17   proceedings.  I appreciate you saying and putting on the record

18   what you did.

19          And once we get it and look at it, if there is a need

20   at all, we will revisit it.

21          Thank you very much.

22          THE COURT:  Okay.  Very good.  All right.

23          THE COURTROOM DEPUTY:  Please raise your right hand.

24          THE WITNESS:  (Complied.)

25   (Witness sworn.)
```

```
 1              THE COURTROOM DEPUTY:  Please have a seat and state
 2   your name and your last name.
 3              THE WITNESS:  Yes.  Justine Attwood; A-T-W-O-O-D.
 4              THE COURTROOM DEPUTY:  Thank you.
 5              THE COURT:  You may proceed.
 6              MR. WILLIAMS:  Thank you, Your Honor.
 7              With the Court's permission and perhaps I could give
 8   it to the Deputy, I would like Special Agent Atwood to have the
 9   indictment and if we could mark it as Defense Exhibit One.
10              THE COURT:  Sure.  And you may have it marked and then
11   my courtroom deputy --
12              MR. WILLIAMS:  I don't have a paperclip.
13              THE COURTROOM DEPUTY: There is one there.
14              MR. WILLIAMS:  Sure.  Absolutely.
15              THE COURTROOM DEPUTY:  Do you see them there?
16              MR. WILLIAMS:  I do.  Thank you.
17              THE COURTROOM DEPUTY:  You're welcome.  I'll put the
18   case number on it.
19              MR. WILLIAMS:  Okay.  Thanks.
20              THE COURTROOM DEPUTY:  You're welcome.
21              MR. WILLIAMS:  Is there a paperclip there by any
22   chance?
23              THE COURTROOM DEPUTY:  Sure.  This will be better.
24              MR. WILLIAMS:  Thank you very much.
25              THE COURTROOM DEPUTY:  You're welcome.
```

```
 1            MR. WILLIAMS:  Here you go Agent Atwood.

 2            THE WITNESS:  Thank you.

 3        FBI S/A JUSTINE ATWOOD, GOVERNMENT'S WITNESS SWORN

 4                      CROSS EXAMINATION

 5  BY MR. WILLIAMS:

 6  Q.  Special Atwood, are you familiar with the indictment,

 7  Defense Exhibit One, chat superseding indictment in this case?

 8  A.  Yes.

 9  Q.  Are you aware of whether or not there was a previous

10  indictment?

11  A.  Yes.

12  Q.  Are you familiar with that indictment?

13  A.  Yes.

14  Q.  Did you actually see the other indictment?

15  A.  Yes.

16  Q.  Could you tell us the differences between the first

17  indictment and that indictment?

18  A.  This is a speaking indictment, the second one.

19  Q.  Meaning what?

20  A.  We added additional information to that indictment.  I was

21  not there for that indictment.

22  Q.  You were not there for which indictment?

23  A.  The second one.

24  Q.  The second one.  The one you are holding?

25  A.  Yes.
```

1  Q.  Now, how long have you been with the FBI?

2  A.  **Three and-a-half years.**

3  Q.  Three and-a-half years.

4      And what unit or Task Force are you assigned to?

5  A.  **I am assigned to the Child Exploitation and Human**

6  **Trafficking Task Force.**

7  Q.  And how long have you been working on this particular

8  matter?

9  A.  **Since the summer of 2024.**

10  Q.  Since the summer.  Approximately when in the summer?

11  A.  **In June.**

12  Q.  And are you the lead agent on the case?

13  A.  **Yes, I am.**

14  Q.  You are the lead.  So you are familiar with -- very

15  familiar with the investigation, correct?

16  A.  **Correct.**

17  Q.  Can you tell me -- and during the proffer the AUSA

18  mentioned that there was travel between somewhere to the

19  Hamptons.

20      Where did that person come from to go to the Hamptons?

21  A.  **They traveled either by bus.**

22  Q.  From where?

23  A.  **From New York and we have had other victims travel from**

24  **other locations.**

25  Q.  From New York.

 1      Did they travel from -- the AUSA based on the indictment

 2   proffered that a victim traveled from somewhere -- she didn't

 3   say where -- to the Hamptons.  And I don't think where she

 4   traveled from, from the Hamptons is necessarily in the

 5   indictment, if I remember correctly.

 6      So do you know where they came from to go to the Hamptons?

 7   A.  **They came from the Long Island Railroad.**

 8   Q.  The Long Island Railroad?

 9   A.  **Uh-huh.**

10   Q.  And what part of Long Island did they come from?

11   A.  **I am not sure.  I am not from New York.  I believe it was**

12   **in Queens.**

13   Q.  In Queens.  So they traveled within New York State,

14   correct?

15   A.  **Correct.**

16   Q.  And during the course of your investigation -- by the way,

17   this conspiracy is for a period of eleven years, correct?

18   A.  **Correct.**

19   Q.  From 2000 -- approximately in or about 2010 to in or about

20   2021, correct?

21   A.  **Correct.**

22   Q.  So that means the last act that is alleged as part of the

23   conspiracy occurred in 2021, correct?

24   A.  **Correct of what we know.**

25   Q.  Do we know what month in 2021 -- sorry.  Not we.

1    Are you aware of what month in 2021 the alleged last act

2  that was a part of this conspiracy occurred?

3  A.  **I have interviewed multiple women.  So I would have to go**

4  **back to my notes.  I don't have that with me now.**

5  Q.  You interviewed multiple women.  How many women have you

6  interviewed?

7  A.  **Approximately 40.**

8  Q.  You interviewed 40.

9    And it is an eleven-year conspiracy that occurred over

10  eleven years, correct?

11  A.  **Correct.**

12  Q.  And so based on the approximate dates in the indictment the

13  last act occurred in 2021, which is almost four years ago,

14  correct?

15  A.  **Correct.**

16  Q.  Now, during the course of your investigation, did you

17  interview any women who told you that they had friendly contact

18  with any one of the Defendants after an alleged rape?

19  A.  **Yes.**

20  Q.  So they did.  So there are women who had -- and you don't

21  have to name them -- like victim number three.

22    There are women who claim now that they have been raped,

23  but in text messages they nice conversations with the

24  Defendants, correct?

25  A.  **The women were within the same social circles, yes.**

```
 1  Q.  But they were texting the -- one of the individual
 2  Defendants -- sorry.
 3      The text messages was between the woman and one of the
 4  Defendants, right?
 5  A.  Are you referring to victim three.
 6  Q.  Yes, victim three.
 7  A.  I haven't seen those text messages.
 8  Q.  Well, then let me make it -- I'm sorry.  I didn't mean to
 9  cut you off.
10  A.  That's okay.
11  Q.  Okay.  Then generally between --
12          THE COURTROOM DEPUTY:  Sir?
13          MR. WILLIAMS:  I'm sorry?
14          THE COURT:  Can you use the --
15          MR. WILLIAMS:  I'm sorry.  I tend to wander.
16          THE COURTROOM DEPUTY:  Yes.
17          MR. WILLIAMS:  My apologies.
18          THE COURTROOM DEPUTY:  I'm sorry.  The sound system
19  cannot pick you up.
20          MR. WILLIAMS:  That's my mistake.  I'm sorry.
21          THE COURTROOM DEPUTY:  Thank you, sir.
22  BY MR. WILLIAMS:
23  Q.  What I am asking -- if I am not being clear enough.  I
24  apologize.
25      Many of the women who you interviewed, after an alleged
```

 1  rape, had text messages with one or more of the Defendants,

 2  correct?

 3  A.   **I have not seen these text messages.**

 4  Q.   You have not?

 5  A.   **I cannot recall, no.**

 6  Q.   You have not.

 7       Have you imaged these women's phone?

 8  A.   **We have not.**

 9  Q.   You have not.

10       So you haven't taken a look to see whether or not these

11  women had friendly discourse and text messages with any one of

12  the Defendants and most importantly, my client, Tal Alexander?

13  A.   **I have not seen any messages after the assault.**

14  Q.   All right.  Now in this eleven-year -- well, let me just go

15  back to something.

16       You have not seen any, but the investigation, during the

17  investigation you haven't imaged any of these women's phones,

18  correct?

19  A.   **We have not imaged anyone's phones.**

20  Q.   To check whether or not there are text messages or e-mails

21  on those phones, which corroborate their account of what

22  occurred, correct?

23  A.   **That's not correct.  We have some messages that women have**

24  **provided, but we have not imaged their phones.**

25       **Are you saying a search warrant?**

1   Q.   I am saying have you searched, all the women who you

2   interviewed, phones?

3   A.   **Some of the women that we have interviewed have provided**

4   **messages, yes.**

5   Q.   But have you searched those phones?

6   A.   **No, we have not searched those phones.**

7   Q.   Now, it is an eleven-year conspiracy, correct?

8   A.   **Correct.**

9   Q.   And the investigation has been going on for how long?

10  A.   **Approximately 20 years.  I'm sorry --**

11  Q.   The investigation?

12  A.   **The investigation has been going on since June of 2024.**

13  Q.   And it covers the eleven-year period, correct?

14  A.   **Correct.**

15  Q.   And is it fair to say that based on the superseding

16  indictment, at this particular point in time, there are only

17  two victims that you have identified in the superseding

18  indictment over an eleven-year period?

19  A.   **Yes.**

20  Q.   Now, are you aware that the fact that there was a criminal

21  investigation into my client and his brothers was published in

22  the Wall Street Journal in early July of 2024?

23  A.   **I am aware.**

24  Q.   And that was shortly after, about a month after the

25  investigation, the criminal investigation concerning my client,

1  started, correct?

2  A.  **Correct.**

3  Q.  Now since July, early July I believe -- I will just say

4  this.  I believe the date --

5        THE COURT:  You walked away from the microphone.

6        MR. WILLIAMS:  Oh, I'm sorry.

7        THE COURT:  So what happens is, if you want to get a

8  recording of the hearing --

9        MR. WILLIAMS:  Yes.

10       THE COURT:  -- then it will be hard for the --

11       MR. WILLIAMS:  I will stay put.  My apologizes.

12       THE COURT:  Okay.

13       MR. WILLIAMS:  Again, the second time.

14 BY MR. WILLIAMS: .

15 Q.  So what I was going to ask is this.

16     Are you aware that the Wall Street Journal article

17 announcing that there was a criminal -- I'm sorry -- reporting

18 that there was a criminal investigation was dated July 8th of

19 2024?

20 A.  **I was not aware of a date.**

21 Q.  But you remember something from early July, don't you?

22 A.  **Possibly, yes.**

23 Q.  Now, are you aware that also the New York Times and

24 Bloomberg, Bloomberg Publications, also reported around the

25 same time that there was a criminal investigation by the

27

1  federal authorities into my client?

2  A.  **Yes.**

3  Q.  Okay.  And again, you are since June you have been the lead

4  agent on this case; is that correct?

5  A.  **Correct.**

6  Q.  And you have conducted what you would -- you conducted a

7  detailed investigation, correct?

8  A.  **Yes.**

9  Q.  And obviously, you looked into my client Tal Alexander,

10  correct?

11  A.  **Correct.**

12  Q.  Now, from any time, let's say when that Wall Street Journal

13  article appeared and reported the fact that there was a

14  criminal investigation, until the time my client was arrested

15  on Wednesday -- Mr. Alexander is my client.

16      Until the time Mr. Alexander was arrested on Wednesday, do

17  you have any evidence that demonstrates that he was making

18  plans to leave the country?

19  A.  **I do not.  I don't know what he was thinking.**

20  Q.  But do you have any evidence -- let me ask it this way.

21      Do you have any evidence that he was traveling much more

22  frequently around the world after the Wall Street Journal

23  reported the criminal investigation?

24  A.  **I do not, but your client has access to boats which he can**

25  **leave at any time.**

1   Q.   No, I understand.

2        But did you, during your investigation, discover that he

3   was traveling more frequently to different locations around the

4   world after the Wall Street Journal article, reporting the

5   criminal investigation, came out?

6   A.   **No, I don't have that information.**

7   Q.   You don't.

8        Okay.  And do you have any, due to your investigation of

9   his phone or other phones, do you have any indication based

10  on --

11           MR. WILLIAMS:  let me withdraw and rephrase.

12  BY MR. WILLIAMS:

13  Q.   Based on your review of all the documents that you have

14  seen in this case, did you see anything, any documents,

15  e-mails, texts that led you to the conclusion, okay, that he

16  was making plans to leave the country?

17  A.   **No.**

18  Q.   And by the way, when he was arrested on Wednesday of this

19  week -- I think that is December 11th.

20       When he was arrested the FBI couldn't find him at first,

21  correct?

22  A.   **That's not correct.**

23  Q.   You thought he was in New York, didn't you?

24  A.   **He was in New York, yes, but then he traveled to Miami.**

25  Q.   And then you found him and you went to his father's home,

1  correct?

2  A.  **We did not.  The FBI did not go to his father's home.  We**

3  **had a Task Force go to his father's home.**

4  Q.  So law enforcement agents went to his father's home,

5  correct?

6  A.  **Correct.**

7  Q.  And are you aware that he walked outside the his father's

8  home and he surrendered himself?

9  A.  **Correct.**

10  Q.  Now, let me ask you this.  Are you certain --

11        MR. WILLIAMS:  Withdrawn.

12  BY MR. WILLIAMS:

13  Q.  I believe during the proffer, if my recollection serves me

14  correctly, that it was mentioned that Mr. Alexander and his

15  brothers have a private jet.

16        Is that your understanding?

17  A.  **To the proffer, no, that's not my understanding.**

18  Q.  Well --

19  A.  **They do not have their own private jet.**

20  Q.  They don't have their own private jet, correct?

21  A.  **Correct.**

22  Q.  And in the indictment -- and did you see the letter that

23  was sent to Judge Reid and Judge Caproni?

24  A.  **I have not seen a letter.**

25  Q.  Okay.  As you sit here today, where is it that my client

```
 1  has strong ties to another nation in the world?
 2  A.  Your client travels to Israel, yes.
 3  Q.  He travels to Israel, correct?
 4  A.  Correct.
 5  Q.  And it is your understanding that my client is Jewish,
 6  correct?
 7  A.  Correct.
 8  Q.  And he is a person of means.  And when I say means, he is a
 9  person with wealth, correct?
10  A.  Correct.
11  Q.  And based on these ties to Israel and his wealth, you are
12  concluding that he is a flight risk, correct?
13  A.  Correct.
14  Q.  Now let me ask you something.
15      There is a fairly significant Jewish population in the
16  United States, correct?
17  A.  Correct.
18  Q.  There is a fairly significant Jewish population in Florida,
19  correct?
20  A.  Correct.
21  Q.  And there is a fairly significant Jewish population in
22  Miami, correct?
23  A.  Correct.
24  Q.  And we will just stick with Miami for a second.  There is a
25  good number of a --
```

```
 1      MR. WILLIAMS:  Withdrawn.
 2  BY MR. WILLIAMS:
 3  Q.   There are a good number of people of the Judaic faith in
 4  Miami who have wealth, correct?
 5  A.   I am not sure.  I am not from Miami.
 6  Q.   You are not familiar?
 7  A.   No.
 8  Q.   Let's spread it out to the United States.
 9       In the United States there are many wealthy Jewish people,
10  correct?
11  A.   Correct.
12  Q.   And many of these wealthy Jewish people are armed
13  supporters of Israel, correct?
14  A.   I'm not sure.  I can't give you that information.
15  Q.   Just on your general life experience do you have any
16  knowledge of that?
17  A.   I don't.
18  Q.   Are you aware that many Jewish people, whether they are
19  wealthy or not, travel to Israel?
20  A.   Yes.
21  Q.   They do, right?
22  A.   Correct.
23  Q.   They go to places like Kabbutz, correct?
24  A.   Yes.
25  Q.   They travel to Tel Aviv, correct?
```

```
 1  A.   Correct.
 2           THE COURT:  Mr. Williams?
 3           MR. WILLIAMS:  Yes.
 4           THE COURT:  I just want to say that sounds a lot like
 5  argument than questions for this agent.
 6           MR. WILLIAMS:  That's fine.
 7           THE COURT:  You will want to move along.
 8           MR. WILLIAMS:  I will wrap this line of questioning
 9  up.  Okay.  Certainly, Your Honor.  I'll stop there.
10  BY MR. WILLIAMS: .
11  Q.   Now, since the investigation was announced in the Wall
12  Street Journal on or about or in or about early July of 2024,
13  are you aware that this client, my client, Mr. Tal Alexander,
14  has taken any steps to intimidate or threaten any witnesses?
15  A.   Your client has threatened some witnesses, yes.
16  Q.   He has threatened who?
17  A.   Some of our witnesses that have come forward.
18           MR. WILLIAMS:  So let me have -- may I approach the
19  witness?  First may I mark this as Defense Exhibit Number Two,
20  please?
21           THE COURT:  As long as you show it to the Government
22  first.
23           MR. WILLIAMS:  Sorry.
24           THE COURT:  Yes, go ahead.
25           MR. WILLIAMS:  Could I Borrow another clip?
```

```
 1              THE COURTROOM DEPUTY:  Sure.
 2              MR. WILLIAMS:  Thank you.  Thank you very much.
 3              THE COURTROOM DEPUTY:  You're welcome.
 4    BY MR. WILLIAMS:
 5    Q.  You can hold this for a second.  I'm going to tell you
 6    which page.
 7    A.  All right.
 8    Q.  You can start looking at it if you want.  Take your time
 9    and look at it.  I really only have one question.
10    A.  You have a specific question as to a page number?
11    Q.  Yes, sure.  You could go to page number 7.
12         And I'm looking, just so maybe it will save you some time,
13    after the discourse of the text message I am looking at the
14    paragraph that starts:
15         'And even when the victims did complain.'  You can read
16    that to yourself, if you would.
17         Have you familiarized yourself with the letter?
18    A.  Yes.
19    Q.  Based on your review of the letter does it mirror much of
20    the information in the indictment?
21    A.  Yes.
22    Q.  And is it consistent with your understanding of the
23    evidence that you have uncovered during the investigation?
24    A.  Yes.
25    Q.  And I would just ask you -- I am going to just point this
```

1  out and I am going to read this paragraph from Defense

2  Exhibit Two:

3      "And even when victims did complain, Defendants took steps

4  to stop victims from reporting.  The Government is aware, for

5  instance, of at least one occasion which Tal and Oren filed a

6  police report alleging harassment against a woman who had

7  described being forcibly digitally penetrated by Tal while Oren

8  was in the room."

9      Do you see that sentence?

10 A.  **Yes.**

11 Q.  Very serious allegation, correct?

12 A.  **Correct.**

13 Q.  And is that one of the few examples that you have of Tal

14 Alexander, I guess, of threatening somebody?

15 A.  **Yes.**

16 Q.  And he threatened somebody by filing -- by going to the

17 police and filing a report for harassment, correct?

18 A.  **Correct.**

19 Q.  And the other example in that paragraph is that he also

20 threatened a victim with a defamation lawsuit if the victim did

21 not stop telling people that he and Oren had sexually assaulted

22 her.

23      Do you see that?

24 A.  **Yes.**

25 Q.  That is another example of trying to intimidate a witness,

35

1  in your opinion, correct?

2  A.  **Correct.**

3          MR. WILLIAMS:  Okay.  If I may have one second, Your

4  Honor.  I think I'm almost done.

5          THE COURT:  You may.

6          MR. WILLIAMS:  Your Honor, I don't have anything

7  further, thank you very much.

8          Thank you, Agent Atwood.

9          THE WITNESS:  Thank you.

10         THE COURT:  Wait.  Let me find out if there is any

11  redirect.

12         MS. ASTIGARRAGA:  Just briefly, Judge.

13         THE COURT:  Okay.

14         MS. ASTIGARRAGA:  Thank you, Your Honor.

15                      REDIRECT EXAMINATION

16  BY MS. ASTIGARRAGA:

17  Q.  Agent, I want to talk to you a little bit about foreign

18  travel.  Counsel asked you about whether or not the Defendant

19  has traveled to Israel.

20      Do you recall that?

21  A.  **Yes.**

22  Q.  And he indicated that the Defendant is a Jewish person.  To

23  your knowledge, how frequently has the Defendant traveled over

24  to Israel?

25  A.  **I don't have it with me in front of me, but he has traveled**

1  **there recently.**

2  Q.  Is it one occasion or is it multiple occasions?

3  A.  **Multiple occasions.**

4  Q.  And was that the only foreign location that the Defendant

5  has traveled to?

6  A.  **No.**

7  Q.  Where are the other locations that the Defendant has

8  traveled to?

9  A.  **The Bahamas.**

10 Q.  And when he has traveled to the Bahamas, how is it that the

11 Defendant traveled there?

12 A.  **By boat.**

13 Q.  And when you say boat, what kind of boat?

14 A.  **A yacht.**

15 Q.  Can you be a little --

16 A.  **A yacht.**

17 Q.  Okay.  Thank you.

18     And when he travels in the air, what is the common mode of

19 transportation that the Defendant uses?

20 A.  **A jet.**

21 Q.  Is it a commercial jet or is it a private jet?

22 A.  **Private.**

23 Q.  Counsel asked you about the times that the Defendant was,

24 quote, making plans to flee the country.

25     Based on your knowledge of this investigation, does the

1  Defendant, quote, make plans in advance when he travels on

2  every instance?

3  A.  **No.**

4  Q.  Okay.  So what is the usual course that the Defendant does

5  when he travels?

6  A.  **Sometimes last minute.**

7  Q.  And when you say last minute, what do you mean by that?

8  A.  **The same day that they are going to travel.**

9  Q.  Okay.  So, for example, in this instance the Defendant was

10 arrested here in Miami, right?

11 A.  **Correct.**

12 Q.  Was that the original plan to arrest him here?

13 A.  **No.**

14 Q.  And why is it that the FBI had to arrest him here in Miami,

15 Florida?

16 A.  **Because last minute he flew to Miami.**

17 Q.  Okay.  Do private jets have the same kind of manifest that

18 a commercial jet would otherwise be required to report?

19 A.  **No.**

20 Q.  And additionally, counsel also asked you during

21 cross-examination about whether only two victims were, quote,

22 identified in the eleven-year conspiracy and I want to make

23 sure we are clear for the Court.

24     Have only two victims been identified in this case?

25 A.  **No.**

38

```
 1   Q.   Approximately how many victims have been identified in this
 2   case?
 3   A.   Forty.
 4   Q.   Okay.  So your reference to the two victims is actually
 5   just the two substantively charged trafficking counts; is that
 6   right?
 7   A.   Correct.
 8   Q.   All right.  But, Count One, that conspiracy, that relates
 9   to 40 women?
10   A.   Yes.
11   Q.   Were you present for the interview of these 40 victims?
12   A.   Not all 40, but most of them.
13   Q.   If you had to give a percentage for the interviews that you
14   were present for, what percentage would that be?
15   A.   98 percent.
16   Q.   98 percent.
17        Of those 98 percent of the victims that you were there for
18   those interviews, was there ever an instance where that victim
19   appeared not to be credible?
20   A.   No.
21   Q.   Was there ever an instance where the stories did not seem
22   consistent with other victims?
23   A.   No.
24   Q.   Does every single victim, all 40, do they know each one
25   another?
```

```
 1   A.   No.

 2   Q.   Do they come from different states?

 3   A.   Yes.

 4   Q.   Did they span different times?

 5   A.   Yes.

 6   Q.   Different incidents?

 7   A.   Yes.

 8   Q.   And their stories were the same?

 9   A.   Yes.

10   Q.   What kind of unit are you a part of in the FBI?

11   A.   Child Exploitation and Human Trafficking.

12   Q.   In your training and experience in this particular squad,

13   have you had an opportunity to interview other trafficking

14   victims not included in this case?

15   A.   Yes.

16   Q.   Approximately how many times?

17   A.   Over a hundred.

18   Q.   Counsel asked you whether in this case there was any

19   instance where a victim later had friendly contact with one of

20   the brothers.

21        Do you remember that?

22   A.   Yes.

23   Q.   Okay.  As you sit here today, are you aware of whether or

24   not that happened?

25   A.   No.
```

```
 1  Q.  Okay.  But in your training and experience as an agent who
 2  investigates these kinds of trafficking, is it common for
 3  sexual assault victims to remain in contact with their abusers?
 4  A.  Yes.
 5            MR. WILLIAMS:  Objection.  But I was late.  Sorry.
 6            THE COURT:  The basis of the objection?
 7            MR. WILLIAMS:  Is she an expert witness as to rape
 8  kind of victims?
 9            THE COURT:  Okay.  I think that is a fair question.
10            MS. ASTIGARRAGA:  She is testifying as to her training
11  and experience, Your Honor.  He asked whether or not there was
12  friendly contact between other victims.
13            So I would submit that the agent can certainly testify
14  as to her training and experience as a trafficking agent for
15  three and-a-half years with the FBI.
16            THE COURT:  Objection overruled to the extent that she
17  is discussing her own training and her own experience.
18  BY MS. ASTIGARRAGA:
19  Q.  Counsel asked you about whether the last act in this case
20  occurred in 2021.
21       Do you remember that?
22  A.  Yes.
23  Q.  And it was approximately four years ago?
24  A.  Yes.
25  Q.  And to be clear, the evidence in your case, it spans that
```

1  this conduct occurred for approximately how long?

2  A.  **Twenty years.**

3  Q.  So for two decades?

4  A.  **Yes.**

5          MS. ASTIGARRAGA:  I have nothing further at this time.

6          MR. WILLIAMS:  I have, if I may?  Two questions.

7          THE COURT:  Okay.

8          MR. WILLIAMS:  Actually three questions.

9          THE COURT:  You may.

10         MR. WILLIAMS:  I will be brief.  Thank you, Your

11  Honor.

12                         RECROSS EXAMINATION

13  BY MR. WILLIAMS:

14  Q.  Two decades, right, is what she said this alleged activity

15  by -- alleged criminal activity -- by my client existed,

16  correct?

17  A.  **Correct.**

18  Q.  The only time period alleged in the indictment is July 2010

19  to July 2021 in terms of the conspiracy, correct?

20  A.  **Correct.**

21  Q.  And you have interviewed 40 victims, correct?

22  A.  **Approximately.**

23  Q.  I'm sorry.  I cut you off.

24      You interviewed approximately 40 victims, right?

25  A.  **Correct.**

1  Q.  And I will say alleged victims.

2      And you, in your opinion, found them credible, correct?

3  A.  **Yes.**

4  Q.  But in a substantive indictment there are only two victims

5  identified, correct?

6  A.  **Correct.**

7  Q.  I am talking about the substantive counts of the

8  indictment, correct?

9  A.  **Correct.**

10 Q.  And do you have any knowledge or are you aware that Mr.

11 Alexander, since the Wall Street Journal article came out until

12 let's say Tuesday of this week, had only traveled between New

13 York and Miami and had never left the country?

14 A.  **I am not aware of that, no.**

15        MR. WILLIAMS:  I have nothing further.

16        THE COURT:  All right.  Thank you.

17        You may step down, Agent.  Thank you.

18        THE WITNESS:  Thank you.

19        THE COURT:  Government, do you have any further

20 witnesses?

21        MS. ASTIGARRAGA:  No further witnesses, Your Honor.

22 Just argument.

23        THE COURT:  Okay.  And Mr. Williams, any witnesses?

24 Any evidence to present?

25        MR. WILLIAMS:  No, just argument.

1      THE COURT:  Just argument.

2      Just argument.  Okay.  So we will let the Government

3 proceed with her argument and then Mr. Williams, you can

4 respond.

5      MS. ASTIGARRAGA:  Thank you, Your Honor.

6      Your Honor, detention is clearly appropriate and we

7 are joining in the recommendation of Pretrial Services that the

8 Defendant be detained pending trial.

9      It is appropriate for generally three main reasons.

10 Number one, the weight of the evidence and the hefty prison

11 sentence that the Defendant likely faces, which includes a

12 15-year minimum mandatory as it relates to any three of the

13 counts charged in this case, are specifically enumerated

14 factors that weigh heavily in favor of detention.

15      Second, the egregious offense conduct and the clear

16 danger that the Defendant poses to the community also weighs

17 heavily in favor of detention.

18      And finally, the fact that the Defendant is a serious

19 flight risk when considering his international contacts, his

20 immense resources and his ability to flee.

21      As the Government noted previously a presumption

22 applies in this case pursuant to 18 United States Code

23 3142(e)(3)(d) because the offenses fall under Chapter 77,

24 including 1591, and the max term of imprisonment related to

25 those offenses is life.

1          Additionally, other subsections of the detention

2    statute also supports that the detention is appropriate here

3    and that includes because of the particular statutes charged,

4    as well as the penalty that he faces.

5          I first want to talk about the weight of the evidence

6    in this case.  Here, detention is appropriate when considering

7    the strength of this particular case.

8          The Government's evidence is comprised of victim and

9    witness statements related to approximately 40 different

10   victims; 40 different rapes, 40 different incidents of sexual

11   violence.

12         The evidence includes electronic evidence that

13   includes photos and videos.  Many that are sexually explicit.

14   Many that depict the Alexander brothers engaging in sexual

15   activity with the victims.

16         It includes communications, as Your Honor heard from

17   the proffer, between the Defendant and his brothers discussing

18   group sex, discussing providing and piling women with drugs in

19   order to get them to have sex with them and for arranging for

20   their travel from other states to meet them at whatever lavish

21   sex parties that they were trying to arrange.

22         As it relates to the digital evidence , the Government

23   is also in possession of iCloud evidence related to the

24   Defendant and his brothers, their social media accounts, the

25   dating application accounts, all of which corroborate the

1  victims' statements.

2          Additionally, many of the victims' accounts strongly

3  corroborate each other.  They account similar experiences of

4  sexual violence at the hands of the Alexander brothers,

5  including the Defendant, despite occurring in different

6  settings, in different states, and at times over different

7  decades.

8          Your Honor, I think that this is key and why does this

9  matter?  It matters because the fact that so many victims

10  spanning all these different groups have similar accounts to

11  one another.  Despite frequently having no connection supports

12  that they are telling the truth.

13          Because there is power in numbers.  Because where

14  there is smoke there is fire and the Defendant's apartment or

15  his waterfront property at this point is completely ablaze.

16          When we turn next to the danger to the community,

17  detention is clearly appropriate when we consider the facts and

18  the circumstances in this particular case.  Not only against

19  the women that the Defendant has victimized over over the past

20  20 years, or the eleven years of this particular conspiracy,

21  but also to the community at large.

22          Here the indictment charges this eleven-year

23  conspiracy, but the evidence has supported that this has been

24  going on for two decades.  And what we know, based on this

25  investigation, is that the Defendant has engaged in repeated

1    and serial conduct.

2           So as to not mince words here, the Government submits

3    and we have charged the Defendant that he and his brothers are

4    serial rapists.  That is what the indictment has charged.

5           The investigation has revealed that they have

6    violently raped dozens of women that the Government is only

7    currently aware of related to victims who are brave enough to

8    have come forward to date.

9           Given that the news has only broke of their arrest

10   this week, there is already a new wave of potential victims who

11   have come forward and we anticipate the number of victims to

12   continue to grow.

13          What this serial conduct demonstrates is that no

14   combination of bond conditions can reasonably assure the safety

15   of the community.

16          What this serial conduct demonstrates is that the

17   Defendant remains a danger.  Not only to those 40 victims that

18   we are aware of to date, that he either raped himself or was

19   complicit in the assault, but that he remains a danger to the

20   women of any community that the Court were to send him back to.

21          Now the Court obviously you should be concerned with

22   the facts of this case related to the Defendant's flagrant

23   disregard for consent and because clearly the Defendant is not

24   someone who is going to follow orders.

25          Here, several victims indicated that they were drugged

1 on the night of their assaults.  They reported that the drugs

2 affected them in a way that they were physically incapacitated.

3 That they were unable to move during these encounters.  That

4 they were not able to consent to what happened to their bodies

5 that night.

6         Several victims reported that they screamed for the

7 Defendant, or his brothers, or whoever else's turn it was to

8 rape them that night to stop.  But that these protests that

9 every time they told them to stop were completely ignored.

10        And I understand that the Court can issue an order,

11 but I would submit that there is a greater autonomy that we are

12 talking about here.  There is a greater order and this is a

13 woman's autonomy to her own body.

14        And that in and of itself was rejected by this

15 Defendant and his brothers and all the people that they

16 conspired with to rape women over the course of eleven years.

17        Many victims reported that the rapes were so violent

18 that they were worried they were going to be seriously harmed

19 or killed if they protested any further.  They were terrified

20 then and they remain terrified now.

21        And putting aside the obvious that this conduct was

22 inherently dangerous that they had a flagrant disregard for

23 their autonomy.

24        The other fact that the Court should consider is that

25 the Defendant and his brothers drugged these women without any

1   concern for how those drugs would have affected their body.

2   Whether they would have overdosed.  Whether they would die as a

3   result of what they ingested.  None of it was a concern.

4           The sexual violence alleged here in this indictment

5   and as the Court heard from the proffer, it all occurred behind

6   closed doors; in the Defendant's apartments, in his homes, in

7   hotel rooms and in other private settings.

8           It all occurred to what likely would be a setting that

9   the Court would send the Defendant back to even if the

10  step-down least restricted bond would be considered home

11  detention.

12          Even if the Court considered releasing the Defendant

13  to the comfort of his luxurious apartment in New York or his

14  waterfront property here, nothing prevents him from committing

15  the same kind of crimes that he has committed in these kinds of

16  locations before.

17          The Court would be sending him back to, in many

18  instances, was the scene of the crime.

19          Your Honor has heard these facts.  There are multiple

20  victims here.  I would submit to this Court that if there is

21  just one victim, if there was just a single count that was

22  alleged in this indictment that said that this Defendant

23  drugged her, that said that this Defendant then forcibly raped

24  her, I would submit that under the detention statute, the

25  detention would be appropriate.

```
 1              THE COURT:  Let me ask a question and I am just
 2    assuming you are going to get to it.
 3              There was some testimony about threatening the
 4    witnesses.
 5              MS. ASTIGARRAGA:  Yes, Your Honor.
 6              THE COURT:  I want to get some more detail on that.
 7              MS. ASTIGARRAGA:  Absolutely, Your Honor.
 8              And so that relates and I think that is how detention
 9    might be appropriate under the obstruction section of the
10    statute which is 3142(f)(2)(b).
11              And here, Your Honor, it relates to the fact that
12    there was a victim, as the Court heard from the proffer, who
13    indicated -- who began to tell people that the Defendant had
14    forcibly digitally penetrated her.
15              And at the time that this happened, the Defendant and
16    his brother then filed a police report claiming that she was
17    harassing him.  And when she continued to tell her friends that
18    the assault had occurred, then he told her he was going to
19    threaten her with a defamation lawsuit.
20              And Your Honor, I think counsel's point when they were
21    discussing a police report and the defamation lawsuit is if
22    this is really happening, then why are they reporting it?
23              But, Your Honor, I would actually argue that when they
24    are taking this kind of conduct, they are just using a weapon
25    that is at their disposal.
```

1          Because for this Defendant what his weapon is, is his

2   money.  He uses it to lure women in over to these luxurious

3   apartments and he uses it just to show them just how powerful

4   he is.

5          And when someone has the audacity to voice what

6   happened to them, he threatens them with a defamation lawsuit.

7   Why?  Knowing full and well that a multimillionaire is likely

8   going to be out-gunned to some victim who is talking about the

9   assault that she incurred.

10          So I would actually submit, Your Honor, the fact that

11  he is telling her he is going to file a defamation lawsuit

12  against her is one more example of this Defendant weaponizing

13  his wealth.

14          If convicted on any of the charges in this particular

15  case, the Defendant faces a 15-year minimum mandatory, but as

16  the Court heard, he is currently guidelined at life

17  imprisonment.

18          And this minimum mandatory, this hefty prison sentence

19  is especially for someone who has never served any period of

20  incarceration.  It certainly incentivizes flight.

21          But surely for a person whose risk of going from the

22  life of the rich, privileged, and famous, to one who is

23  confined to a 70-square-foot cell block.

24          Of course, the thought that he is going to prison for

25  a minimum of 15 years, if convicted on any of these counts, and

1   possibly life, certainly he is not going to stand and face

2   these charges.

3          Turning next to the Defendant's significant wealth,

4   this is a person with access to millions of dollars, private

5   jets and yachts.

6          You heard from the agent that when he travels it is at

7   a moment's notice.  It is actually why he is sitting here in

8   the Southern District of Florida today because it was not a

9   planned trip.

10         It is not a usual thing where he goes on to Price Line

11  and decides where he is going to go.  He has the kind of wealth

12  that they can just decide any given day, in a matter of hours,

13  we are headed off to this international location.

14         When they go to the Bahamas we are going there by a

15  yacht.  And there is not the same kind of manifest regulation

16  that you heard from the agent as there would be on a particular

17  commercial flight.

18         Additionally, Your Honor, the Defendant does have

19  significant international ties.  The fact that his parents are

20  Israeli, the fact that he has traveled back to Israel, the fact

21  that we have conferred with OIA and they have indicated that if

22  he does flee there , which has happened in the past, that they

23  are not going to be able to extradite him back and that is not

24  a sure thing.

25         The fact that we are potentially not going to be able

1  to extradite him surely is another cause for concern and

2  demonstrates that he is a risk of flight.

3       And so, accordingly, Judge, in light of all the

4  factors that the Court is required to consider, in light of the

5  fact that there is a presumption in this case, in light of the

6  fact that there are 40 different victims who have demonstrated

7  to the agents and who have come forward and said I was

8  violently raped and experienced this sexual violence, the

9  Government believes that pretrial detention is appropriate.

10      And the Court should follow the recommendation that

11 has been given by Pretrial Services.

12      THE COURT:  All right.  Thank you, Counsel.

13      Mr. Williams.

14      MR. WILLIAMS:  Yes, Your Honor.

15      The indictment itself, the superseding indictment, the

16 second opportunity is no one is challenging the severity of the

17 allegations.  We are, however, challenging the veracity of

18 them.

19      And this alleged conspiracy in the allegations of the

20 indictment and even the letter that was submitted in court, are

21 very specious.  They are very inflammatory.

22      And if you notice counsel's argument just now was

23 based on continuing to repeat these serious allegations.  And

24 they are serious, but they warrant -- there are a lot of cases

25 that have serious allegations and it does not mean that they

1    are true, A.

2           And B, the focus for bail for whether or not there

3    should be pretrial detention is risk of flight and danger to

4    the community.  And on those two grounds the presentation by

5    the Government is woefully inadequate.  It does not meet it.

6           Again, I am not minimizing or marginalizing the

7    severity of these allegations, but I am noting that you have an

8    eleven-year conspiracy and only two victims.  Having been a

9    former federal prosecutor up in the Southern District,

10   conspiracy is a wonderful tool for prosecutors.

11          Okay.  If it was what they are saying at this

12   particular juncture -- and I don't want to argue the merits so

13   much, but if it was what they were saying at this particular

14   juncture, you would have many more substantive counts and not

15   just two victims, but that is really not the issue here.

16          The issue is because -- and I am just pointing this

17   out because much of her presentation was based on repeating the

18   allegations in the indictment and the letter and not focusing

19   on risk of flight or danger to the community.

20          And let me just say this Your Honor -- and by the way

21   and I will get to it, she didn't answer your question with

22   regard to danger to the community witness tampering.  I think

23   she mentioned the defamation.

24          And if I am wrong the record will correct me.  She

25   mentioned the defamation and then pivoted back to repeating the

1   severity of the allegations.  The question, from my viewpoint,

2   was not answered.

3          But going to the presumption that is here, as I

4   understand it, the presumption with regard to sex trafficking

5   imposes on Defendant a burden of production while burden of

6   persuasion remains with the Government.

7          That is *United States v. Mercedes* 254 F.3d 433 at 436,

8   Second Circuit 2001:

9          "A Defendant can satisfy this burden by presenting

10  evidence that he does not pose a danger to the community or a

11  risk of flight.

12         If the Defendant presents some evidence satisfying his

13  or her burden, the presumption favoring detention does not

14  disappear entirely, but remains a factor to be considered."

15         So I would submit to this Court that the presumption

16  based on the presentation by the Government and based on the

17  cross-examination has been vitiated.  It is a factor that you

18  can consider.

19         And let's go into the factors here.  Mr. Alexander

20  found out that there was a criminal investigation as a result

21  of a -- let me back up for a second.

22         This case has been Mr. Alexander and his brothers have

23  been regularists (phonetic) in every major news publication for

24  the last, I guess, five months since early July.  Actually

25  before that because I think it was around that time last five

1    months.

2           So everyone knows about the case.  Everyone knows

3    about the criminal investigation.  And yet, he is between when

4    the Wall Street Journal and others and the Times and Bloomberg

5    came out and until he was arrested, he didn't travel

6    internationally.  He didn't go anywhere.  He went between New

7    York and Miami. That he is all he did.

8           And the reason why I asked those questions concerning

9    making plans, okay, I understand he can leave quickly, but

10   there is no evidence that he left quickly anywhere on a regular

11   basis to different venues in the world.

12          Okay.  Which would be an indicia that he might be

13   making some plans to skip out.  That is not here.  New York and

14   Miami and they have nothing to refute it.

15          He and his family have very, very strong ties to the

16   community.  Here in Miami and they have ties to New York.  They

17   are well-known.  They grew up here.  He went to high school

18   here.  He grew up here.  He is not going anywhere.

19          And I am going to get to the potential bail package

20   that I think might work as part of this presentation.  And you

21   will see that the family means business in supporting their son

22   and he means business in seeing this through and proving he is

23   innocent.

24          But let me say something else.  Mr. Alexander got

25   married a year ago.  He has a two-week-old baby at home.  That

1  is why his wife isn't here today because the baby was sick all

2  night.

3        Now I am not trying to engender sympathy from Your

4  Honor, but if he is like most guys, most men, and subscribes to

5  the happy-wife happy-life doctrine, okay, he is not going to be

6  traipsing around the world with a two-week-old or a couple of

7  weeks old and his wife.

8        His wife, in her own right, is established and

9  successful and is not going to uproot herself.  So I will just

10  put that fact before Your Honor.

11        He has no Israeli passport at all.  They do not own a

12  private jet.  I mean, lots of people have access to private

13  jets.  Lots of people have access to -- lots of people in his

14  family in his stratosphere, they have the opportunity to do

15  that.  That does not mean that they are going to flee anywhere.

16        So, you know, with regard to the risk of flight, it is

17  nonexistent.  Where is he going?  And listen, you correctly

18  stopped me from pursuing a line of inquiry because I guess I

19  was getting a little argumentative.

20        But the argument, based on a foundation that I was

21  just trying to set through the agent is simply this.  There are

22  enough wealthy Jewish people in the United States, in Florida,

23  and in Miami with very strong ties to Israel who are armed

24  supporters who go their regularly.  So that if any one of them

25  were arrested at any time, this argument, this specious

1  argument would be potentially applicable.

2        They have strong ties to Israel.  They are wealthy.

3  It should be pretrial detention.  That is nonsense and that is

4  what I was getting at when I was going through that

5  questioning.

6        Just briefly, danger to the community, okay, it is the

7  Government's letter.  They wrote -- let me just see.  How many

8  pages is that letter?  Let me just see.  The letter is

9  double-spaced.  The letter to you and Judge Caproni is twelve

10  pages.

11        And in that twelve pages, if you review, there is not

12  that much on witness tampering and intimidation, which we all

13  know is what Courts most recently have focused on, let's say,

14  in other cases in other jurisdictions.  It is nonexistent here.

15        The last act here alleged is 2021.  That is A.  So

16  there has been nothing going on for almost the last four years.

17  And the examples that they cite in their letter is as follows.

18  He threatens someone with a defamation suit if they kept saying

19  he sexually assaulted them.  That does not sound like witness

20  tampering.

21        That is not my understanding of witness tampering, or

22  intimidation, or obstruction of justice is.  And the other

23  thing is they he did is he went to get a police report and

24  brought it to the police attention that he was being harassed

25  by someone who was accusing him of sexual assault.

1      That is, again, in my respectful opinion, an example

2  of witness intimidation or tampering that rises to the level of

3  anywhere needed to fulfill that prong of Your Honor's bail

4  analysis.  And so I point out those two things.  There is just

5  nothing there.

6      And I will just move now to the -- and again, I will

7  reiterate one point.  Nothing has happened for the last almost

8  four years as far as -- I don't think they established that

9  anything has happened since 2021.  Nothing has happened since

10  there was a report that there was a criminal investigation.

11      But let me move to the bail package and I will point

12  out -- and this is not at all binding on this Court at all.

13  But his two brothers, who obviously are charged in this

14  indictment, appeared in front of Judge Lody Jean in state court

15  who found the following.

16      And I will read this into the record.  Again, it is

17  not binding.  I just would like Your Honor to consider it.  It

18  says:

19      "Judge Lody Jean this morning found based upon the

20  initial Judge's bond along with the agreed upon pretrial

21  release conditions, I have made the finding that the conditions

22  set forth and agreed upon by Defendant and State are reasonable

23  to assure appearance by Defendants and are reasonable to assure

24  no risk to the community.

25      And the personal surety is a blood relative who stands

1  to lose his substantial property.  Based upon all these

2  factors, I find that PTR, pretrial release, shall assure

3  Defendants appearance."

4       That is as to his brothers and I just wanted you to

5  consider that.

6       Now, if you want to see the bail package that was

7  arranged, it is substantially lower than what I am going to

8  present to you right now.  Okay.  His family, okay, and him are

9  willing to put up a total of 115 million dollars in equity.

10       That is their building.  That is their houses.  That

11  is everything to ensure his appearance.  So if he goes bye-bye

12  they lose all of that; 115 million dollars in equity and it

13  does not stop there.

14       THE COURT:  Okay.

15       MR. WILLIAMS:  He could move in with his wife and

16  child and him could move in with his parents.  Okay.  So there

17  is no -- with his parents in their house.  Okay.  Live in their

18  house and subject himself to home detention and GPS monitoring.

19       So that is another condition.  And whatever else we

20  can work out with the Court and with the Government, but that

21  is a significant commitment because if he skips out, if he

22  flees and violates the condition, he and his family are going

23  to lose everything.

24       So there is a way that there can be bail conditions

25  that meet, as the prosecutor, the severity of the allegations

1  here.  Notwithstanding the mandatory life sentence.

2  Notwithstanding any of that.  He is not -- he is still innocent

3  until proven guilty.

4       So there is a bail package that can satisfy this that

5  will put everybody at risk if he goes anywhere.  Okay.  And in

6  addition, I will just point out he has a wife with a good

7  career and a two-week old child.  So where is he going?

8       I will stop there, Your Honor.  Thank you very much

9  for your time.  I have one other request that I forgot.  If

10  whatever reports that this FBI, in addition to the 3500

11  material, whatever report that she might have filled out we

12  would request as well.

13       And I will stop there.  Thank you very much, Your

14  Honor.

15       THE COURT:  Okay.  So let me make sure I understand

16  the bond package that you are suggesting.  It is 115 million

17  dollars.  Explain that.  And who are the co-signors on this

18  bond?

19       MR. WILLIAMS:  It would be his parents, himself.

20       And let me just pull this up.  It involves his

21  parents' home.  Do you want me to put the address on the

22  record?

23       THE COURT:  No need.

24       MR. WILLIAMS:  His parents' home.  His office building

25  .  His own house, which is worth about 30 million.  I think

```
 1   there is a 22 million dollars of equity in it.
 2           THE COURT:  And are these items in this district?
 3           MR. WILLIAMS:  Yes, they are.
 4           THE COURT:  Okay.
 5           MR. WILLIAMS:  They are in Miami.
 6           THE COURT:  Okay.
 7           MR. WILLIAMS:  You know, surrender passport.  Home
 8   detention with GPS monitoring.
 9           THE COURT:  Is his wife going to be a co-signor as
10   well?
11           MR. WILLIAMS:  Yes, everyone is joining.  Everyone
12   will be signing.
13           Let me tell you.  I omitted one thing.  I believe
14   there is like ten or twelve, ten plus community people in the
15   courtroom today, or if they are not here today, they are around
16   who are in part of the synagogue and part of the tight knit
17   community that Tal, Mr. Alexander is a part of who will be
18   willing, many of them will be willing to sign too.
19           So there are a lot of people who would stand to lose a
20   lot if he --
21           THE COURT:  I see a lot of people standing behind you.
22           MR. WILLIAMS:  Yes, here they are.
23           THE COURT:  Okay.
24           MR. WILLIAMS:  There is a lot of support for him.
25           THE COURT:  All right.  Thank you very much.  You can
```

```
 1  all sit.
 2          MR. WILLIAMS:  I'm sorry, Your Honor.  And he has no
 3  prior arrests.
 4          THE COURT:  I understand.
 5          MR. WILLIAMS:  Okay.  Is that fine?  Can I stop there?
 6          THE COURT:  So the co-signors would be his parents,
 7  himself, and his wife?
 8          MR. WILLIAMS:  Yes.
 9          THE COURT:  And there is going to be 115 million
10  dollars extending to their home, their office, and his home?
11          MR. WILLIAMS:  Yes.
12          THE COURT:  GPS monitoring.
13          MR. WILLIAMS:  Can you wait?  I just need to check one
14  thing.
15          THE COURT:  Go ahead.
16          MS. ASTIGARRAGA:  And Your Honor, prior to the --
17          MR. WILLIAMS:  I'm sorry.
18          MS. ASTIGARRAGA:  -- the Court making its ruling if
19  the Government could have an opportunity to respond.
20          THE COURT:  Of course.
21          MR. WILLIAMS:  And Your Honor, so it is 115 million
22  dollars all total and it also, portions of it, involve his
23  brothers' homes as well, too.
24          Okay.  So they have put -- I'm sorry?  Everyone is
25  pledging their homes for each other.  So if anyone walks out on
```

 1  the other, they are going to lose everything.

 2          I'm sorry.  Do you have any other questions, Your

 3  Honor?

 4          THE COURT:  Not at this time.

 5          MR. WILLIAMS:  Thank you very much.

 6          THE COURT:  Okay.  So let me get back to the

 7  Government.

 8          So I understand that one of the concerns was safety to

 9  the community.

10          MS. ASTIGARRAGA:  Yes, Your Honor.

11          THE COURT:  And if I understood the response to my

12  question, your concern was that he might threaten some of these

13  women with lawsuits?

14          I want to make sure I understand your concern for the

15  community.

16          MS. ASTIGARRAGA:  Absolutely, Your Honor.

17          It would be the Government's position, in addition to

18  threatening additional victims and witnesses that are already

19  present in this case, right?  That we already have here.  The

20  ones who have already come forward.

21          Like he did when there was a victim who voiced what

22  had happened to her when he threatened her with a defamation

23  lawsuit.  It would also be the Government's position that he

24  remains a physical danger to the women of this community.

25          I would note, counsel made a reference that he has so

 1   many ties here.  In fact, he went to high school here.  Well,

 2   get what, Judge?

 3          His very first victim that we are aware of came from

 4   high school.  The very first time that we know that the

 5   Defendant was engaged in gang rape was at that high school.

 6          There are victims that are here located in the

 7   Southern District of Florida that have been victimized at the

 8   hands of the Defendant and his brother.  There are victims that

 9   are located in the Southern District of New York that have been

10   victimized at the hands of the Defendant.

11          And these are all closed door offenses.  So what does

12   that mean?  It means that should the Court grant him home

13   detention, well, that is the same exact setting that these

14   violent rapes actually occurred and we are supposed to

15   believe --

16          THE COURT:  So you are suggesting that there are women

17   who would, knowing how public this is right now, still go to

18   his home?  I am concerned.  I want to make sure I understand

19   your argument.

20          MS. ASTIGARRAGA:  Yes, Your Honor.

21          To the extent that there is any kind of people who are

22   staffed by the Defendant's home.  To the extent that there are

23   women there.

24          To the extent he has access to cell phones being able

25   to lure the same kinds of victims that he did in this case

1  repeatedly over and over for eleven years, Your Honor.

2          The Government would submit that he remains a danger

3  to people because of this significant sexual violence that has

4  occurred here.

5          I would also like to note that as it relates to the

6  state case, the state case against the Defendant's twin

7  brothers cover a much smaller scope than what is covered here

8  in this federal indictment.

9          Additionally, this was a parallel investigation that

10  was being done with the State Attorney's Office as well as FBI

11  located in New York.

12          So the fact that they agreed to a bond knowing full

13  and well that there was a federal detainer under a presumption

14  statute that the moment that his brothers are, quote unquote,

15  released from state jail, they still remain in custody awaiting

16  the same kind of hearing that is happening before Your Honor

17  today.

18          And the Government also intends to seek pretrial

19  detention as it relates to them.  So I don't think that the

20  Court should consider the fact that the state jail entered this

21  bail package knowing full and well that this is a parallel

22  investigation.  That the parties are working together in

23  concert.

24          Additionally, as it relates to a risk of flight,

25  Judge, I understand that this is an enormous number.  I think

1  the fact that the Defendant usually uses his wealth to commit

2  these crimes.

3         And he is now using it here to say, look at this,

4  115 million dollar bail package, let me out.  Is another

5  example of the Defendant in terms of using his wealth something

6  that he is a very small subset of people who has access to and

7  he is trying to get bail at this point.

8         But I would submit, Judge, that he is facing a life

9  sentence.  Why is he going to stay here and face these charges

10 regardless of the amount of money that goes out the doors for

11 friends or family if he knows that it could potentially end

12 with him behind bars.

13        If we consider of other cases that are similarly

14 situated, I would actuality point the Court to the Sean Combs

15 case who is known as the monicker Diddy.  That case is actually

16 very similar to the allegations that are asserted here today.

17        And in that particular case, Mr. Combs actually went

18 to the U.S. Attorney's Office and said let me know what is

19 going to happen.

20        And in that instance, pretrial detention was ordered

21 given the span of time, the amount of sexual violence, and the

22 amount of victims that they know there.

23        And finally, Judge, when considering the kind of

24 conspiracy that we have here, it is not the agent's job to

25 decide on various charging decisions.  The fact that there are

1    two substantively charged counts in a conspiracy does not

2    render the fact that there is just two victims here.

3              As this Court is well aware when a conspiracy is

4    charged, the Government is allowed to assert any of the

5    incidents of violence that happened during that particular

6    conspiracy date range.

7              So what that means is that conspiracy period, and as

8    the agent testified and it was covered in the Government's

9    proffer, covers 40 different victims.  That is what the agent

10   has suggested here today.  That is what she has testified to.

11             And so, the Court should consider that there are 42

12   victims that are listed in that particular indictment and that

13   that number potentially still is growing.

14             And so for all those reasons, Judge, we do think that

15   detention is appropriate here.  Not only because of risk of

16   flight.  Not just because we have confirmed with OIA that if he

17   flees we can't get him back.  Not only because he has the

18   access and ability to do so, but because he remains a danger to

19   the community.

20             And I would submit under the obstruction subsection,

21   while it is not the crux of the Government's argument, I would

22   submit the fact that the time that a victim came forward and

23   said this happened to me that his reaction is I am going to

24   file a defamation lawsuit with you, with my six lawyers that

25   are here in the courtroom and my multimillion dollar bank

```
 1  account, certainly is a way of trying to assert power and
 2  control, which is exactly what this case is about.
 3           THE COURT:  Would there be a way to bar him from
 4  filing such lawsuits at least during the pendency of the
 5  criminal case and would that be a condition that might prevent
 6  that type of witness intimidation?
 7           MS. ASTIGARRAGA:  Your Honor, perhaps the Court could
 8  impose that particular condition to the extent that the
 9  Defendant cannot use his extreme network that he has to reach
10  out to victims.  To the extent that he cannot use his millions
11  upon millions of dollars to otherwise intimidate them
12  elsewhere, Judge.
13           I don't think that it would be sufficient.  I don't
14  think -- and we provided an example to Your Honor and that
15  includes that.
16           However, the danger I think here is also the sexual
17  violence.  I do not think it is reasonable to believe that
18  somebody who has been a serial rapist for 20 years by the
19  Government's allegations is going to suddenly have their come
20  to Jesus moment and just stop.
21           And now we are just not going to do that because
22  suddenly we are sitting here in a federal courtroom.  I don't
23  think this kind of perpetrator, the kinds of crimes that are
24  being alleged here that that is going to stop this kind of
25  pervasive conduct; the kind of conduct that we have heard about
```

1  from 40 plus victims.

2         MR. WILLIAMS:  Your Honor, may I respond?

3         THE COURT:  Thank you, Counsel.

4         Yes, of course.

5         MR. WILLIAMS:  Your Honor, as I view counsel's

6  arguments, she is bootstrapping based on the severity of the

7  allegations, which no one is contesting.  We are contesting the

8  veracity of them.

9         She is bootstrapping and she keeps going back to that.

10 Listen, I can assure you, okay, that as his counsel I am going

11 to make -- the only thing that we are going to be focused on is

12 this case.

13        Again, filing defamation suits is not -- I don't view

14 that or I submit that I don't view that as witness tampering.

15 However, that is the last thing on anyone's mind here.

16        Okay.  And quite frankly, to file any suits given the

17 adverse publicity, they are going nowhere.  So that does not --

18 only reason why that becomes significant because in the

19 twelve-page letter they pointed to two things.

20        We are going to sue you for defamation, which is

21 common and it happens all the time when people accuse people of

22 doing wrongdoing and the other person feels it is not true and

23 filing a police report.

24        It is significant at that point in a letter because

25 they don't have anything else.

1    The other thing that --

2    THE COURT:  So do I hear you saying that you are

3  willing to add that as a provision that he would not be filing

4  any police reports or lawsuits during the pendency of --

5    MR. WILLIAMS:  Yes, he is not touching anyone.

6    Yes, we will craft language that assures that because

7  that is not what the focus is going to be.

8    As she has so astutely pointed out he is facing life.

9  He is fighting for his life.  Okay.  But notwithstanding his

10  wealth -- and it seems like there is a presumption here.  I get

11  especially my upbringing, which was not as affluent.  Okay.  It

12  wasn't bad, but it wasn't like this, right?

13    I get that some people may look at wealthy people and

14  say, hey, they can just buy their way out of anything with four

15  lawyers.

16    I get that and this the way she -- the way the AUSA is

17  portraying that, okay, it is almost like she is holding and it

18  is prejudicing him in a bail application that deals with risk

19  of flight and witness tampering, which they really have not

20  been able to substantiate and those are the two factors that

21  counts here.

22    The Combs case and I mean that is different.  I didn't

23  even reference the Combs case, specifically.  When I say in

24  terms of determining pretrial detention -- I mean the

25  allegations are similar, I understand, but in terms of, well,

 1   that indictment is far bigger and longer if my recollection

 2   serves me well.

 3          But the point -- and she raised the Combs case, but

 4   the point of that case and the other cases is that the Court

 5   will look at things like what danger to the community, witness

 6   tampering, and the risk of flight.

 7          And here there is no evidence that they presented of

 8   danger to the community.  They keep going back to the fact of

 9   the severity of the allegations.

10          And again, I just point out, he won't have his own

11   home as part of the bail package he is going to move in with

12   his parents, his wife and kid.  How embarrassing and

13   humiliating that might be, but he is going to be there at the

14   house.

15          So how is he going to carry out or continue to carry

16   out this scheme or any intimidation?  He is going to be watched

17   very carefully.

18          All I am saying is we are not trying the case here

19   today.  All we are trying to do is determine whether or not

20   there is a way to assure he does not flee the jurisdiction and

21   is not a danger to the community , which are the two most

22   salient factors in this analysis.

23          And based on the record that we have so far there is a

24   way of doing it.

25          Thank you, Your Honor.

```
 1          THE COURT:  All right.  I am going to take a few

 2   minutes recess and then I will be back.

 3          UNIDENTIFIED MALE SPEAKER:  Your Honor, may the Public

 4   Defender be excused?

 5          THE COURT:  Oh, of course, sir.  I didn't mean to make

 6   you sit there the whole time.

 7          THE COURTROOM DEPUTY:  All rise.  The court is in

 8   recess.

 9   (Recess.)

10          THE COURT:  All right.  Please be seated.

11          So I have reviewed the file again and the arguments of

12   both sides.  We started with the fact that this is a

13   presumption case where the Defendant is facing a sentence that

14   could very well be a life sentence.  It is a very serious

15   matter and I think all agree that the allegations are

16   incredibly serious.

17          The Court is required to, even though there is a

18   presumption, still hold the Government to its burden.

19          With respect to danger to the community, I will find

20   that there are conditions and some combination of conditions

21   that could alleviate the danger to the community.  So that is

22   not my area of concern.

23          My area of concern is risk of flight.  And I will be

24   very frank with you, Mr. Williams.  When I weigh the concerns

25   about risk of flight, I believe that the Government has met
```

1  their burden.

2         While the circumstances here show that he does not

3  have a record in the past, the weight of the evidence is quite

4  strong as I see the affidavit from the agent and the evidence

5  that have been presented to me.

6         The nature and the circumstances of the offense are

7  quite serious.  This family has, however, extensive resources

8  that I am not, at this point, aware of exactly where the

9  115 million dollars is substantial for them as it is for some.

10         He clearly has the financial resources to flee if he

11  chose to do so.  And in fact, home confinement and GPS

12  monitoring has proven in the past to not be foolproof.  So that

13  does not reasonably assure the Court in this case that he will

14  appear for his hearings as required.

15         So I am going to find that he should be detained at

16  this point based upon risk of flight.

17         If the Government could prepare an order on the AO

18  form.

19         MS. ASTIGARRAGA:  Yes, Your Honor.

20         THE COURT:  In Word and send that to my office, I

21  would appreciate it.

22         Thank you very much.

23         MR. WILLIAMS:  Thank you, Your Honor.

24         THE COURTROOM DEPUTY:  Your Honor, do we have the

25  removal?

```
 1              THE COURT:  Removal, I wonder if you are going to
 2   waive removal or will we have a removal hearing?
 3              MR. WILLIAMS:  No, we are waiving it.
 4              THE COURT:  Okay.  Would you want to do that today?
 5              MR. WILLIAMS:  Yes, Your Honor.
 6              THE COURT:  Okay.
 7              THE COURTROOM DEPUTY:  Put his name.
 8              MR. WILLIAMS:  Put his name?  I'm sorry.
 9              THE COURTROOM DEPUTY:  Yes.
10              MR. WILLIAMS:  Okay.  Do I need to fill out anything?
11              THE COURTROOM DEPUTY:  Yes, the identity.
12              THE COURT:  You can check the box on there if he is
13   waiving removal identity hearing.  And if you want a few
14   minutes to discuss it with him before I talk to him about, you
15   go ahead.
16              MR. WILLIAMS:  I'm not sure, Your Honor.  It says the
17   identity hearing and production of the warrant.
18              THE COURT:  I think that would be the production of
19   the warrant from the Southern District of New York --
20              MR. WILLIAMS:  Okay.
21              THE COURT:  -- that you are waiving that.
22              MR. WILLIAMS:  Okay.  Does he need to sign it?
23              THE COURT:  Yes.  So if he understands it and wants to
24   sign it and I will do a colloquy to make sure that he
25   understands it as well.
```

 1          THE COURTROOM DEPUTY:  Thank you.

 2          MR. WILLIAMS:  Thank you.

 3          THE COURT:  Okay.  Mr. Alexander, I do have to ask you

 4   a few questions directly to make sure that you understand the

 5   waiver that you just signed.

 6          THE DEFENDANT:  Yes, Your Honor.

 7          THE COURT:  So, first of all, you do have the right to

 8   what is called an identity or a removal hearing.

 9          The purpose of the hearing is simply to make sure that

10   you are the same Tal Alexander that is listed or charged in the

11   indictment out of New York.

12          So the Government would then have to prove by a

13   preponderance of the evidence that you are the same person who

14   is named in the indictment.

15          Now, you can waive that hearing and proceed to defend

16   your case in New York.  So my first question is, do you

17   understand the waiver that you have signed?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And have you had sufficient time to

20   discuss that waiver with Mr. Williams?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Okay.  So having done so, I will find that

23   this is a knowing and voluntary waiver of your right to the

24   removal hearing.

25          And I will sign the removal order and so your case

1  will be transferred to New York and you can go ahead and defend

2  yourself there.  Okay.

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  All right.  Very good.

5         Anything else on this matter today?

6         MR. WILLIAMS:  No, Your Honor.  Thank you, Your Honor,

7  and happy holidays.

8         THE COURT:  Thank you.  And you as well, sir.

9         THE COURTROOM DEPUTY:  All rise.  Court is in recess.

10         (Thereupon, the proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                            CERTIFICATE

4

5          I hereby certify that the foregoing transcript is an

6    accurate transcript of the audiotape recorded proceedings in

7    the above-entitled matter.

8

9

10

11
     12/17/24                        Bonnie Joy Lewis,
12                          Registered Professional Reporter
                              CASE LAW REPORTING, INC.
13                           7001 Southwest 13 Street,
                            Pembroke Pines, Florida 33023
14                               954-985-8875

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                        :      15-cr-706 (VSB)
                        :
UNITED STATES OF AMERICA,    :      ORDER
                        :
        -v-              :
                        :
NG LAP SENG,                :
                Defendant.  :
                        :
----------------------------------------X

VERNON S. BRODERICK, United States District Judge:

Before me is the Government's appeal from the bail decision of Magistrate Judge Kevin Nathaniel Fox on October 16, 2015, for Defendant Ng Lap Seng. I heard the appeal on October 22, 2015. For the reasons stated on the record on October 22, the Government's appeal is DENIED. However, during the bail hearing on October 22, I found that the bail conditions set during the October 16 bail hearing were insufficient to guarantee Defendant's future appearance. I set forth below the entirety of Defendant Ng's bail conditions:

1. Home detention with electronic and GPS monitoring at 240 East 47th Street, Apt. 2C and 2D, New York, New York (the "Residence");

2. Defendant shall only be permitted to leave the Residence to (a) appear at the Thurgood Marshall United States Courthouse at 40 Centre Street, New

York, New York; (b) meet with his counsel, Benjamin Brafman at 767 Third Avenue, 26th Floor, New York, New York and/or Hugh Hu Mo at 225 Broadway, Suite 2702, New York, New York; or (c) to receive medical treatment, and Defendant shall provide notice and obtain the approval of Pretrial Services for such visits;

3. A $50 million personal recognizance bond, secured by $20 million in cash and the Residence, and to be co-signed by Di Meng, Ng Fei Lan, and Sun Yuan, who may reside at the Residence.

4. Defendant to surrender all of his travel documents to Pretrial Services and will make no new applications;

5. Di Meng, Ng Fei Lan, and Sun Yuan will surrender their travel documents to Pretrial Services and will make no new applications;

6. Strict Pretrial Supervision;

7. Guidepost Solutions LLC ("Guidepost") will provide an armed security team responsible for securing Defendant's presence at the Residence, ensuring his appearance in Court in the future, preventing his flight from the Southern District of New York, and ensuring his compliance with all other conditions of

release, with all services of Guidepost to be paid for by Defendant;

8. The United States Attorney's Office shall review and approve the credentials of the Guidepost security team by 2 pm on Monday, October 26, 2015, and such approval shall not be unreasonably withheld;

9. Defendant consents to members of the Guidepost security detail's use of reasonable, legal force as they deem appropriate to prevent Defendant from fleeing the Southern District of New York or otherwise violating the terms of release;

10. Guidepost will provide the United States Attorney's Office with a schedule of the Guidepost's armed security team on a weekly basis;

11. Defendant shall provide the Government with a copy of the videotape taken of the Residence by Guidepost;

12. Guidepost will provide supervisors to act as the liaison and main points of contact for the United States Attorney's Office and Pretrial Services, and the supervisors shall be available/on-call at all times of day and night;

13. Defendant shall not be involved in or informed of the composition of the Guidepost security detail at any given time;

3

14. Guidepost shall provide the necessary interpreter services to communicate with Ng and monitor his communications with other individuals during daytime hours, and as necessary at other hours, to ensure compliance with all terms of release and Ng's safety.

15. Defendant, and other residents of the Residence, will execute a consensual Title III wiretap application for the single hardline in his apartment, with charges submitted by the service provider for the setting up and maintenance of the consensual hardline to be paid for by Defendant. All phone calls using the hardline, which shall not contain call forwarding or other similar features, will be recorded and monitored with the exception of counsel calls which will be automatically minimized.;

16. Defendant shall not possess or use any cellular and/or satellite telephone or smartphone;

17. Defendant will be allowed to have a computer in the Residence, which will be loaded with a monitoring software;

18. Defendant's internet activity will be limited to (a) use of the computer with monitoring software and (b) only the websites approved by Pretrial Services and the Government, and Defendant is not use any computer

4

or other internet-capable device that does not contain such software;

19. Defendant shall provide a list containing the identifying information of planes, including tail numbers and transponder numbers, owned by Defendant and/or his businesses/companies;

20. Defendant shall also provide a list of the names of the aircraft leasing companies with which he has contracted air transportation services, or had such services contracted on his behalf, within the past five (5) years;

21. Defendant, Pretrial Services, and the United States Attorney's Office shall meet and confer to compile a list of approved visitors to the Residence and provide that list to Guidepost, and only approved visitors will be permitted entry into the Residence by Guidepost;

22. Guidepost shall create a daily visitors log and transmit that log on a daily basis to the United States Attorney's Office and/or the Federal Bureau of Investigation;

23. All approved visitors entering the Residence will be searched by the Guidepost security detail and will surrender any cell phones, tablets, computing devices,

5

and/or travel documents to Guidepost for the duration of their visit to the Residence;

24. No approved visitors will be permitted entry to the Residence by Guidepost if they are carrying in excess of $200 or identification documents in a name other than their own; and

25. The Residence, Defendant, and Di Meng, Ng Fei Lan, and Sun Yuan will be subject to random unannounced searches conducted by Guidepost accompanied by a representative of Pretrial Services, and the date and time of such searches will be determined by Pretrial Services, without notice to Defendant or the other residents of the Residence.

26. Defendant shall not communicate with co-defendants, except in the presence of counsel.

27. Defendant to be released upon the execution of the bond described herein, including all co-signers and collateral; the surrender of all travel documents; the setting up of electronic and GPS monitoring; the setting up of the consensual Title III; the Government's approval of the Guidepost security team, and the setting up of that team, provided that Defendant is released directly into the custody of

such team, with all other conditions to be met within

24 hours of release.

SO ORDERED.

Dated:     New York, New York
           October 23, 2015

Vernon S. Broderick
United States District Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-mj-04544-LMR

UNITED STATES OF AMERICA,

vs.

TAL ALEXANDER,

      **Defendant.**

_____/

## NOTICE OF APPEARANCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby gives notice that Assistant United States Attorney Lauren A. Astigarraga has been assigned as counsel in the above captioned case. All correspondence, pleadings and notices should be directed to the undersigned counsel.

          Respectfully submitted,

          MARKENZY LAPOINTE
          UNITED STATES ATTORNEY

By:    */s/ Lauren A. Astigarraga*
       LAUREN A. ASTIGARRAGA
       Assistant United States Attorney
       Florida Bar No. 119473
       99 Northeast 4th Street, 5th Floor
       Miami, Florida 33132
       Telephone: (305) 961-9105
       E-mail: lauren.astigarraga@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on December 19, 2024, I electronically

filed the foregoing document with the Clerk of the Court using CM/ECF.

By:   <u>*/s/ Lauren A. Astigarraga*</u>
            LAUREN A. ASTIGARRAGA
            Assistant United States Attorney

2

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-mj-4544-REID

**UNITED STATES OF AMERICA**

**vs.**

**TAL ALEXANDER,**

    **Defendant,**

_____

### RESPONSE IN OPPOSITION TO MOTION TO
### REOPEN DETENTION HEARING AND STAY REMOVAL

The United States of America, through the undersigned Assistant United States Attorneys, files this Response in Opposition to the Defendant Tal Alexander's ("Defendant") Motion to Reopen the Detention Hearing and Stay Removal ("Motion"). In the Motion, the Defendant argues that the Magistrate Court should reconsider its Order of Detention, *see* ECF Nos. [17] (paperless order granting detention) and [24], (written order of detention), and reopen the detention hearing because the Defendant (1) is seeking Jencks Act materials; (2) wishes to present additional evidence regarding his family's financial resources; and (3) makes additional arguments about the difficulty (or ease) of extraditing fugitives from Israel. The Defendant submitted a supplemental brief on December 19, 2024. ECF No. [28]. As set forth below, the Motion should be denied in its entirety. None of the reasons cited in the Motion constitute "new evidence" warranting the Court to reconsider or reopen the detention hearing. Moreover, for the reasons set forth below, the Court should not order the government to produce Jencks material in connection with the hearing.

# BACKGROUND

## I. Procedural History

On December 11, 2024, a grand jury sitting in the Southern District of New York returned a superseding indictment, S1 24 Cr. 676 (VEC) (S.D.N.Y) (the "Indictment"), charging the Defendant in three counts: (1) participating in a sex trafficking conspiracy from at least 2010 through at least 2021, in violation of 18 U.S.C. § 1594(c) (Count One); (2) sex trafficking Victim-1 by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 2 (Count Two); and (3) sex trafficking Victim-2 by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 2 (Count Three). After traveling from New York to Florida the night before his planned arrest, the Defendant was arrested on December 11, 2024, at his parents' house in Bal Harbour. He made his initial appearance in this Court that same day. At his initial appearance, the government moved for pre-trial detention on two statutory bases: (1) that the Defendant posed a danger to specific people and the community because of the nature of the crimes, including that the Defendant is charged with violating 18 U.S.C. § 1591 (which carries a presumption of detention) and faces up to life imprisonment to, *see* 18 U.S.C. § 3142(f)(1)(A)-(B); and (2) because there was a serious risk that the Defendant would flee if released, *see* 18 U.S.C. § 3142(f)(2)(A).

## II. The December 13, 2024 Detention Hearing

A detention hearing was held on December 13, 2024. At the hearing, the government proceeded by factual proffer.[1] The government's factual proffer included an overview of the charges, including that for more than a decade, from at least 2010-2021, the Defendant and his brothers conspired together to sexually assault, traffic, and forcibly and violently rape dozens of women. (Tr. 6). This conduct included both pre-planned trips and events for which the Defendants

---

[1] The complete factual proffer is at pages 6 to 16 of the transcript of the detention hearing.

2

recruited women to attend and then raped and sexually assaulted them, as well as the opportunistic rapes and sexual assaults of numerous victims who they encountered by chance. (Tr. 8-9). For the planned encounters, the Defendant and his brothers lured women to various locations with the promise of material benefits, such as travel, luxury accommodations, and events or parties in various locations, including the Hamptons, Tulum, and Miami. During these trips and events, the Alexander Brothers, alone, together, and with others, drugged and forcibly raped or sexually assaulted their victims. (Tr. 9). The Defendant and his brothers used a similar playbook to commit rapes and sexual assaults after chance encounters with women. (Tr. 8).

As relevant to the Motion, the government proffered the following specific facts about the Defendant's wealth and foreign connections relevant to his risk of flight:

> The Defendant is a multimillionaire who has the resources to flee and live comfortably in hiding. The Defendant and his family have access to significant wealth.
>
> He and one of his brothers owns a luxury real estate brokerage with a real estate portfolio valued at hundreds of millions of dollars.
>
> They are known in the real estate world for selling high-end luxury homes to celebrities and the ultra rich. The Defendant has properties here in Miami as well as over in New York.
>
> The Defendant and his family also have significant foreign ties. Particularly to Israel and to Brazil. Their parent[s] are from Israel and the Alexander brothers frequently travel to Israel to visit family, conduct business, and for vacation.
>
> They also travel frequently outside the United States to other locations often booking flights at the last minute and traveling by their private jet or on a yacht.
>
> We have confirmed with OIA, who indicated that despite an extradition treaty, we cannot ensure the Defendant's extradition back to the U.S. should he flee out to Israel.

(Tr. 16-17).

3

At the hearing, in accordance with the practice in the Southern District of Florida, which as explained below, varies substantially from that of the district where charges were filed, the government made FBI Special Agent Justine Atwood available as a witness for cross-examination. The defense engaged in a lengthy cross examination of Agent Atwood on numerous topics, including: the charging instruments returned by the grand jury, (Tr. 19); the length and scope of the investigation, (Tr. 20); a method of travel used by one of the victims described in the indictment, (Tr. 20); the number of women interviewed and length of the charged conspiracy, (Tr. 21-22);[2] that at least one victim may have had "friendly contact" with the Defendant or his brothers after the victim was raped, (Tr. 22-24); the investigative steps taken to obtain electronic communications between the Defendants and the victims, (Tr. 25); that there are only two substantive counts charged in the indictment, (Tr. 25); media reports from around July 2024 regarding the existence of the criminal investigation, (Tr. 26-27); the Defendant's lack of erratic or international travel after the media reports about the criminal investigation, (Tr. 27-28); the circumstances of the Defendant's arrest, (Tr. 29); the fact that the Defendant and his brothers do not own a plane, (Tr. 29); the Defendant's ties to Israel, (Tr. 30); and the Defendant's prior filing of a harassment complaint or threatening a defamation lawsuit in response to allegations that he or one of his brothers had committed a sexual assault, (Tr. 34-35).

---

[2] During cross examination, Agent Atwood was asked, "how many women have you interviewed?" She responded, "approximately 40." (Tr. 22). On redirect examination, Agent Atwood was asked whether the conspiracy "relates to the 40 women," to which she responded "yes," and whether she had been at "the interview[s] of these 40 victims," to which she responded, "most of them." (Tr. 38) At the time of the detention hearing, the FBI had identified approximately 52 victims of the scheme and interviewed approximately 41 witnesses, including approximately 30 who reported being raped or sexually assaulted by the Defendant or his brothers. Since that date, the FBI has interviewed approximately 12 more victims and has received dozens of additional tips about rape and sexual abuse committed by the defendants.

During re-cross examination, defense counsel reemphasized that only two victims were identified in the Indictment despite the numerous victims interviewed and that the Defendant had not fled the country following public reporting of the investigation. (Tr. 41-42).

During argument, defense counsel minimized the government's presentation, noting the following: the Indictment charged "an eleven-year conspiracy and only two victims," (Tr. 53); the Defendant stayed in the United States after a July 2024 news report that stated the FBI was investigating the Defendant and his brothers, (Tr. 54-55); the Defendant's strong ties to the Miami community, (Tr. 55); the Defendant's wife and infant child, and his wife's ties to the community (Tr. 56, 60); the Defendant's lack of an Israeli passport, (Tr. 56); the Defendant's lack of a privately owned jet, (Tr. 56); the lack of evidence of witness tampering and the lawful explanations for a defamation lawsuit, (Tr. 57-58, 69); the fact that the last alleged conspiratorial act was in 2021, (Tr. 58); the size and scope of a proposed bail package, including $115 million in property, numerous co-signers, and home detention (Tr. 59-63, 71).

After a lengthy hearing, the Court ultimately concluded that no combinations of conditions could reasonably assure the appearance of the Defendant for court and ordered pre-trial detention. (*See* Tr. 72-73). The Defendant also signed a written waiver of an identity and removal hearing. (Tr. 75). As the Court advised the Defendant that he was giving up his right to an identity hearing and would have to defend the case in New York, the Court announced that it would sign the removal order to transfer the case to New York. (Tr. 75-76). The Defendant verbally acknowledged his understanding that the case would be transferred. (Tr. 76).

On December 17, 2024, the Court issued a written order of detention. ECF no. [24] (the "Order"). In the Order the Court found

> [T]he government has met its burden to demonstrate that
> ALEXANDER is a serious flight risk and that the defense has failed

5

> to rebut the presumption on that ground. In finding pre-trial
> detention is appropriate in this case, the Court is considering the
> strong weight of the evidence; the significant sentence the
> Defendant faces; and the nature and circumstances of the offense;
> and the personal characteristics of the Defendant.

(Order at 3). Among other considerations, the Court noted the anticipated evidence included, in addition to victim and witness testimony, "electronic evidence, physical evidence, and documentary evidence, among other things." (*Id.*). The Court further noted the Defendant's international contacts and travel, and access to private jets or yachts and travel arrangements that are "frequently done at a moment's notice and not scheduled in advance," and that his proposed living situation "would give him direct ocean access and the means to quickly flee." (*Id.*). The Court also found that with "the potential penalties here, both incarceration and reputational harm, the Defendant has every incentive to flee to avoid prosecution and a public trial." (*Id.*) Ultimately, the Court concluded, "the Court finds that the government has proven by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance at trial and orders that he be detained." (*Id.* at 4).

On December 16, 2024, the Defendant filed the Motion to reopen the detention hearing and stay his removal to New York. The government submits this memorandum in opposition to that motion.

## ARGUMENT

### I. The Court Should Deny the Request for *Jencks* Material as a Fishing Expedition

#### A. Additional Background

At the beginning of the detention hearing, the defense asked the Court for *Jencks* materials following Agent Atwood's testimony. (Tr. 5). The Assistant United States Attorney representing the government for the purpose of the out-of-district detention hearing noted that the request had been made only just before the hearing, but the AUSA believed the prosecution team in New York

would be able to provide the materials at some point after the hearing.[3]  The hearing proceeded, and the Court told the defense that if it identified "something in there that you believe that it should have been considered, you have the opportunity to appeal my decision . . . [a]nd bring that to the District Court's attention."  (Tr. 6).  The Court later said, before cross examination began, that if a review of the materials later gave new information that "has a material bearing on the hearing," the Defendant could "file a motion to re-open the hearing stating what that evidence is and if it is material." (Tr. 16-17).

In response, defense counsel, told the Court that, "I am back from New York and practice a lot in the Southern and Eastern Districts up there.  And normally we will get in many cases 3500 material beforehand or at least at the end of the direct examination of this case proffer."  (Tr. 17).  As set forth below, this representation was inaccurate.  Later in the hearing, at the conclusion of his argument, defense counsel expanded his request, saying,

> Thank you very much for your time.  I have one other request that I forgot.  If whatever reports that this FBI, in addition to the 3500 material, whatever report that she might have filled out we would request as well.

(Tr. 60).

### B.  The Defendant's Request for *Jencks* Materials Does Not Provide a Basis to Reopen the Hearing and Should be Denied

The Defendant moves to reopen bail, in part, based on unspecified *Jencks* material.  This fishing expedition should be denied and rejected as a basis to reopen the hearing.  As an initial matter, defense counsel misrepresented to the Court that the normal practice in the Southern District of New York ("SDNY") is to provide *Jencks* materials during detention proceedings: that is incorrect.  In SDNY detention hearings, courts permit both the government and Defendants to

---

[3] The undersigned prosecutors, the team assigned to the case, were not present during the hearing.

proceed by proffer alone and do not require the government to produce a live witness, either for direct testimony or cross examination. Accordingly, in the normal course, there is no *Jencks* production. *See United States v. Rivera-Banchs*, No. 20-2873, 2021 WL 4484908, at *2 (2d Cir. Oct. 1, 2021), as amended (Oct. 4, 2021) ("The rules of evidence do not apply in a detention hearing and the government may proceed by proffer alone."); *United States v. Petrov*, 604 F. App'x 66, 67 (2d Cir. 2015); *United States v. Horton*, No. S1 16-CR-0212 (LAK), 2016 WL 6126669, at *7 (S.D.N.Y. Oct. 20, 2016) ("[a] detention hearing need not be an evidentiary hearing. . . . either party may proceed by proffer and the rules of evidence do not apply. This flows from the fact that the thrust of the Bail Reform Act is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials. Nor is a detention hearing to be used as a discovery tool for the defendant.").

In SDNY, the normal practice regarding production of *Jencks* is to require it only to be produced near the time of trial, in accordance with the Second Circuit's holding that the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001); *see, e.g.*, *United States v. Gillier*, No. 11 Cr. 409 (PAE), 2022 WL 179204, at *3 (S.D.N.Y. Jan. 19, 2022) ("The Government's timetable for producing [*Jencks*] material [two weeks before trial] is common in this District."); *United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) ("The practice in this District is to provide both *Giglio* and Jencks Act material at the same time, which should be at least one day prior to the testimony of the witness."); *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *23 (S.D.N.Y. Jan. 18, 2017) (Jencks Act materials are "typically produced a week or two before the start of trial, depending on the complexity of the case"); *Nigro v. United States*, No. 09 Cr. 1239 (PKC), 2016 WL 3211968, at *2 (S.D.N.Y. June 9, 2016) ("As

is customary in this district, the government agreed to an earlier voluntary production [of *Jencks* materials] and, in this case, that production was much earlier than usual the Thursday before the start of a Monday trial.").

The government recognizes that although the case is charged in New York, the Defendant was arrested and presented in the Southern District of Florida. But even in this District, there is no mandate that courts require the production of *Jencks* materials in connection with detention hearings. *See, e.g.*, Fed. R. Crim. P. 46(j) (noting that Rule 26.2 applies in a detention hearing unless the court "for good cause rules otherwise"). Such "good cause" is certainly present here where the Defendant would not be entitled to *Jencks* material had he been arrested in the district where the charges lie. Instead, because he happened to travel out of district the night before his arrest, the Defendant seeks what amounts to a windfall of early *Jencks* production that he would not be entitled to in SDNY—including FBI investigative reports detailing the allegations of numerous adult and minor victims not identified in the Indictment.[4] These reports, even in redacted form, contain information sufficient to identify the victims. In these circumstances, the government respectfully submits that the Court has good cause to reconsider the Defendant's request for *Jencks* material.

In a case where the Defendants have threatened victims for coming forward, the potential danger of such premature disclosures cannot be ignored and certainly outweighs the Defendant's interest in obtaining the material for purposes of an out-of-district detention hearing which will likely be appealed to the District Court in a district with vastly different procedures. The authority the Defendant cites does not persuade otherwise.

---

[4] Defense counsel expressly requested these other reports during the hearing. (Tr. 60).

9

In *United States v. Comas*, a case the Defendant relies on heavily, Judge Goodman of this District required the government to produce *Jencks* materials in connection with a detention hearing but was clear that the requirement is not absolute and should be evaluated "on a case-by-case basis." *United States v. Comas*, No. 13 Cr. 20850, 2014 WL 129296, at *3 (S.D.F.L. Jan. 14, 2014). *Comas* is also clear that the fact that a detention hearing is held does not by itself entitle a defendant to a broad production. Indeed, any production of *Jencks* materials should be limited, as the only valid reason for the production of the materials is to permit impeachment by prior inconsistent statement, not to turn a detention hearing into a discovery vehicle. *Id.*; *see United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *see also United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007); *United States v. Delgado*, 56 F.3d 1357, 1364 (11th Cir. 1995) ("*Jencks* does not authorize fishing expeditions.").

Although the Defendant uses his request for *Jencks* as a pretext for reopening bail, it is clear from the record is that the Defendant does not expect to find a prior inconsistent statement of Agent Atwood's justifying a new hearing, but rather seeks to use the proceeding to receive early production of materials which he, in the normal course, would not be entitled. *See* Rule 10(c) of the Individual Practices in Criminal Cases for U.S.D.J. Valerie E. Caproni (S.D.N.Y.), https://nysd.uscourts.gov/hon-valerie-e-caproni (encouraging but not requiring production of *Jencks* materials prior to trial). Defense counsel made this point explicitly, when trying to throw in as an aside a request not only for Agent Atwood's direct prior statements in this case, but also any FBI reports, which counsel knows are reports of victims' statements.

These reports are surely not needed to ensure an opportunity to effectively cross-examine Agent Atwood. During the hearing, defense counsel cross examined Agent Atwood at length about a number of topics. With respect to the Defendant's risk of flight, the only issue relevant to

10

the current motion, the Defendant vigorously cross-examined Agent Atwood on a number of topics, including the strength of the case given the limited number of statutory victims, that the Defendant had not engaged in any unusual travel after the investigation was reported publicly, that Agent Atwood could not cite any evidence that the Defendant was making plans to leave the country, and that the Defendant's ties to Israel are not particularly rare.

The scope and reasoning of the Court's ruling also make clear that the reports of victims' statements, and any potential cross examination of Agent Atwood about them, are not germane to any motion to reconsider the Court's detention decision. The basis for the Court's detention finding was limited to the risk of flight presented by the Defendant. The only potential connection between that finding and the defendant's requests for *Jencks* is, arguably strength of the evidence. *See* 18 U.S.C. § 3142(g)(2). Here, the Court's order noted that the strength of the evidence came from the "electronic evidence, physical evidence, and documentary evidence, among other things," that corroborated and supplemented anticipated trial testimony.[5] But the bulk of the Court's reasoning related to the Defendant's foreign contacts, foreign travel, ability to engage in no-notice travel, financial resources, and the statutory charges and penalties—all factors having little-to-nothing to do with Agent Atwood's testimony at all, and certainly nothing to do with the records he's asking for now.

It is but chance, and a last-minute private flight to Miami, that resulted in the Defendant's arrest in Florida, rather than New York. The Defendant has understandably sought to turn this into a windfall that would grant him early access to the reports he needs to identify witnesses against him—information that in the Southern District of New York he likely would not get until shortly

---

[5] With respect to that anticipated trial testimony, defense counsel cross-examined the case agent about the approximate number of women interviewed and details about the statutory victims' accounts. (Tr. 22 and 25).

before trial.  The Court should not grant his request.  As the Court told defense counsel during the hearing, any basis to reopen the hearing must have a material bearing on the issues presented. Because of the Court's narrow ruling and the reasons given for that ruling, early access to victim statements is irrelevant to his motion.  The Court should deny this application.[6]

## II.      The Defendant's Motion to Reopen the Hearing Fails

### A.      Legal Standard

The law provides two distinct methods to revisit detention.  The first is an appeal of a detention order to the district court.  *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988) ("Pursuant to 18 U.S.C. § 3145, following a magistrate's order that a detainee be held without bond pending trial, the detainee may move the district court to revoke or amend the magistrate's pretrial Detention Order.").[7]  The second is a request to reopen a detention hearing, which requires that "the Court find[] that 'information exists that was not known to the movant at the time of the hearing and that has a material bearing' on the issue of detention."  *United States v. Gallo*, No. 12-20630-CR, 2014 WL 1230717, at *3 (S.D. Fla. Mar. 25, 2014) (quoting 18 U.S.C. § 3142(f)(2)).

"Courts have interpreted that [reopening] provision strictly, holding that reopening is unwarranted if the newly offered evidence was available at the time of the hearing."  *United States v. Pon*, No. 3:14-CR-75-J-39PDB, 2014 WL 3340584, at *3 (M.D. Fla. May 29, 2014) (citing

---

[6] If the Court does direct the government to produce *Jencks* material, any production should be limited to the proper purpose of allowing the Defendant to impeach the government's witness. *See United States v. Williams*, 259 F. App'x 281, 287 (11th Cir. 2007) ("The purpose of the Jencks Act disclosure requirements is to enable the defense to impeach a government witness during cross examination.").  Therefore, any production should be limited to the issues relevant to cross examination, produced for a limited period of time, and subject to a protective order to protect the identification of victims and witnesses and prevent public dissemination of the materials.

[7] Pursuant to 18 U.S.C. § 3145(b), if a Defendant is ordered detained "by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense", the Defendant may file a motion to amend or revoke the order with the judge having original jurisdiction over the offense.  Here, any such appeal should be filed in SDNY.

*United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) and *United States v. Hare*, 873 F.2d

796, 799 (5th Cir.1989)). As the court explained in *Pon*:

> As written, the reopening provision is, in effect, a codification of a court's inherent reconsideration authority tempered by the understanding that, to promote finality, preserve judicial resources, and discourage piecemeal presentations, a court should not reconsider a decision based on information that could have been presented the first time around. *See Lederman v. United States,* 539 F. Supp. 2d 1, 2 (D.D.C.2008) ("Due to considerations of finality, predictability and preserving judicial resources, . . . a court should be [loath] to revisit its own prior decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."); *cf. Mays v. USPS,* 122 F.3d 43, 46 (11th Cir. 1997) (holding, in Fed. R. Civ. P. 59(e) context, that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion"). Under the provision, reopening is unwarranted if the newly offered evidence was available at the time of the hearing. *See United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare,* 873 F.2d 796, 799 (5th Cir. 1989). And even then, reopening is discretionary. *United States v. Watson,* 475 F. App'x 598, 599–600 (6th Cir. 2012).

*Pon*, 2014 WL 3340584 at *9.

As argued below, the Court should deny the Motion because the Defendant has failed to

meet his burden to show that "new evidence" exists warranting the relief sought. Section 3142(f)

states:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). On a motion to reconsider or reopen a detention hearing, the "[d]efendant is

required to establish that (1) information exists that was not known to defendant at the time of the

13

initial detention hearing; and (2) that such information has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. *United States v. Diaz Guillen*, No. 18-CR-80160, 2022 WL 4119741, at *3 (S.D. Fla. Sept. 9, 2022) (Middlebrooks, J.) (denying a motion to reconsider or reopen detention hearing) (citing *United States v. Haynes*, No. 19-cr-80045, 2019 WL 5538300, at *1 (S.D. Fla. Oct. 28, 2019); *United States v. Ramos*, No. 14-80052-CR, 2014 WL 1515264, at *2 (S.D. Fla. Apr. 7, 2014).

Courts in other districts and circuits have interpreted Section 3142(f)'s "not known to the movant at the time of the hearing" "language to mean not just actual knowledge, but also constructive knowledge, *i.e.*, knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *United States v. Chappell*, No. 3:17-CR-361-B (2), 2017 WL 11517833, at *4 (N.D. Tex. Oct. 10, 2017). "Thus, a litigant cannot invoke 3142(f) to reopen and offer statements about his character from relatives and friends; he is charged with constructively knowing of those statements. A defendant cannot forego an opportunity to confront a witness and elicit favorable testimony, and then later claim the testimony he or she failed to elicit would constitute new information." *United States v. Spring*, No. CRIM.A. 14-10303, 2014 WL 6609156, at *2 (D. Mass. Nov. 20, 2014) (citations omitted).

### B.    Argument

As discussed below, none of the arguments raised by the Defendant support reopening the detention hearing. Moreover, given that reopening the hearing is at the discretion of the Court, and that the defendant is entitled to have another hearing before the District Court in the Southern District of New York, the Court should decline to use its discretion in these unique circumstances.

14

### 1.    The Requested *Jencks* Material Does Not Provide a Basis to Reopen the Hearing

As discussed above, the Defendant would not be entitled to the *Jencks* material he seeks in New York, and his request for that material should be denied. In any event, as he cannot point to any such specific material that would constitute new information justifying reopening the hearing, his application on this score should be denied as speculative and not ripe. *See* 18 U.S.C. § 3142(f)(2). *First*, for the reasons discussed *supra*, the *Jencks* material the Defendant seeks— including detailed FBI investigative reports of victims' statements—does not materially relate to the factors on which the Court relied in finding that the Defendant posed a flight risk. On that basis, the motion must be denied. *Second*, any application to reopen bail premised on *Jencks* material could not be made until and if the Defendant identified specific information included in such material that he would have sought to cross-examine the witness about. Therefore, even to the extent that the Court orders the government to produce *Jencks* material, it should deny without prejudice the Defendant's instant motion to reopen as not ripe.[8]

### 2.    The Defendant Had Ample Opportunity To Address Concerns About His Family's Wealth

The Defendant also requests that the Court reopen the hearing so that he might present additional witnesses or evidence regarding his "family's full financial picture" and to "allay any concerns of the Court … regarding risk of flight." (Dkt. 22 at 5). This is not a proper basis to reopen the detention hearing because, as the Defendant must concede, his family's financial

---

[8] In a letter filed on December 19, 2024, the Defendant asks the Court to schedule the reopened hearing on Friday, December 20, 2024. (Dtk. 27 at 1). This request presumes that the Defendant's motion will be granted, despite the fact that the government had not yet responded to the motion and the Court had not yet had an opportunity to rule. Such a request is simply premature. Even if the Court were to order the hearing reopened, the Defendant's proposed schedule does not allow sufficient time for the Court to rule, for the Defendant's presence to be arranged, and to allow the government time to respond to the particular issues and scope of the ruling.

15

situation was known to the Defendant at the time of the hearing. The Defendant could have cross examined Agent Atwood or offered evidence of his family's resources at the hearing, but he chose not to do so. Defense counsel did argue to the Court that the Defendant's pretrial release would be backed by his family's substantial financial resources, including by representing to the Court that his family "offered a $115 million bond," (*Id.* at 5) secured by the family's property, including the Defendant's home, his parents' home, his brothers' homes, and his office building. (Tr. 60-63). If the Defendant wanted to provide additional evidence of his family's financial situation, he should have done so at the initial detention hearing. *Pon*, 2014 WL 3340584, at *3 ("a court should not reconsider a decision based on information that could have been presented the first time around.").

Perhaps in recognizing this fatal flaw, the Defendant argues that he "did not have a meaningful opportunity to respond to the Court's statement in its detention ruling which recognized that, despite the proposed bond, "this family has, however, extensive resources" and noted that, while it is unclear at this stage how significant $115 million is for the Defendant's family, "he clearly has the financial resources to flee if he chose to do so." (Tr. 73.) The Defendant's assertion still "misses the mark." *United States v. Brown*, 21 Cr. 348 (SPF), 2022 WL 309430 at *3 (M.D. Fla. Feb. 2, 2022) (denying a motion to reopen based on statements made in detention ruling). In *United States v. Brown*, a court in the Middle District of Florida was confronted with a nearly identical issue and determined that the time at which the defendant knew of the facts he wished to present is what mattered, not whether the defendant was aware of the Court's interpretation of the evidence presented at the hearing. *Id.* There, a magistrate judge detained a defendant, in part, because of evidence related to a sign posted on the defendant's door that the judge interpreted as being a sign of danger. *Id.* at 2. In his motion, the defendant asserted

16

that "the Court's interpretation [of the sign] was not known until the hearing was being conducted, and [the defendant's] friends and colleagues did not receive[ ] a copy of [the sign], along with the Court's stated interpretation of [the sign], until after the hearing." *Id*. at *3. From this, the defendant asked to reopen the hearing "to call . . . witnesses to explain to the Court how they interpret [the sign] in light of their knowledge of [the defendant] and how the Court misinterpreted the language of [the sign]." *Id*. at *2. The Court flatly rejected this argument and ruled that because the defendant knew he had made the sign and knew that the government intended to offer it as evidence, he should have either called these friends or sought a continuance to arrange for their testimony. *Id*. at *2-3.

The Defendant's argument here fails for precisely the same reason. As the Court in *Brown* stated, "[w]hile [the defendant] may regret the decision to not call his friends to testify at that hearing, it does not mean the evidence was 'not known' to him." *Id*. at *3. The Defendant certainly knew that his, and his family's resources, would be relevant to a determination of whether he was a flight risk. Indeed, he put his family's financial resources at issue by offering to use their resources to support his bail package. The Defendant had the opportunity to provide this information to the court at the time of the detention hearing—he asked for a three-day adjournment to prepare for it—and chose not to do so. Accordingly, he has failed to meet the statutory requirement for reopening his detention hearing under 18 U.S.C. § 3142(f) as it relates to his family's financial picture.

In his supplemental submission, the defendant now proposes additional conditions, including a bond cosigned by the Defendant's parents "in any amount secured by the entirety of their assets" and to "retain a private security service . . . to provide a full timed armed security detail at the location of Mr. Alexander's home detention." (Dkt. 28 at 2). As discussed above,

proposing a new bail condition that the Defendant could have proposed at the time of the initial hearing is not an appropriate basis for reopening a hearing. *Pon*, 2014 WL 3340584, at *3 ("a court should not reconsider a decision based on information that could have been presented the first time around."). As with the information regarding his family's assets, the Defendant could have made this proposal at the initial hearing but he chose not to do so. *See Brown* 2022 WL 309430 at *3. If the Defendant wishes to propose an augmented bail package, he should appeal to the District Court and the parties can address that issue before Judge Caproni. Moreover, had the Defendant proposed this condition at the initial hearing, and were he to do so on appeal, the government would nonetheless oppose bail on these conditions. The Second Circuit, where the Defendant's case will be tried, generally disfavors granting bail to wealthy defendants where bail would not be granted to an indigent defendant. *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019) ("[T]he Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails."); *see also United States v. Banki*, 369 F. App'x 152, 153-54 (2d Cir. 2010) (this Court is "troubled" by the possibility of "allow[ing] wealthy defendants to buy their way out by constructing a private jail.") (citation omitted). At any rate, the defendant's private jail proposal "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (citation omitted). Simply put, the Defendant should not be able to evade detention here because of his family's assets.

### 3. Clarifying The Record On Extradition Does Not Provide A Basis To Reopen

The Defendant's request to reopen the Hearing to rebut the government's representation on extradition from Israel similarly fails. As a threshold matter, the government's factual proffer

18

accurately stated that "We have conferred with [DOJ's Office of International Affairs], who indicated that despite an extradition treaty, we cannot ensure the Defendant's extradition back to the US should he flee out to Israel."[9] (Tr. 16). The government also addressed this point in its detention letter provided to the Court prior to the Hearing, stating that while the U.S. extradition treaty with Israel does provide for extradition of Israeli nationals,[10] "extradition from Israel is frequently a multi-year, drawn out process, at the end of which extradition to the United States is not guaranteed." (Ltr. at 11). Consequently, the Defendant was well aware that this issue would be addressed at the Hearing and could have provided additional information on the extradition treaty to the Court at the Hearing. *See Pon*, 2014 WL 3340584, at *3.

Further, the Defendant has not shown that this particular issue is in fact material to the question of detention. Indeed, the Defendant *cannot* show that this is a material issue—the Court did not reference the issue of extradition in either its oral or its written detention order. (*See* Tr. 72-73; Dkt. 24); *United States v. Gallo*, No. 12-20630-CR, 2014 WL 1230717, at *4 (S.D. Fla. Mar. 25, 2014) (finding that "the information presented in the motion would not have a material bearing on, or change, the Court's conclusion that the Defendant should be held in pretrial detention.").

---

[9] In his Supplemental Submission, the Defendant makes much of the government's arguments on this point. (*See* Dkt. 28 at 1-2). The Defendant's characterization takes the government's statements out of context. During the argument the government stated that should the Defendant flee to Israel "they are not going to be able to extradite him back and *that is not a sure thing*. The fact that we are *potentially* not going to be able to extradite him surely is another cause for concern and demonstrates that he is a risk for flight." (Tr. 51-52 (emphasis added).) This statement reflects that the Defendant's extradition is not guaranteed should he flee to Israel.

[10] Defense counsel has represented that the Defendant is not an Israeli national.

19

# CONCLUSION

For the reasons stated above, the Court should deny the Defendant's Motion to reopen the

detention hearing and his request for *Jencks* material.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   */s/ Lauren A. Astigarraga*
      Lauren A. Astigarraga
      Assistant United States Attorney
      FL Bar No. 0119473
      99 N.E. 4th Street
      Miami, FL 33132
      Telephone (305) 961-9105
      Lauren.Astigarraga@usdoj.gov


      EDWARD Y. KIM
      ACTING UNITED STATES ATTORNEY
      SOUTHERN DISTRICT OF NEW YORK

By:   */s/*
      Kaiya Arroyo
      Elizabeth A. Espinosa
      Andrew Jones
      Assistant United States Attorneys
      26 Federal Plaza, 37th Floor
      New York, NY 10278
      Telephone (212) 637-2249
      Andrew.Jones2@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-MJ-04544-LMR

UNITED STATES OF AMERICA,

     Plaintiff,

v.

TAL ALEXANDER,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO REOPEN DETENTION HEARING

This cause is before the Court on Defendant Tal Alexander's Motion to Reopen the Detention Hearing in this case, pursuant to 18 U.S.C. § 3142(f) and to stay removal of this case to the Southern District of New York. [ECF No. 22]. The Court has reviewed the Motion, Defendant's Supplemental Brief [ECF No. 28], the Government's Opposition [ECF. No. 31], the documents submitted in support of the parties' filings, the pertinent portions of the record, and all relevant authorities. For the reasons addressed below, it is **ORDERED** that the Motion [ECF No. 22] be **DENIED** because none of the reasons Defendant cites meet the requirements of 18 U.S.C. § 3142(f).

## BACKGROUND

Defendant Tal Alexander has been charged in a superseding indictment by a federal grand jury in the Southern District of New York with sex trafficking conspiracy from at least 2010 through at least 2021, in violation of 18 U.S.C. §§ 1591(e)(12), 1591(a)(1), and 1594(c) (Count One); sex trafficking of Victim-1 by force, fraud or coercion in 2011, in violation of 18 U.S.C. §§ 1591(a), (b)(1), and (2) (Count Two); and sex trafficking of Victim-2 in 2016 by force, fraud, or

coercion, in violation of 18 U.S.C. §§ 1591(a), (b)(1), and (2) (Count Three).[1] [*See* Superseding Indictment, *United States v. Alexander*, No. 24-cr-00676 (S.D.N.Y.), ECF No. 3].[2]

The offenses carry a statutory mandatory minimum sentence of 15 years and a maximum of life imprisonment. Because of the nature of the charged offenses, there is a rebuttable statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(D).

On December 13, 2024, the Court held a hearing regarding the Defendant's request for bond pending trial. After consideration of the Defendant's arguments, the Government's proffer and arguments, testimony from the FBI Special Agent assigned to the case, and the factors set forth in 18 U.S.C.§ 3142(g), the Court concluded that the Government had established by a preponderance of the evidence that no conditions or combination of conditions could reasonably assure the Defendant's appearance, determining as a result that the Defendant was a flight risk, and that detention was warranted. The Defendant remains incarcerated.

According to the superseding indictment, Defendant, along with his brothers Alon and Oren Alexander, "operated a long-running sex trafficking scheme, as part of which they raped and sexually assaulted women to whom they had provided material benefits" which included "domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events." [Crim. ECF No. 3 ¶ 4].

---

[1] Alon and Oren Alexanders are Tal Alexander's brothers and co-defendants. Each are charged with Counts One and Three.
[2] All references to the Superseding Indictment, S.D.N.Y. Case No. 24-cr-00676, are denoted with "Crim."

In the detention order, the Court explained that the facts, as proffered by the government, established that Alexander and his co-conspirators have been charged in a sex trafficking conspiracy spanning 11 years from 2010 to 2021. However, there is evidence to support that Alexander has been engaged in this kind of conduct for approximately 20 years. The Court further explained the pre-trial detention was warranted because of the strong weight of the evidence, the significant sentence Alexander would face if convicted, the nature and circumstances of the offense and the personal characteristics of the Defendant. In considering the weight of the evidence, the Court noted the Government anticipates testimony from numerous victims and witnesses, electronic evidence, physical evidence, and documentary evidence, among other things.

In finding that Alexander is a flight risk, the Court noted that Defendant is a successful real estate agent in the luxury market and lives a lifestyle supported by extensive financial resources. The Court noted his international contacts, which included the fact that his parents are Israeli and Alexander frequently travels there. He also travels internationally to other countries by private jet and by yacht, frequently with little notice and scheduling in advance. Home confinement at his parents' home, as he requested, would give him direct ocean access, and means to quickly flee.

On December 16, 2024, the Defendant moved to reopen the detention hearing and stay removal of this case to the Southern District of New York pending a decision on pretrial detention. [ECF No. 22]. He seeks to reopen the hearing on three grounds. First, the Defendant argues that the Government's failure to turn over required *Jencks* materials at the detention hearing immediately after cross examination of the FBI Special Agent is a violation of the Government's obligations under 18 U.S.C. § 3500(b). [*Id.* at 4]. Defendant argues that he "plainly has the right to cross examine [the Special Agent] with any material in the government's possession that relates to the subject matter of the testimony." [*Id.* at 5]. Second, the Defendant seeks to reopen the hearing

because he "did not have a meaningful opportunity to address concerns raised *sua sponte* in the Court's decision with respect to his family's financial resources." [*Id.* at 4]. Defendant seeks to present additional evidence by way of witnesses and financial statements, including an increased bail package and new conditions. These include a bond in any amount secured by the entirety of Defendant's parents' assets and the retention of a private security service to provide full-time armed security detail at Defendant's home detention. [ECF Nos. 22 at 6–7; 28 at 2]. Third, he seeks to "correct the government's representation that he is not extraditable from Israel, which is inaccurate." [ECF No. 22 at 4].

## **LEGAL STANDARD**

Under 18 U.S.C. § 3142(f), a detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

This statutory "provision is, in effect, a codification of a court's inherent reconsideration authority tempered by the understanding that, to promote finality, preserve judicial resources, and discourage piecemeal presentations, a court should not reconsider a decision based on information that could have been presented the first time around." *United States v. Simmons*, No. 8:24-CR-200-WFJ-UAM, 2024 WL 3183859, at *2 (M.D. Fla. June 26, 2024) (quoting *United States v. Pon*, 2014 WL 3340584, at *3, 9 (M.D. Fla. May 29, 2014).

"Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing" or is not material. *United*

*States v. Ward*, 63 F. Supp. 2d 1203, 1206–07 (C.D. Cal. 1999). Further, even if the defendant submits new information that is material, the statute's "use of the word 'may' indicates discretion on the part of the district court. Thus, there is no requirement to reopen a detention hearing . . .." *United States v. Smith*, 337 F.R.D. 366, 368 (N.D. Fla. 2020) (quoting *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012)).

## **DISCUSSION**

None of the enumerated reasons Defendant asserts for reopening the detention hearing warrant satisfy the requirements of 18 U.S.C. § 3142(f).

First, with respect to the lack of *Jencks* material, the Court finds that any *Jencks* materials are unlikely to supply new, material evidence relevant to the Court's decision to detain the Defendant based upon risk of flight. As an initial matter, "'[t]he Jencks Act applies to any witness statement in the United States's possession that relates to the subject matter of the witness's direct testimony.'" *United States v. Schier*, 438 F.3d 1104, 1112 (11th Cir. 2006) (quoting *United States v. Delgado,* 56 F.3d 1357, 1364 (11th Cir.1995)); *See* 18 U.S.C. § 3500. "The general rule [for Jencks Act materials] is that a defendant is required to request disclosure following the witness's direct testimony." *Schier*, 438 F.3d at 1112. (internal quotation marks and citations omitted).

At most, the *Jencks* materials may have some relevance as to the weight of the Government's evidence. However, production of such materials at this time would be unlikely to move the needle in the Defendant's favor. First, Defendant's counsel had an opportunity, and did, cross-examine the FBI Special Agent on the length and scope of the investigation and the investigative steps taken to obtain electronic communications relevant to the Government's allegations, among several other topics. Second, the Court relied on additional considerations beyond the weight of the evidence in determining that Defendant is a flight risk, including the

lengthy period of incarceration if convicted and the Defendant's extensive financial resources. Third, the Government anticipates the testimony of multiple witnesses, electronic evidence, physical evidence, and documentary evidence, among other things, related to the allegations against the Defendant. [ECF No. 24 at 3].

As *Jencks* materials relate to detention hearings, at least one judge in this district "entertain[s] the Government's request to *not* provide *Jencks* material on a case-by-case basis" when "a defendant has already been indicted and there are numerous recorded conversations in which the defendant is making inculpatory statements. . .." *United States v. Comas*, No. 13-20850-CR, 2014 WL 129296, at *3 (S.D. Fla. Jan. 14, 2014). Fed. R. Crim. P. 46(j) requires the production of witness statements at detention hearings "unless the court for good cause rules otherwise." The Government asserts that good cause exists here to reject the Defendant's attempt to seek *Jencks*. [ECF No. 31 at 9]. The Government is concerned that Defendant will use *Jencks* as a means to identify the victims who have come forward and threaten them, because the Defendants have threatened victims in the past.[3]

In any event, the Court need not rule on whether *Jencks* should have been produced to make its determination as to whether to reopen this detention proceeding. Here, the grand jury found probable cause to charge Defendant with the sex trafficking offenses and the indictment includes sufficient detail regarding the allegations that Defendant "operated a long-running sex trafficking scheme" and that the Defendants "jointly arrang[ed] domestic and international travel and accommodations, and jointly finance[d] the scheme." [Crim. ECF No. 3 ¶ 2]. The superseding indictment further described that the Defendants used social media and dating applications to find

---

[3] As explained by the Government in its Response, the sought-out reports, "even in redacted form, contain information sufficient to identify the victims." [ECF No. 31 at 9].

victims and booked travel to various locations to engage in the offenses and described the violent and dangerous nature of the acts. [*Id.* at ¶ 5(d)].

Defendant's counsel cross-examined the FBI Special Agent regarding her testimony that the evidence, as it relates to the victims, includes photos and videos "that depict the Alexander brothers engaging in sexual activity with the victims" and communications between the Defendant and his brothers "discussing group sex, discussing providing and piling women with drugs in order to get them to have sex with them and for arranging for their travel from other states to meet them. . . ." [ECF No. 30, Det. Hr'g. Tr. 44:12–21].

In sum, because the evidence would not be material to the Court's analysis of risk of flight, the request to reopen the detention hearing on this ground is denied.

Next, Defendant seeks to reopen the hearing to present an augmented bail package. [ECF No. 28 at 3]. Any information Defendant could provide regarding his or his parents' finances to support a claim of lack of financial incentive to flee would not be new evidence. [ECF No. 22 at 6]. This also applies to Defendant's new proposal to "retain a private security service . . . to provide a full timed armed security detail at the location of Mr. Alexanders' home detention." [ECF No. 28 at 2]. Defendant could have—but chose not to—present this evidence during the detention hearing. Certainly, this information existed and was known by Defendant at the time of the hearing. *See* 18 U.S.C. § 3142(f). *See Pon*, 2014 WL 3340584, at *9 ("[A] court should not reconsider a decision based on information that could have been presented the first time around."); *Simmons*, 2024 WL 3183859, at *2 (finding that the defendant "proffer[ed] no information that was not known to him at the time of the detention hearing" and "[a]s a result, there [was] no basis to reopen the detention hearing. . ..").

The Defendant also seeks to present additional evidence regarding the Government's representations regarding extradition from Israel. [ECF Nos. 22 at 7; 28 at 1–2]. The Court, however, did not rely on the issue of extradition in ordering that the Defendant be detained. Instead, the Undersigned relied in part on the Defendant's "international contacts, which include his parents who are Israeli" as well as Defendant's frequent international travel to Israel and the Bahamas by private jet or yacht. [ECF No. 24 at 3].

## CONCLUSION

Based on the foregoing, the Court orders that Defendant Tal Alexander's Motion to Reopen the Detention Hearing based on 18 U.S.C. § 3142(f) and to stay removal of this case to the Southern District of New York [ECF No. 22] is **DENIED**. In addition, for the reasons stated in this Order, Defendant's request for a hearing in connection with the Motion is also **DENIED**.

**SIGNED** this 20th day of December, 2024.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:     **All Counsel of Record**

**United States District Court**
**Southern District of Florida**
Case No. 24-MJ-4544-REID

UNITED STATES OF AMERICA,

    v.

TAL ALEXANDER,
(USM# 50978-511)

Charging District's Case No. 24-CRIM-676

_____/

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the Southern District of New York.

Joel Denaro, Deanna Paul & Milton Williams **were retained to represent Defendant for proceedings in this District.**

The defendant remains in custody after the initial appearance in the Southern District of Florida.

**IT IS ORDERED** that the United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

**DONE AND ORDERED** at Miami, Florida on December 13th, 2024.

_____
Lisette M. Reid
United States Magistrate Judge